Angelo L. Rosa (Idaho State Bar No. 7546)
ROSA, PLLC
950 West Bannock Street, Suite 1100
Boise, Idaho 83702
Telephone No.      +1 (208) 900-6525
Facsimile No.      +1 (208) 515-2203
E-mail:            arosa@rosacommerce.com
CM/ECF:            arosa@rosacommerce.com

Attorneys for Plaintiff
ANGELO L. ROSA, in Pro Se

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANGELO L. ROSA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JOSEPH N. PIRTLE, in his official capacity as Bar Counsel of the Idaho State Bar; CHIEF JUSTICE G. RICHARD BEVAN, ASSOCIATE JUSTICE ROBYN BRODY, ASSOCIATE JUSTICE GREGORY W. MOELLER, ASSOCIATE JUSTICE COLLEEN D. ZAHN, and CYNTHIA K.C. MEYER, Justices of the Idaho Supreme Court, each solely in their administrative, enforcement and rulemaking capacities relating to the regulation of the practice of law in the State of Idaho,<br><br>　　　　Defendants. | Case No. 26-cv-484<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>[42 U.S.C. § 1983] |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 1

Plaintiff Angelo L. Rosa, for his Complaint against Defendants, alleges as follows:

## I.
## INTRODUCTION

(1)     The present action challenges both the impetus of and the structure governing a disciplinary investigation opened against an attorney for engaging in constitutionally protected criticisms of the Idaho judiciary. This investigation was initiated on the same day the institution being criticized—the Idaho Supreme Court—issued an opinion, which forms the sole basis of the investigation. This disciplinary process is conducted through the Idaho State Bar: the disciplinary apparatus of the Idaho Supreme Court, which controls the process at every consequential stage. The threatened enforcement of those disciplinary rules, as applied, punishes truthful, record-based speech concerning the qualifications and integrity of Idaho's judiciary. The judgments entered by the courts of the State of Idaho in the litigation giving rise to the present situation are final. Plaintiff seeks no relief from those here. Plaintiff is not asking this Court to revisit any ruling of any Idaho court, only to understand them as necessary context for the relief sought, which is within this Court's discretion to grant. Plaintiff's present claims for declaratory and injunctive relief against threatened future enforcement—asserted against officers sued solely in their enforcement, rulemaking, and administrative capacities—lie squarely within this Court's settled authority to grant.

(2)     The relief Plaintiff seeks is prospective only, specifically: (a) a declaration that the disciplinary rules invoked against him are unconstitutional as applied to good-faith, fact-based criticisms of the judiciary carried out in the context of representation, and (b) injunctive relief precluding the threatened enforcement of those rules against that criticism—including the initiation of formal disciplinary charges founded upon it. Such relief would reach both the

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 2

statements already made and the defined category of Plaintiff's intended future commentary on the structure, selection, accountability, and discipline of the Idaho judiciary.

(3)     The facts pled below are drawn almost entirely from the state courts' own records and published findings, from Defendants' own correspondence, and from official public statutes, rules, and reports. They tell a single, continuous story: a woman was maimed by an elective medical procedure requiring an overnight hospital stay; that procedure was botched to the point where the hospital stay lasted one hundred days; the lawyer who solicited her to file suit against the healthcare providers in question (and whom she trusted to do so) extinguished her claims by missing the statute of limitations and then concealing that failure for months; the courts of Idaho disposed of her remedy for that betrayal without ever reaching what was done to her; and when Plaintiff (her appellate counsel) said so—on the record, in the press, and in scholarship—the system turned its machinery on him.

(4)     The clearest illustration requires no characterization at all. On the very day the Idaho Supreme Court issued its opinion—sanctioning Plaintiff personally for the manner in which he criticized the judiciary and making that criticism the predominant theme of that opinion—the Idaho State Bar opened a disciplinary investigation of Plaintiff founded on nothing but that opinion—including a charge under Idaho Rule of Professional Conduct ("I.R.P.C.") 8.2(a), a rule that by its terms reaches only statements "concerning the qualifications or integrity of a judge."

## II.
## JURISDICTION AND VENUE

(5)     This action arises under the First and Fourteenth Amendments to the Constitution of the United States and under 42 U.S.C. § 1983. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), and authority to grant declaratory and further relief under 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 65.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 3

(6)     No abstention doctrine bars this action. Under Idaho's own rules, a formal disciplinary proceeding is instituted only by the filing of a Formal Charge complaint with the Clerk. *See* Idaho Bar Commission Rule ("I.B.C.R.") 511(b). That filing requires the Board of Commissioners' prior finding of probable cause. I.B.C.R. 511(a). No such finding has been made. No such complaint has been filed. No formal disciplinary proceeding is pending against Plaintiff.

(7)     Venue is proper in the District of Idaho under 28 U.S.C. § 1391(b)(1) and (2): all Defendants perform their official functions within this District, and substantially all of the events giving rise to the claims occurred here.

### III.
### THE PARTIES

(8)     Plaintiff, Angelo L. Rosa is an attorney admitted to practice before, inter alia, all courts in the State of Idaho, this federal district, and is a member of the Idaho State Bar. He appeared as appellate counsel for Julene and William Dodd in the litigation described below. He is the subject of the disciplinary investigation, Idaho State Bar File No. 25-104C, that gives rise to this action. Plaintiff intends to continue his record advocacy, his public commentary, and his scholarship concerning the structure, accountability, and integrity of Idaho's judiciary. He reasonably fears the enforcement of the challenged rules against that continuing speech. The subjects of that intended speech are specific: the structure of attorney discipline described in this Complaint; the selection of Idaho's judges—including the divergence between the elections Idaho's constitutional and statutory design promises and the appointment practice the Idaho Judicial Council administers; and the accountability of Idaho's judiciary, including the confidential discipline regime described below.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 4

(9)    Defendant Joseph N. Pirtle ("Defendant Pirtle") is Bar Counsel of the Idaho State Bar. He is sued solely in his official capacity. Bar Counsel evaluates, investigates, and disposes of grievances. He prosecutes all professional-conduct proceedings before the Professional Conduct Board and the Idaho Supreme Court. He wields pre-charge investigatory subpoena power. He may impose private discipline at an investigation's conclusion. Upon the Board of Commissioners' approval, he institutes Formal Charges by filing a complaint with the Clerk. I.B.C.R. 504(b), 509(b)–(c), 511(a)–(b), 524(a). The office Defendant Pirtle holds opened the investigation of Plaintiff and maintains it today. Defendant Pirtle maintains his office in Boise, Idaho, within this District. He holds and exercises the charging authority this action seeks to restrain, and in so doing is acting under color of state law.

(10)    Defendants, G. Richard Bevan, Chief Justice, and Robyn M. Brody, Gregory W. Moeller, Colleen D. Zahn, and Cynthia K.C. Meyer, Associate Justices (each a "Defendant Justice" or, collectively, the "Defendant Justices") are the members of the Idaho Supreme Court. Each is sued solely in his or her enforcement, rulemaking, and administrative capacities relating to the regulation of the practice of law and the machinery of attorney discipline in Idaho. None is sued in a judicial capacity. No relief is sought against any judicial act. Nothing in this Complaint asks this Court to review, enjoin, or otherwise disturb the adjudication of any case. However, in their non-judicial capacities outlined above, each Defendant Justice acts under color of state law with respect to the regulation of the practice of law. Each maintains chambers and performs those functions in Boise, Idaho, within this District.

(11)    In the aforementioned non-judicial capacities, the Defendant Justices hold four powers relevant to the issues raised in this action:

(a)    They promulgate and approve every rule of professional conduct and every rule of disciplinary procedure. Idaho Code §§ 3-412, 3-413, I.B.C.R. 101.

(b)    They hold the statutory command and independent authority to cause the investigation and prosecution of attorney misconduct. Idaho Code ("I.C.") § 3-408.

(c)    They approve every appointment to the Professional Conduct Board, from whose membership every Hearing Committee is drawn. I.B.C.R. 502(a), 511(c).

(d)    They possess exclusive authority over every sanction that publishes or touches a license—disbarment, suspension, public censure, and resignation in lieu of discipline. I.B.C.R. 506(a)–(d).

This Honorable Court has exercised its independent disciplinary authority recently: in 2025, it escalated a recommended sanction to disbarment sua sponte, on its own review. *Idaho State Bar v. Oleson*, 568 P.3d 83 (Idaho 2025). The Defendant Justices thus hold and exercise the rulemaking, appointment, and final-judgment authority through which every consequential stage of the machinery challenged in this action operates: fulfilling simultaneously the roles of grand jury, appointer of the prosecutor, sentencing court, and the sole appellate forum for hearing challenges to decisions it has directly or indirectly made[1].

(12)    Each individual Defendant is sued solely in the capacities stated in the caption and in Paragraphs (9) through (11), and in no judicial capacity. Plaintiff seeks no damages from any Defendant. All relief sought is prospective and equitable.

---

[1] This process is specified in detail below. *See infra* at Paragraph (46), *et seq.*

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 6

## IV.
## STATEMENT OF FACTS

<u>The Human Tragedy at the Root of This Case</u>

(13)    In June 2017, Julene Dodd—then sixty-five years old, fully independent, working as an insurance broker, and active in the running of a farm and the care of horses—saw her primary-care physician for chest pain and shortness of breath. A CT scan revealed a large hiatal hernia that had displaced much of her stomach into her chest, placing pressure on one of her lungs.

(14)    On August 16, 2017, Julene was admitted to Saint Alphonsus Regional Medical Center in Nampa, Idaho ("Saint Alphonsus") for an elective laparoscopic repair of the hernia, performed by Forrest R. Fredline, D.O. She was told she would go home the following day. Instead, that overnight stay became a months-long fight for her life—and the permanent loss of the life she had before walking into the hospital.

(15)    During the procedure, a portion of a surgical needle fractured off inside Julene's abdomen. Dr. Fredline did not retrieve it; he characterized the fragment as "too small to pose a danger" and proceeded. What his operative notes did not record was that the surgery had perforated Julene's small intestine.

(16)    The next day, hospital staff began administering enemas to induce a bowel movement before discharge. After each enema, Julene complained of worsening abdominal pain. For three days, her complaints were dismissed as ordinary surgical-wound pain, and the enemas continued—each one forcing fluid through a perforated bowel.

(17)    On August 19, 2017, Julene collapsed as nurses tried to help her from her hospital bed; her blood pressure had fallen to sixty over thirty (60/30). Emergency surgery revealed that her abdomen had filled with fluid and fecal matter escaping through the perforation, producing abdominal sepsis. Her abdomen was opened at the midline, irrigated, and left under a temporary

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 7

wound-vacuum closure; she was intubated and transferred to the intensive care unit. A third surgery followed on August 22, 2017.

(18)    Over the following four weeks at Saint Alphonsus, Julene suffered acute respiratory failure. Her swelling grew so severe that her toes turned black. Her surgical wound grew larger. Her family was told to prepare themselves, because Julene was likely to die.

(19)    On September 19, 2017, Julene was transferred, in serious condition, to a critical-care hospital. She remained there for more than two months—unable to move her limbs unaided, breathing through a tracheotomy, able to speak only in a faint whisper. On November 22, 2017, she was transferred to a skilled nursing facility. She still required wound care for abdominal infections. She still could not move without assistance. She suffered from depression. She was taking a combination of thirty-three medications.

(20)    Julene was not discharged home until February 23, 2018—191 days after an elective procedure that was to have required a single night in the hospital. For months afterward she required in-home care, because she could not use the toilet, take a shower, or move from her bed or a chair without assistance. She continued to require home care into late 2021.

(21)    Julene never recovered the life she had. The ordeal destroyed her kidneys: she suffered end-stage renal failure, and to this day she undergoes dialysis three times each week. She was forced to retire from her career as an insurance broker. After two years on a transplant waiting list, a kidney finally became available to her in the summer of 2024. She was compelled to decline it. She and her husband support themselves on William Dodd's income as a long-haul truck driver, and they could not afford even the Medicare copayment for the procedure and the anti-rejection medications that would follow. As Plaintiff told the press, Julene is now "existing, rather than living": on the days she is not undergoing dialysis, she mostly sleeps.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 8


ROSA PLLC
Commercial Advising & Legal Counsel

The Legal Malpractice: 648 Days of Silence Followed by a Four Day Miss

(22)    In August 2017, as Julene lay in the intensive care unit, attorney Rory Jones, Esq., of the Boise firm Jones Williams Fuhrman Gourley, P.A. ("JWFG"), came to her bedside at Saint Alphonsus and proposed that he represent the Dodds in a medical malpractice action arising from her care. Jones had represented Julene in a divorce some two decades earlier, and he knew her brother. On November 3, 2017, while Julene remained institutionalized, Jones presented a contingent-fee agreement. Julene and William Dodd signed it, retaining Jones and his firm to pursue claims against Dr. Fredline and Saint Alphonsus.

(23)    Then, for the better part of two years, nothing happened. Julene testified that she "had little contact with Mr. Jones or any representative of his firm" over the ensuing eighteen months; she called the firm every two or three months and received few details. The only demonstrable evidence of work performed by Jones and JWFG during the entirety of the representation was a billing log, produced in discovery, attesting to 8.1 hours of work.

(24)    Not until August 13, 2019—648 days after the engagement began, and six days before the limitations period on Julene's claims would otherwise have expired—did Jones file the statutory pre-litigation application with the Idaho State Board of Medicine. That filing tolled the limitations period. Jones represented Julene at the panel hearing on October 24, 2019. The panel issued its opinion on November 8, 2019, and served it on November 13, 2019.

(25)    The tolled limitations period expired on December 8, 2019. Jones did not file the Dodds' medical malpractice complaint until December 12, 2019—four days late. In filing that complaint, Jones certified under Idaho Rule of Civil Procedure 11 that the claims it pleaded were well-grounded in fact and warranted by law. Jones later admitted under oath that he had mis-

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 9

calendared the deadline—running it from the date the panel's opinion was served rather than the date it issued—and that he had filed the Dodds' case beyond the statute of limitations deadline.

(26)     Jones did not tell the Dodds what he had done. Not until May 22, 2020—more than five months after the late filing—did Jones inform Julene that he had missed the filing deadline by four days. The four-day miss was fatal: it extinguished the Dodds' claims against Dr. Fredline and Saint Alphonsus before those claims were ever heard.

<u>The Dodds' Last Remedy, Extinguished Without a Hearing on the Merits</u>

(27)     On December 6, 2021—within the limitations period governing claims against their former counsel—the Dodds filed a legal malpractice action against Jones and JWFG in the District Court of the Fourth Judicial District of the State of Idaho, in and for the County of Ada (Case No. CV01-21-18926). They amended the complaint on January 5, 2022 to allege professional negligence, breach of contract, and fraudulent concealment, and to seek declaratory relief. The matter was assigned to District Judge Cynthia Yee-Wallace, who had been appointed to the bench a few months prior.

(28)     To prevail, the Dodds bore the heavy "case-within-a-case" burden: they had to prove both that Jones was negligent and that the underlying medical malpractice action would have succeeded had it been timely filed. That showing turned on expert testimony. The Dodds retained two experts. Dr. Fred Simon—a general surgeon certified by the American Board of Surgery, licensed by the Idaho State Board of Medicine for more than three decades, and in practice as a general and trauma surgeon in Idaho during the very period of Julene's surgery and aftercare— would opine that her providers breached the applicable standard of care, including consultation with a local specialist who endorsed the community standard of care requirement. Rebecca

Czarnik, R.N., a life-care planner, would quantify economic damages in excess of eight million dollars.

(29)    The Dodds never got their day in court. The District Court struck Dr. Simon's testimony, holding his foundation insufficient as to the standard of care in the community of Nampa and his later declarations untimely under the scheduling order. It excluded Czarnik's damages testimony as untimely, declining to excuse a delay occasioned by a death in her immediate family. Stripped of the expert testimony required to prove the case-within-a-case, the Dodds lost on paper: the court granted summary judgment to Jones by Memorandum Order dated April 14, 2023, and entered judgment on April 19, 2023. The Dodds' case was decided not on what happened to Julene, but on the timing and foundation of expert disclosures. No court has ever heard the merits of what was done to her, or of what Jones's admitted four-day miss cost her.

The Appeal, the Protected Criticism, and the Sanctions Imposed on Counsel Personally

(30)    The Dodds retained Plaintiff and appealed as of right to the Idaho Supreme Court (Docket No. 50748-2023). Their briefing challenged the expert exclusions and the entry of summary judgment, and it raised claims of judicial bias implicating the Due Process Clause of the United States Constitution. It also stated plainly, as context, what the record and public data establishes: that there exists an improperly close relationship between the state bench and bar in Idaho, and that Idaho's appellate courts had not issued a single decision favoring a client over counsel in a legal malpractice matter in decades. In the Dodds' Opening Brief, Plaintiff was explicit about the risk of speaking out against the status quo: it was "advocated in full acknowledgment" that "the relationship between bench and bar shields attorneys from accountability," and with no naïve expectation of "immediate corrections to the self-serving nature of the judiciary."

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 11

(31)    At oral argument on September 9, 2024, members of the Court directed pointed attention to counsel's criticism of the district judge. One Justice characterized the briefing's criticism as "a gratuitous, pejorative attack on a respected trial judge," likening it to a tantrum—months before any opinion issued, the Court's focus on the criticism, rather than the merits, was already on display.

(32)    On March 3, 2025, the Court affirmed in a published opinion authored by Chief Justice G. Richard Bevan, in which Justices Brody, Moeller, Zahn, and Meyer concurred. The Court announced at the outset that it would not confine itself to resolving the appeal: it would "also thoroughly examine the behavior and legal arguments advanced by the Dodds' counsel." A true and correct copy of the opinion is attached hereto as Exhibit 5.

(33)    Jones had requested attorney fees against the Dodds under Idaho Code section 12-121. The Court declined to tax the Dodds. Invoking its authority to act sua sponte, the Court instead imposed sanctions personally against their counsel—Plaintiff—holding that "responsibility for the frivolous nature of this appeal lies at the feet of the Dodds' counsel, Angelo Rosa—not the Dodds," and awarding attorney fees against Plaintiff personally under both the frivolous-filings clause and the improper-purpose clause of Idaho Appellate Rule 11.2.

(34)    Central to the Court's sanctions analysis was its catalogue of counsel's criticism of the judiciary. The Court recounted that counsel had referred to the district judge as a "freshman"; had alleged that the judge gave "blind deference" to Jones; had questioned the district court's "fitness to render competent rulings"; had characterized the court's adherence to its scheduling order as treating that order like the "word of God"; and had described the court as "obstinate," motivated by "prurient curiosity," and acting out of a "fit of inexperience, intimidation or some other influence." The Court labeled these statements "ad hominem attacks" and "personal attacks,"

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 12

and invoked the adage about the lawyer who, when the law and the facts are against him, will "pound the table and yell like hell." A substantial portion of the opinion is devoted to counsel's criticism of the bench rather than to the merits of the rulings under review. The appeal so characterized was grounded at every step in the record: the firm's own billing log, the defendant attorney's sworn admission, a four-day calendar, and official public data substantiating every statistic in the briefing. While, again, Plaintiff does not ask this Court to review the sanctions ruling; he recites these characterizations because they are not confined exclusively within the opinion. Carried into the Bar's self-initiated grievance the following day as part of the "conduct described in the enclosed . . . Opinion," the "frivolous" label became—and remains—a predicate of the threatened enforcement. The Idaho Supreme Court acted precisely as Plaintiff anticipated it would act when such inconvenient facts were given a voice.

(35)    The Dodds timely petitioned the Idaho Supreme Court for rehearing on March 24, 2025, and filed a supporting brief on April 8, 2025. The Court denied rehearing on April 15, 2025, without substantive discussion. By order dated May 6, 2025, the Court awarded attorney fees on appeal against Plaintiff personally and costs against the Dodds. On May 13, 2025, the District Court entered an Amended Judgment reflecting those awards: $44,825.00 in attorney fees assessed against Plaintiff personally, and $3,734.60 in costs assessed against Julene and William Dodd.

(36)    Plaintiff satisfied the Amended Judgment in full; he paid the entire $48,559.60— $44,825.00 assessed against him personally and $3,734.60 in costs assessed against the Dodds (which the Dodds could not afford to pay)—together with accrued judgment interest, in installments concluding in May 2026. On May 29, 2026, counsel for the judgment creditors filed a Satisfaction of Judgment giving notice that Plaintiff had fully satisfied the judgment entered against him on May 13, 2025 pursuant to the Amended Judgment, and that all claims were fully

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 13

satisfied and released. A true and correct copy of confirmation of satisfaction of the Amended Judgment is attached hereto as Exhibit 1. Nothing remains owing. Nothing in this action seeks the return of any part of it. The Rule 11.2 sanction was an award of fees and costs in a civil appeal; it was not, and did not purport to be, discipline under the attorney-discipline system described below. It is pled here for what it is: the trigger for, and evidence of the animus behind, the separate disciplinary machinery that was set in motion against Plaintiff the day the opinion issued.

(37)    On July 14, 2025, the Dodds transmitted for filing a Petition for a Writ of Certiorari to the Supreme Court of the United States. The petition presented the question whether the Idaho Supreme Court's treatment of their appeal—including the imposition of sanctions upon their counsel without notice, hearing, or any avenue of recourse—comported with the Due Process Clause of the Fourteenth Amendment. As of the date of this Complaint, no docket number has ever been assigned to the petition, the filing fee tendered with it has never been negotiated, and no disposition or communication of any kind has been received. The judgments of the Idaho courts described above stand final.

A Closed Circle: How Idaho Selects Its Judges and Shields Its Own

(38)    The outcome of the Dodd litigation was not an aberration. It was the predictable product of a judicial structure that, by design, operates with little-to-no outside accountability. Plaintiff has documented that structure, from official public sources, in the scholarship and public commentary described below. The facts that follow are drawn from Idaho's statutes, from the Idaho Judicial Council's own published rules and annual reports, and from other official public records. The following are factual allegations necessary to establishing the proper context for the adjudication of the claims asserted in this Complaint.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 14

(39)    The bench-bar shield. Idaho's appellate courts have not issued a single decision favoring a client over counsel in a legal malpractice matter in several decades. Mandatory malpractice insurance for private-practice attorneys was adopted in Idaho only in 2018. A client injured by her lawyer in Idaho thus confronts a remedial landscape in which the state's appellate courts have not sided with a client in a generation. The closeness of bench and bar in Idaho is not an abstraction. In the Dodd matter, that closeness had a name and an office. Counsel of record for the attorney-defendants was Gary L. Cooper. Throughout the briefing of the Dodds' appeal—the Opening Brief filed October 10, 2023; the Reply Brief filed December 14, 2023 and during oral argument and post-argument briefing—Mr. Cooper was simultaneously serving as President of the Board of Commissioners of the Idaho State Bar: the elected governing body of the Bar, the supervisor of Bar Counsel, and the body whose approval Idaho's rules require before any Formal Charge may be filed. Mr. Cooper's term as Commissioner ran from 2021 to 2024. His presidency continued until July 2024, while the appeal remained pending. The Bar's own published minutes show him presiding over Board meetings—with Bar Counsel in attendance, and including executive sessions concerning professional discipline—in September 2023 and February 2024.

(40)    Idaho's citizens enjoy substantial rights over their judiciary on paper, yet drastically less so where it matters the most: in practice. The residents of Idaho have the statutory right to select their judges from a pool of eligible candidates through non-partisan popular elections. Idaho Code § 1-702. District Judges serve four-year terms; appellate judges serve six-year terms. Idaho Code §§ 1-702, 1-2404. Demand upon the judiciary has grown with the state: Idaho has been among the fastest-growing states in the nation, and annual court filings grew from 462,936 in 2010 to 609,723 in 2024. Yet, as set forth below, Idaho's electorate has been systematically excluded from choosing the judges who preside over it. The statutory promise implements a constitutional

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 15

command: the Constitution of the State of Idaho itself directs that the Justices of the Supreme Court and the District Judges be elected by the electors. *See* Idaho Const. art. V, §§ 6, 11.

(41)   The Idaho Judicial Council. The body that in practice controls both the selection and the regulation of Idaho's judges is the nine-member Idaho Judicial Council (the "Council"). Its seats are: one District Judge, one Magistrate Judge, two Idaho attorneys, four non-attorney members, and—as its ninth and leading member—the Chief Justice of the Idaho Supreme Court, who chairs it. The judge members are appointed by Idaho's Governor from a list created by the Idaho Supreme Court. The attorney members are nominated by the Idaho State Bar. The non-attorney members are selected, without further statutory definition, "from the residents of the state of Idaho." The only legislative involvement in the Council's composition is the Idaho Senate's ratification of the selected appointees. Idaho Code § 1-2101. The Council's stated purpose is legitimate, and its function (as far as its attorney and non-attorney members who have been selected to serve) is laudable. However, public records empirically establish the course deviation from the Council's stated purpose by its principal members over the past twenty years and, curiously, mirrors the improper, closed-cycle, design of the Idaho State Bar's disciplinary process.

(42)   How judicial vacancies are actually filled. When a judge leaves the bench mid-term or between elections, Idaho's Governor may appoint a replacement—but it is the Council that controls the process of filling the vacancy. The Council receives notice of the vacancy and publishes it. Attorneys submit applications. Applicants are screened for statutory compliance and peer-vetted through surveys of attorneys and judges—that is, by the membership of the Idaho State Bar. The Council then interviews the candidates and submits its choice to the Governor, who appoints. Idaho Judicial Council General Rules of Procedure 23–25. The Council's composition and the operation of this process—drawn entirely from the Council's own authorities—is

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 16

diagrammed in the document attached to this Complaint as "Exhibit 7." In law, this appointment mechanism is described as an exception to the electoral default. In practice, however, it is the rule rather than the exception. Since 2002, the appointment has carried a statutory runway. By an amendment enacted with an emergency clause, an appointed District Judge "shall hold office until the next general election for district judges occurring at least one year following the date of the judge's appointment." S.L. 2002, ch. 214 (S.B. 1312) (amending I.C. § 1-702). A vacancy occurring within a year of the ballot thus skips that ballot altogether, and the appointee's first appearance before the voters comes years later, as a sitting incumbent. In 2022, the Legislature amended the provision again—again with an emergency clause—re-keying the appointee's tenure from the January following the next general election to the January following the next judicial nominating election for district judges occurring at least one year after the appointment. S.L. 2022, ch. 85 (S.B. 1288) (amending I.C. § 1-702).

(43)    The impact of these practices is very visible:

(a)    Of Idaho's sitting judiciary, 41 of 46 District Judges (89.1%), all four Judges of the Court of Appeals, and four of the five Justices of the Idaho Supreme Court reached the bench by appointment rather than by contested election. The behavioral record bears this out in every dimension. It is compiled from the Secretary of State's election returns, the Council's and the Bar's own recruitment notices, and the session laws, and it is summarized with full citations at Exhibit 6.

(b)    Between 2012 and 2022, seventy-two individuals served as District Judges; fifty-four of them—three of every four—first reached the bench by appointment.

(c)    Of the twenty-seven constitutional-seat departures with computable timing noticed between 2016 and 2026, twenty—74%—were midterm, leaving the seat to

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 17

appointment rather than to the ballot, by margins of roughly ten months to more than three years. Six more occurred in the final months before a scheduled election and were nonetheless filled by appointment ahead of it, so that the appointee stood as an incumbent. Twenty-six of the twenty-seven never reached a ballot at all.

(d)     Every Idaho Supreme Court vacancy in the period—2018, 2021, and 2023—was itself a midterm departure filled by appointment: each departing Justice left with between one and one-half and more than three years remaining in an elected term. And the elections that remain are ratifications, with no opposition or alternative candidate proposed. Of one hundred twenty-two District Judge election events across the 2014, 2018, and 2022 cycles, one hundred six—86.9%—were unopposed. Appointed incumbents drew an opponent three times in fifty-two appearances. The number of contested races fell from eight in 2014 to two in 2018 and three in 2022. The citizens of Idaho hold the right to elect their judges; the Council has converted that right into the ratification of choices already made.

(44)     Judicial discipline behind closed doors. The Council that selects Idaho's judges also regulates them—in secret. Under the Council's own published rules: disciplinary proceedings are closed to the public; hearings are confidential unless the Council elects otherwise; the Council holds sole discretion to release or conceal the records of its proceedings; judicial performance evaluations are confidential; the Council may dispose of complaints through private admonitions; and a public reprimand may issue only with the accused judge's consent. Idaho Judicial Council General Rules of Procedure 7, 30, 31, 32(b), 36(b)(3)(V), 36(d), 36(d)(6). The results are what such a structure would predict. Over the twenty-year period from 2003 through 2023, the Council received 2,022 complaints of judicial misconduct and took a grand total of six (6) public

disciplinary actions—a public-discipline rate of approximately 0.3%. Idaho Judicial Council, Annual Reports (2003–2023). Either Idaho's judges are among the most well-behaved in the nation, or they are shielded by a body that appointed them, is chaired by their Chief Justice, and answers to no one.

(45)   The problem is recognized—including within Idaho's own bar. In 2015, the Center for Public Integrity ranked Idaho's judiciary 39th in the nation for accountability, assigning it a grade of "D-"—unchanged from its prior assessment in 2012. The most recent published survey of the Idaho State Bar's own membership on the subject, reported by the ABA Journal in 2022, points the same direction: approximately 70% of responding attorneys expressed interest in judicial service, yet only 21% had ever applied—with the judicial selection process itself the most frequently identified concern, and a biased selection process among the most commonly stated. Even the profession the system most directly touches recognizes the system for what it is.

### The Idaho Supreme Court's Plenary Control Over Attorney Discipline

(46)   Attorney discipline in Idaho is not an executive or administrative function. It is a judicial function of the Idaho Supreme Court, which holds "the inherent power and the exclusive responsibility within the State to maintain appropriate standards of Professional Conduct." Idaho Bar Commission Rule ("I.B.C.R.") 500(a). The Court has repeatedly held that attorney discipline matters are "judicial in nature, rather than administrative," with "the responsibility for assessing facts and ordering sanctions" resting with the Court itself. *See, e.g., Idaho State Bar v. Souza*, 142 Idaho 502, 505, 129 P.3d 1251, 1254 (2006). The commissioners of the Idaho State Bar "are part of the judicial rather than the executive branch." *Matter of Malmin*, 126 Idaho 1024, 1027–28, 895 P.2d 1217, 1220–21 (1995). The Rules themselves declare what these proceedings are: "neither civil nor criminal but" "sui generis." I.B.C.R. 525(a).

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 19

(47)    The Court controls the disciplinary machinery at every consequential stage:

It writes the rules. No disciplinary rule of the Idaho State Bar takes effect until the Idaho Supreme Court approves it. Idaho Code §§ 3-412, 3-413; I.B.C.R. 101.[2] The Rules of Professional Conduct that Plaintiff is now accused of violating, and the Bar Commission Rules under which the investigation proceeds, are the Court's own procedural and substantive law. (b) No adjudicator sits without its approval. The Professional Conduct Board and its Hearing Committees—the bodies that would hear any formal charge against Plaintiff—exist only by the Court's approval of each appointment. I.B.C.R. 502(a), 502(c)(5). Hearing Committees are drawn from that Court-approved membership, I.B.C.R. 511(c), and their members are held to judicial disqualification standards: a member "shall not take part in any proceedings in which a judge, similarly situated, would be required to recuse himself or herself." I.B.C.R. 503(e). (c) It owns every consequence that matters. Only the Supreme Court may disbar, suspend, publicly censure, impose license-limiting probation, or accept a resignation in lieu of discipline; the subordinate bodies may only recommend those sanctions. I.B.C.R. 506(a)–(d), (f); Idaho Code § 3-408. The only tier of discipline from which the Court is absent is the private, unpublished tier; everywhere a sanction publishes or touches the right to practice law, the Court's authority is exclusive. (d) It renders final judgment. On the record transmitted to it, the Court conducts its own independent review, and "[t]he supreme court shall thereupon enter such judgment in said matter as it deems proper." Idaho Code § 3-408; I.B.C.R. 511(k).

---

[2] A true and correct visual representation of the Idaho State Bar's Disciplinary Process, derived strictly from the applicable provisions of the Idaho Code and Idaho Bar Commission Rules, is attached and incorporated hereto as "Exhibit 2."

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 20

(48)    Precision confirms the pattern rather than undermining it. The Court does not appoint the Bar's prosecutorial arm: the Board of Commissioners is elected by the Bar's members, Idaho Code § 3-402, and Bar Counsel is appointed by the Board, I.B.C.R. 504(a). But that arm is itself an organ of the judicial branch. It operates only within the Court-approved Rules. And its unilateral power ends at the private, unpublished tier: after mandatory written notice and an opportunity to respond, Bar Counsel may issue an informal admonition or private reprimand— itself subject to Hearing Committee review at either party's request, and to Supreme Court review thereafter. I.B.C.R. 509(c)(1), 509(d). Bar Counsel cannot file a Formal Charge without the Board of Commissioners' finding of probable cause and approval of the filing. I.B.C.R. 511(a). Every sanction that publishes or touches the license belongs to the Court alone. Before any charge is filed, Bar Counsel evaluates and investigates grievances and may compel testimony and documents by investigatory subpoena. I.B.C.R. 101, 509(a)–(b), 524(a); Idaho Code § 3-414.

(49)    In short: the Idaho State Bar staffs the machinery, but the Idaho Supreme Court owns the outcomes. The discipline of Idaho lawyers is, from grievance to final judgment, the work of the Court—delegated, but never surrendered. A graphic representation of the disciplinary process, identifying the Court's connection to each stage with citations to each governing rule, is attached hereto as Exhibit 2 and incorporated by this reference.

(50)    The consequence for this case is structural and concrete. The disciplinary proceeding now threatening Plaintiff's license is governed by rules the Idaho Supreme Court wrote and approved. It is prosecuted within a process the Court controls. It is subject to adjudication by bodies no member of which sits without the Court's approval. It is concluded by a final judgment that only the Court may enter. And the Court occupying every one of those stations is the same court whose opinion is the sole asserted basis for the investigation, and the same institution whose

conduct is the subject of the speech under investigation. Nor do these stations operate independently. The rulemaking, appointment, prosecutorial, and adjudicative functions described above depend upon and reinforce one another; no one of them could be severed from the rest without leaving the closed circuit—and the constitutional defect—intact. The machinery described in this Complaint is challenged as the integrated whole that it is.

Plaintiff's Protected Speech: In the Record, in the Press, and in Scholarship

(51)     Plaintiff did not confine his criticism to private complaint. He advanced it where such speech belongs—on the record, in the press, and in scholarship—and on matters of public concern of the first order: the integrity, accountability, and democratic legitimacy of a state's courts and bar.[3].

(52)     In the record, from the Opening Brief onward and in vigorous advocacy of his clients' interest, Plaintiff argued three things: that the rulings below reflected the unusually close relationship between bench and bar in Idaho; that Idaho's remedial structure shields negligent attorneys from accountability; and that the judicial-bias standard as applied in Idaho departs from the requirements of federal due process.

(53)     In the press. Plaintiff brought the Dodds' story to the largest newspaper in Idaho: the Idaho Statesman. On September 22, 2024, the Idaho Statesman published a feature on the case—on the front page of its Sunday edition, 'above-the-fold'—recounting Julene's botched procedure, Jones's missed deadline and its concealment, and Plaintiff's public statements that legal

---

[3] Plaintiff has, throughout his career, written and published extensively. He is the author of Idaho Practice: Pre-Trial Civil Procedure, an annually updated treatise published by LexisNexis. He is also the author of the forthcoming title Idaho Practice: Business Law Fundamentals, which will be released imminently, also by LexisNexis. In addition, he has contributed several written pieces on Idaho practice to various legal media outlets in addition to several law review and practice journal articles that do not concern Idaho.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 22

malpractice is "a taboo subject in the Idaho State Bar" and that no Idaho appellate decision had favored a client in a legal malpractice matter in at least thirty years. The Statesman returned to the story on or about March 16, 2025, in the days after the opinion issued: Plaintiff reaffirmed his criticism and, in the same interview, described the five Justices of the Idaho Supreme Court as "remarkable jurists" and "decent human beings"—because his criticism was, and is, directed at the structure and not at any person. True and correct copies of the feature and the follow-up report are attached hereto as Exhibit 3 and Exhibit 4.)

(54)    In scholarship. Plaintiff authored a scholarly treatment of the structural facts set forth above—"The Idaho Judiciary: A Closed Circle." It documents, from official public records, the Council's appointment mechanism, the exclusion of Idaho's electorate from judicial selection, the confidentiality regime governing judicial discipline, and the 0.3% public-discipline rate, as an excerpt of a detailed study prepared for national publication. Neither the study nor the précis has been published. Plaintiff has withheld the study from submission and publication. He has circulated the précis to scholars and other professionals for comment, as is customary in scholarly work, but he has not permitted it to be published. He has withheld both under the threat this Complaint describes, as alleged at paragraphs (68) and 77 below.

(55)    Every statistic, statement, and calculation in that body of speech is substantiated by official records and public documents. The Idaho Supreme Court's own opinion confirms that Plaintiff's criticism of the courts was squarely before it: the Court sanctioned him under an improper-purpose clause it reached on its own initiative, while devoting a substantial portion of its analysis to his criticism of the bench rather than to the rulings he had challenged.

**COMMENT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 23

Retaliation: The Disciplinary Investigation into Plaintiff

(56)    The Idaho Supreme Court issued its opinion on Monday, March 3, 2025. That same day, the Office of Bar Counsel of the Idaho State Bar opened a disciplinary investigation of Plaintiff, designated ISB File No. 25-104C.

(57)    No client complained. No opposing party complained. No member of the public complained. By its own terms, the grievance was a "Grievance filed by the Idaho State Bar," and the investigation was opened, in Bar Counsel's words, "based on conduct described in the enclosed Idaho Supreme Court Opinion." The sole enclosure—and the sole asserted basis for the investigation—was the March 3, 2025 opinion itself.

(58)    On information and belief, the Idaho Supreme Court referred or transmitted its opinion to the Office of Bar Counsel, as evidenced by the fact that the Bar opened its investigation on the very day the opinion issued and grounded that investigation on nothing but the opinion.

(59)    By letter dated March 4, 2025—marked "PERSONAL & CONFIDENTIAL"— investigator Deanna K. Tollefson of the Office of Bar Counsel notified Plaintiff that the conduct described in the opinion was understood to implicate three Idaho Rules of Professional Conduct ("I.R.P.C."):

(a)    I.R.P.C. 3.1—bringing or defending a proceeding, or asserting or controverting an issue therein, without a basis in law and fact for doing so that is not frivolous;

(b)    I.R.P.C. 8.2(a)—making a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge; and

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 24

(c)    I.R.P.C.  8.4(d)—engaging  in  conduct  that  is  prejudicial  to  the administration of justice.

In the course of the investigation, the Office of Bar Counsel expanded its inquiry beyond the three Rules identified in the March 4, 2025 letter: by letter of July 3, 2025, Assistant Bar Counsel directed Plaintiff to address six further items, invoking I.R.P.C. 1.2(a), 1.3, 1.4, and 3.4(c), and asking—among other things—whether Plaintiff's raising of the issue of judicial bias for the first time on appeal, without first moving to disqualify the district judge, itself violated I.R.P.C. 1.2(a), 1.3, and 3.1. Every subject of every inquiry remained conduct described in, or arising from, the Idaho Supreme Court's own opinion; and among them, the Bar placed the making of the constitutional argument itself under investigation.

(60)    The office of Bar Counsel—on whose behalf the investigation was opened and is maintained—is presently held by Joseph N. Pirtle.

(61)    I.R.P.C. 8.2(a) ("Rule 8.2(a)"), by its terms, reaches only statements "concerning the qualifications or integrity of a judge." The statements the Idaho Supreme Court catalogued as the basis for its sanctions—"freshman," "blind deference," "fitness to render competent rulings," and the rest—are precisely the statements the Bar's Rule 8.2(a) charge now reaches. The speech for which the Court sanctioned Plaintiff and the speech for which the Bar now investigates him are one and the same.

(62)    The reach now claimed for these rules has no precedent in their enforcement. A review of the Idaho State Bar's published disciplinary decisions discloses no public discipline of any Idaho attorney under Rule 8.2(a), and none under Rule 8.4(d), in the history of those rules. The provisions invoked against Plaintiff's record-based advocacy have, so far as the public record discloses, never been publicly enforced against anyone.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 25

(63)     Bar Counsel's letter requested a written response "within thirty (30) days from the date of this letter"—the deadline underscored in the original. The request was compulsory by the Rules' own terms: failure "without justifiable grounds" to "cooperate with or respond to a request from" Bar Counsel is itself a ground for sanctions. I.B.C.R. 505(e). The letter also advised Plaintiff that he could request deferral of "further investigation" on account of "pending litigation." That advice confirms the posture: the investigation was opened, and remains open, while the appellate process that produced its sole asserted basis was still running its course. Indeed, the investigation was opened three weeks before the Dodds even petitioned for rehearing, six weeks before rehearing was denied, and more than four months before their certiorari petition was transmitted to the Supreme Court of the United States. No provision of the Idaho Bar Commission Rules confers any right to such deferral, or constrains its withdrawal; the invitation is a matter of Bar Counsel's discretion, revocable at will. And the exposure it defers has no endpoint: proceedings under the Rules "shall be exempt from all statutes of limitations." I.B.C.R. 525(o).

<u>Ongoing and Imminent Injury, and the Absence of an Impartial State Forum</u>

(64)     As of the date of this Complaint, ISB File No. 25-104C remains open and ongoing. No probable-cause finding has been made. No formal charge complaint has been filed. No disciplinary judgment of any kind has been entered. Defendants have not disavowed enforcement, and nothing constrains its timing: Bar Counsel may seek the Board of Commissioners' approval to file a Formal Charge at any moment of his choosing, and the file he maintains—open now for sixteen months—is exempt from all statutes of limitations. I.B.C.R. 525(o). Sixteen months on, no further investigative step has been requested of Plaintiff, and the file has been neither dismissed nor resolved. On information and belief, the investigative phase is complete, and the filing of a Formal Charge—the next step the Rules provide—is imminent. That imminence bears on injury,

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 26

not on abstention. Under the governing rules, no disciplinary proceeding exists unless and until a Formal Charge is filed upon the Board of Commissioners' approval, I.B.C.R. 511(a)–(b), and none has been filed. An investigation—even a completed one—is not an ongoing proceeding. The record of the investigation confirms its maturity. After Plaintiff's response to the grievance and his responses to two rounds of follow-up inquiry, the Office of Bar Counsel invited, and on November 7, 2025 received, submissions addressing aggravating and mitigating circumstances— the assessment that attends a completed investigation. In the more than eight months since, no further investigative step has been requested of Plaintiff. The Bar's own words confirm the posture: its September 9, 2025 inquiry announced that its requests were made "[i]n order to conclude this investigation."

(65)    The consequences Plaintiff faces are not hypothetical. Under the structure described above, the sanctions to which the pending investigation may lead include public censure, suspension, and disbarment—each of which only the Idaho Supreme Court may impose. The endpoint of the process now trained on Plaintiff is the loss of his license and his livelihood, at the hands of the very court whose conduct his speech addressed: speech rendered in passionate advocacy of a decent woman, whose life has been ruined by the ineptitude of Idaho's medical and legal professions, and then the parochial vicissitudes of the Idaho Judiciary.

(66)    Julene Dodd—the woman whose maiming and betrayal are the beginning of this story—has expressed to Plaintiff her disapproval of the Idaho legal establishment's decision to overlook her story in favor of pursuing the lawyer who told her story, and her sympathy with him for bearing it.

(67)    The investigation and threatened enforcement impose present and continuing injury. Plaintiff was required to answer the Bar's letter; failure to respond to a request from Bar

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 27

Counsel is itself a ground for sanctions. I.B.C.R. 505(e). Before any charge has issued, he remains subject to Bar Counsel's power to compel testimony and documents by investigatory subpoena—and, at the investigation's end, to Bar Counsel's power to impose private discipline by his own hand. I.B.C.R. 509(b), 509(c)(1), 524(a). He practices under the cloud of a pending disciplinary file opened, on its own motion, by the regulator of his profession.

(68)    The investigation and threatened enforcement also chill, and are reasonably calculated to chill, Plaintiff's continuing speech. Plaintiff's detailed study of the Idaho judiciary remains in preparation for national publication. His public commentary on the Idaho courts and bar is ongoing. Under the construction of Rule 8.2(a) now deployed against him—in which an attorney's record-based criticism of the judiciary is catalogued in a sanctions opinion and becomes the predicate for a disciplinary charge—every future statement Plaintiff makes concerning the qualifications or integrity of an Idaho judge carries the threat of professional destruction. Nor is the chill confined to Plaintiff. The message to every member of the Idaho State Bar is unmistakable, and it falls upon precisely the speakers—the lawyers who know the system best—whose criticism of the judiciary the public most needs to hear. Plaintiff's intended future commentary includes, specifically:

(a)    the completed national study described above;

(b)    continued publication and commentary on the structure of attorney discipline in Idaho, including the matters pled in this Complaint;

(c)    continued publication and commentary on judicial selection in Idaho, including the divergence, documented at paragraphs (40)–(43), between the elections Idaho's constitutional and statutory design promises and the Council-administered appointment practice that has displaced them; and

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 28

(d)      continued publication and commentary on judicial accountability, including the confidential discipline regime and the disciplinary record documented at paragraph (44). Each subject is a matter of profound public concern. Each rests on official public records. Each lies within the zone of speech now threatened.

(69)     There is no impartial state forum in which Plaintiff can vindicate his federal and constitutional rights. Any defense to the pending investigation must be presented within machinery whose governing rules the Idaho Supreme Court wrote and approved, before adjudicators seated only with the Court's approval, and subject to a final judgment that only the Court may enter. The Court occupying each of those positions is the author of the sanctions opinion that constitutes the sole basis of the investigation, the object of the speech at issue, and the institution whose structural dominance of the process is itself part of what Plaintiff's speech documented. Nor does any avenue beyond that machinery supply the review due process requires. The sole as-of-right terminus of Idaho attorney discipline is the judgment of the very Court whose opinion initiated the proceeding. The only theoretical avenue beyond it—a petition for a writ of certiorari under 28 U.S.C. § 1257— is "not a matter of right, but of judicial discretion," Sup. Ct. R. 10; is granted as to fewer than one hundred of the thousands of petitions filed each Term; reaches only a final judgment, after any deprivation of Plaintiff's license and any silencing of his speech would already be complete. The existing disciplinary structure of the Idaho State Bar and its relationship to the Idaho Supreme Court, by design, cannot supply what due process requires: a neutral tribunal in the first instance. *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972). <u>This Court cannot repair this fundamentally defective system</u>. <u>It can, however, declare it to be defective by virtue of its unconstitutionality</u>.

**COMMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 29

(70)    Plaintiff has no adequate remedy at law, and the injury threatened reaches past the chilling already running. Plaintiff's Idaho practice comprises approximately fifteen active client engagements—many on substantial flat fees paid in full, several at no cost, and others on more custody hourly fee arrangement—at stages where a forced substitution of counsel would be ruinous to the client. Enforcement against his license would destroy the practice and the client relationships themselves, a loss no later judgment could restore. And the only members of the public concretely affected by this machinery's operation are those clients—not one of whom is the source of the Bar's file. Continued pursuit of the disciplinary proceeding would only further evidence Defendants' preoccupation with punishing Plaintiff rather than protecting the public, given the indifference toward those of the public whose interests will be trampled on.

(71)    Plaintiff accordingly seeks relief that is prospective only: a declaration of his rights, and injunctive relief precluding the threatened enforcement of the challenged rules against his protected speech, including the initiation of formal disciplinary charges founded upon it. Plaintiff asks this Court to disturb no judgment of any Idaho court. He asks only that the machinery now being used to punish and to silence constitutionally protected criticism be halted before it completes its work. As to the structural relief sought, Plaintiff makes no request of this Court for prescribing no successor mechanism, nor to supervise any state institution (beyond enforcing the orders granted in this action), nor to superintend any aspect of the design of Idaho's disciplinary machinery. The relief sought is a declaration and a negative decree. What happens after is on the shoulders of the People of Idaho and their elected representatives.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 30

## V.
## FIRST CAUSE OF ACTION

### FOR INJUNCTIVE RELIEF
### [AGAINST RETALIATION FOR PROTECTED SPEECH]

### U.S. Const. amend. I and XIV; 42 U.S.C. § 1983
(Against All Defendants)

(72)    Plaintiff realleges and incorporates every preceding paragraph and further alleges:

(73)    Plaintiff's speech—his record advocacy for the Dodds, his statements to the press, and his scholarship on the structure and accountability of Idaho's judiciary—addressed matters of public concern of the first order and is protected by the First Amendment.

(74)    Defendants subjected Plaintiff to adverse action: a self-initiated disciplinary investigation, opened with no complainant, founded solely upon the Idaho Supreme Court's opinion, invoking rules that threaten his license, backed by investigatory-subpoena power and a response requirement enforceable by sanction, maintained without any limitations period, and carrying the threat of formal charges and public discipline. Such action would chill an attorney of ordinary firmness from continuing to speak.

(75)    Plaintiff's protected speech was a substantial and motivating factor in the adverse action. The investigation was opened the same day the opinion cataloguing his criticism issued; it was opened by the regulator itself, on its own motion; its sole asserted basis is the opinion; it invokes a rule—Rule 8.2(a)—that by its terms reaches only statements about judges; and it targets the very statements the opinion catalogued.

(76)    The same-decision defense is foreclosed by the objective record: the rules invoked have never been publicly enforced against any Idaho attorney; the machinery that mobilized against Plaintiff within hours produces public discipline in a fraction of one percent of complaints; grievances ordinarily arrive from complainants, and here there was none; and the charges cannot

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 31

ROSA PLLC
Commercial Advising & Legal Counsel

succeed under the Bar's own governing standards, which place the burden on the Bar to prove falsity by clear and convincing evidence as to statements that are constitutionally protected opinion, rhetorical hyperbole, and disclosed-basis advocacy. The objective record likewise supports—and Plaintiff pleads—the inference of pretext: advocacy grounded in a billing log, a sworn admission, a calendar, and official public data is not "frivolous" under any standard, including the good-faith-argument standard of Idaho's own Rule 3.1; and the attorney whose conduct that advocacy exposed had been represented, throughout the briefing and argument of the appeal, by the attorney sitting simultaneously as President of the Idaho State Bar. *See* Paragraph (39). The characterization of such advocacy as sanctionable, followed within a day by the regulator's self-initiated grievance under never-enforced rules, admits of the inference that the asserted professional-conduct concern is pretext and the criticism itself the true object. Plaintiff pleads that inference from these objective circumstances alone.

(77)    Each Defendant's role in the adverse action is actionable. Bar Counsel opened the investigation and maintains it. The Defendant Justices' published opinion—with its sua sponte improper-purpose finding and its catalogue of Plaintiff's criticism—set the machinery in motion. It was transmitted to the Bar, which acted upon it the day it issued. On information and belief, the referral was made with the intent and expectation that the Bar would act. A retaliatory motive that sets in motion the acts of others is not laundered by intermediate steps.

(78)    The retaliation has caused and continues to cause injury. Plaintiff has been required to respond on pain of independent sanction. I.B.C.R. 505(e). He practices under an open file. He has self-censored, including by withholding his completed national study from publication. He faces the threatened loss of his license for the content of his speech.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 32

## VI.
## SECOND CAUSE OF ACTION

### FOR INJUNCTIVE RELIEF
### [AS TO APPLICATION OF I.R.P.C. 8.2(A), 3.1, AND 8.4(D) TO CONSTITUTIONALLY PROTECTED SPEECH]

### U.S. Const. amend. I and XIV; 42 U.S.C. § 1983
(Against All Defendants)

(79)    Plaintiff realleges and incorporates every preceding paragraph and further alleges:

(80)    The statements upon which the investigation and threatened enforcement are founded—catalogued in the opinion and set forth above—are, each and all, constitutionally protected. They are expressions of professional opinion and rhetorical hyperbole grounded in a disclosed record. They were advanced in briefing, to the press, and in scholarship on matters of public concern. None is a false statement of fact.

(81)    Enforcement of Rule 8.2(a) against these statements would be unconstitutional as applied. The Bar cannot carry its burden of proving, by clear and convincing evidence, that any catalogued statement is a false statement of fact made with knowledge of falsity or reckless disregard, judged objectively. And the construction of the rule deployed here—under which record-based criticism of judicial performance in briefing is disciplinable—would punish the core political speech the First Amendment most jealously protects, by the speakers best positioned to utter it.

(82)    Enforcement of Rule 3.1 and Rule 8.4(d) premised on the same statements would be unconstitutional as applied for the same reasons. Advocacy grounded in the record and in official public data is not frivolous. And speech that is constitutionally protected cannot be recharacterized as 'conduct prejudicial to the administration of justice' and punished for its content.



**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 33

(83)    The threatened enforcement, under the construction deployed against Plaintiff, presently chills his continuing speech and the speech of every Idaho attorney who would criticize a court from a record. The chill extends to, and the as-applied challenge presented in this Count embraces, the intended future commentary enumerated at Paragraph (68). The challenged rules can no more constitutionally be applied to that intended speech—defined by its record-based content and its enumerated subjects—than to the statements already catalogued.

## VII.
## THIRD CAUSE OF ACTION

### FOR INJUNCTIVE RELIEF
### [AS TO DENIAL OF DUE PROCESS BY ENFORCEMENT OF AN UNCONSTITUTIONAL AND STRUCTURALLY BIASED MECHANISM]

### U.S. Const. amend. XIV; 42 U.S.C. § 1983
(Against All Defendants)

(84)    Plaintiff realleges and incorporates every preceding paragraph and further alleges:

(85)    The Due Process Clause forbids adjudication where, under objective standards and a realistic appraisal of human tendencies, the structure of the proceeding creates a probability of bias too high to be constitutionally tolerable. This Count accuses no individual of actual bias. It describes a structure.

(86)    Any formal disciplinary proceeding against Plaintiff would be adjudicated, in final judgment, by a court every member of which: (a) authored or joined the published accusation that is the proceeding's sole basis, including an improper-purpose finding reached sua sponte, without notice or hearing; (b) has already adjudged the very statements at issue to be sanctionable, and punished them once; (c) is among the targets of the criticism to be judged; and (d) presides over a machinery whose rules it wrote, whose adjudicators sit only with its approval, and whose every consequential outcome it alone may impose.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 34

ROSA PLLC
Commercial Advising & Legal Counsel

(87)    No cure exists within the structure. The opinion was unanimous. The disqualifying involvement is shared by every member of the only body with final judgment power. Idaho's own remedial arithmetic—disregarding a conflicted member's vote where an unbiased remainder exists—has no remainder to work with. Idaho law itself recognizes prejudgment as disqualifying, and it holds the members of this machinery's hearing committees to judicial disqualification standards. The structure supplies no answer when the disqualification reaches the top.

(88)    Enforcement of the challenged rules against Plaintiff through this structure, premised on this opinion, would deny him due process of law. The threat of being subjected to that process is itself a present injury.

## VIII.
## FOURTH CAUSE OF ACTION

### FOR DECLARATORY RELIEF
### [AS TO DENIAL OF DUE PROCESS BY OPERATION OF ALL UNCONSTITUTIONALITY STATE BAR DISCIPLINARY STRUCTURE IN ALL CONTESTED APPLICATIONS]

**U.S. Const. amend. XIV; 42 U.S.C. § 1983**
(Against All Defendants)

(89)    Plaintiff realleges and incorporates every preceding paragraph and further alleges:

(90)    This Count is pled independently of Plaintiff's First through Third Causes of Action. It does not depend upon the March 3, 2025 opinion, upon the identity of Plaintiff's accusers, or upon the content of any charge. It describes the structure itself. It is presented because what is at stake in this action is not merely retaliatory discipline against one attorney, but discipline for every Idaho attorney within a structure that is defective regardless of the charges.

(91)    Attorney discipline in Idaho is conducted, from first grievance to final sanction, within a single closed circle whose every stage the Idaho Supreme Court controls. The Court

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 35

promulgates the governing rules. The prosecuting authority, Bar Counsel, serves under a Board of Commissioners that the Court's own precedent locates within the judicial branch. The adjudicators at every intermediate stage sit with the Court's approval. Final judgment, and every consequential sanction, belongs to the Court alone. No stage of the process is subject to review by any authority independent of the Court. The sole theoretically external check—certiorari in the Supreme Court of the United States—reaches fewer than one hundred of the thousands of petitions filed each Term.

(92)     This structure lacks every safeguard on which *Withrow v. Larkin*'s presumption of integrity rested. Withrow sustained the combination of investigative and adjudicative functions in an executive-branch agency whose determinations remained subject to review in a separate and independent judiciary. Here there is no second branch and no external review. The combined functions are held by the judiciary itself, at its apex. Idaho's own decisions—declaring these proceedings judicial in nature and their administering officers part of the judicial branch— foreclose any characterization of the scheme as administrative action awaiting independent judicial scrutiny. Where the adjudicator of last resort is also the rule-maker and the supervisor of the prosecution, and no authority outside its control reviews any stage of the proceeding, the structure itself creates a probability of institutional bias too high to be constitutionally tolerable.

(93)     Idaho's own law supplies the standard this structure cannot meet. Idaho holds prejudgment disqualifying. Its remedial arithmetic requires an unbiased remainder. And I.B.C.R. 503(e) holds the members of this machinery's hearing committees to judicial disqualification standards. The structure thus imposes at its base the very neutrality requirement it is incapable of supplying at its top. In every contested proceeding, the respondent's final adjudicator is the body

that wrote the rules and supervises the prosecutor, and no mechanism within the structure can cure that condition.

(94)    The final adjudication of contested Formal Charges through this structure denies procedural due process to every attorney who contests such charges, Plaintiff among them. The defect is present in every contested application by design. The machine (i.e., the system of discipline) is defective and must be remade. Redress of this issue is within this Honorable Court's jurisdiction through declaration and by negative decree. Such redress is legally permitted and does not require the Court to prescribe, supervise, or superintend any successor mechanism. While Plaintiff wholeheartedly alleges that a non-defective system is mandatory, the design, remaking and implementation of that system is the responsibility of the State of Idaho.

## IX.
## FIFTH CAUSE OF ACTION

### FOR DECLARATORY JUDGMENT

**28 U.S.C. §§ 2201–2202**
(Against All Defendants)

(95)    Plaintiff realleges and incorporates every preceding paragraph and further alleges:

(96)    An actual, substantial, and immediate controversy exists between the parties. Defendants maintain an open disciplinary investigation of Plaintiff founded solely on his speech; they assert the authority to charge and discipline him for it; and they have not disavowed enforcement. Plaintiff maintains that the rules invoked cannot constitutionally be applied to his statements, and that enforcement through this structure would deny him due process. Plaintiff should not be required to choose between his license and his liberty of speech, or to complete the very injury he challenges, before his rights are declared. The controversy extends to Plaintiff's

intended future commentary enumerated at Paragraph (68), as to which the threat of enforcement is credible, present, imminent, and undeniable.

(97)    Declaratory relief is necessary and appropriate to confirm the unconstitutional nature of the rules and processes identified in this Complaint and as to the subject-matter of those causes of action who principal remedy is injunctive in nature. *See supra*.

(98)    Plaintiff is therefore entitled to a declaration of his rights as set forth in the Prayer for Relief.

## X.
## SIXTH CAUSE OF ACTION

### FOR INJUNCTIVE RELIEF
### [AS TO FACIAL OVERBREADTH AND VAGUENESS OF I.R.P.C. 8.4(D) AS APPLIED TO THE CONTENT OF COURT FILINGS]

### U.S. Const. amend. I and XIV; 42 U.S.C. § 1983
(Against All Defendants)

(99)    Plaintiff realleges and incorporates every preceding paragraph and further alleges:

(100)    This Count is pleaded in the alternative, and only to the extent the Court concludes that Rule 8.4(d) may constitutionally reach the content of advocacy in court filings at all.

(101)    As construed to reach the content of court filings, Rule 8.4(d)—'conduct that is prejudicial to the administration of justice'—prohibits a substantial amount of protected speech relative to any legitimate sweep. It supplies no standard by which an attorney of ordinary intelligence can know what advocacy it forbids, and it thereby invites arbitrary and discriminatory enforcement. Its deployment here—against record-based criticism, alongside a speech-specific rule it would render superfluous—illustrates both defects.

(102)    Relief on this Count is sought against enforcement of the rule, not against its promulgation.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 38

# XI.
# PRAYER FOR RELIEF[4]

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)     Enter a declaratory judgment as to the following:

(a)     that I.R.P.C. 8.2(a), 3.1, and 8.4(d) are unconstitutional as applied to the statements catalogued in the Idaho Supreme Court's March 3, 2025 opinion and identified in this Complaint, and that Defendants' threatened enforcement of those rules against that speech violates the First and Fourteenth Amendments;

(b)     that I.R.P.C. 8.2(a), 3.1, and 8.4(d) cannot constitutionally be applied to Plaintiff's intended future commentary including, inter alia, those enumerated in Paragraph (68) of this Complaint—truthful, record-based statements, and expressions of opinion grounded upon disclosed official records, concerning the structure, selection, accountability, and discipline of the Idaho judiciary—and that Defendants' threatened enforcement of those rules against that commentary violates the First and Fourteenth Amendments;

(c)     that the initiation or prosecution of formal disciplinary proceedings against Plaintiff premised upon that opinion, through a machinery whose final adjudicators authored the accusation, would deny Plaintiff due process of law; and

---

[4] Plaintiff seeks no damages, no relief from any final judgment entered by the courts of Idaho, and no relief against any Defendant in any capacity other than as pled. The relief requested in this Prayer runs to each of the challenged rules—I.R.P.C. 8.2(a), 3.1, and 8.4(d)—and to the enforcement machinery described in this Complaint as an integrated whole. No shorthand reference in this Complaint to any rule, provision, or component of that machinery narrows the scope of the challenge or of the relief requested.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 39

ROSA PLLC
Commercial Advising & Legal Counsel

(d)      that the structure of attorney discipline in Idaho—in which the Idaho Supreme Court promulgates the governing rules, supervises the prosecuting authority through a Board of Commissioners that the Court's own precedent locates within the judicial branch, approves the adjudicators at every intermediate stage, and sits as the sole and final judgment-giver, with no stage of the process subject to review by any authority independent of that Court—denies procedural due process to every attorney who contests formal disciplinary charges within it.

(2)      Enter preliminary and permanent injunctive relief—in aid of the foregoing declarations, and to the extent declaratory relief alone proves unavailable or is not honored—as follows:

(a)      restraining Defendant Pirtle, in his official capacity, and each person within the scope of Federal Rule of Civil Procedure 65(d)(2) with actual notice, from initiating or causing to be initiated Formal Charges against Plaintiff under I.R.P.C. 3.1, 8.2(a), or 8.4(d) premised upon the statements catalogued in the March 3, 2025 opinion or upon the intended future commentary enumerated at Paragraph (68) of this Complaint, pending final judgment and thereafter as this Honorable Court deems proper.

(3)      Enter permanent injunctive relief—in aid of the foregoing declarations, and to the extent declaratory relief alone proves unavailable or is not honored—restraining the final adjudication of any contested Formal Charge against Plaintiff through the structure described in Plaintiff's Fourth Cause of Action unless and until adjudication is available before a tribunal independent of the defects declared, the design of any conforming mechanism being committed entirely to the State of Idaho;

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 40

(4)    In the alternative, that this Honorable Court declare I.R.P.C. 8.4(d) facially overbroad and void for vagueness as applied to the content of court filings, and enjoin its enforcement to that extent;

(5)    Award Plaintiff his costs and reasonable attorney's fees under 42 U.S.C. § 1988(b), as permitted by law;

(6)    Retain jurisdiction over this action and the parties thereto to ensure enforcement of all judgments and orders entered in this action; and

(7)    Such other and further relief as the Court deems just and proper.


DATED:    30 July 2026                    Respectfully Submitted,

                                          For ROSA PLLC:


                                          */s/Angelo L. Rosa*

                                          _____
                                          Angelo L. Rosa

                                          Attorneys for Plaintiff
                                          ANGELO L. ROSA

**COMMERCIAL ADVISING & LEGAL COUNSEL**

**ROSA PLLC**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** – Page 41