

**EXHIBIT 5**
**TO**
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE**
**RELIEF**

**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 50748**

| | | |
|---|---|---|
| JULENE DODD and WILLIAM, DODD, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | Boise, September 2024 Term |
| | ) | |
| v. | ) | Filed: March 3, 2025 |
| | ) | |
| RORY JONES, ESQ., and JONES, WILLIAMS FUHRMAN GOURLEY, P.A. | ) ) ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendants-Respondents. | ) ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Cynthia Yee-Wallace, District Judge.

The district court judgment is <u>affirmed</u>.

Rosa PLLC, Boise, attorneys for Plaintiffs-Appellants. Angelo L. Rosa argued.

Cooper & Larsen, Chtd., Pocatello, attorneys for Defendants-Respondents. Gary L. Cooper argued.

_____

BEVAN, Chief Justice.

## I. CASE SUMMARY

In this legal malpractice case, Julene and William Dodd sued their attorney, Rory Jones, after he missed the statute of limitations deadline for filing their medical malpractice lawsuit. "Plaintiffs in legal malpractice cases shoulder a heavy burden. They must try two cases: The legal malpractice case before the court and the underlying case in which the lawyer allegedly committed malpractice." *Rich v. Hepworth Holzer*, LLP, 172 Idaho 696, 704, 535 P.3d 1069, 1077 (2023). To win their claim of legal malpractice, the Dodds needed to prove that their original medical malpractice case had merit and that they would have won if Jones had filed on time. But proving that medical malpractice occurred is a high bar, and their case faced significant hurdles. The district court struck the testimony of the Dodds' experts, which was key to establishing the viability of

1

their medical malpractice claim. Several disclosures were untimely – made after the deadlines set by the district court based on the agreement of the parties' attorneys. One expert, Dr. Simon, failed to properly establish knowledge of the local standard of care, which is a foundational requirement of Idaho law. The district court also excluded another expert, Rebecca Czarnik's testimony on timeliness grounds, further weakening the Dodds' case. Despite the Dodds' attempts to amend their complaint and extend the expert disclosure deadlines, the district court did not allow such efforts, and ruled that without the necessary expert testimony, the Dodds could not prove their underlying medical malpractice case. As a result, their legal malpractice claim was dismissed, and the court granted summary judgment in favor of Jones.

On appeal to this Court, the Dodds put forth several arguments to challenge the district court's decision. The Dodds argue that the district court erred by: (1) ruling that Jones was not judicially estopped from arguing that no medical malpractice occurred after Jones filed a complaint for medical malpractice on the Dodds' behalf; and (2) excluding the Dodds' expert testimony. The Dodds additionally raise claims of judicial bias resulting in violations of their due process rights. But this case presents straightforward issues on appeal. Rather than focus on legal arguments to support the claim that the district court erred, the Dodds' attorney, Angelo Rosa, at times failed to cite legal authority to support the appeal, misconstrued and misquoted this Court's precedent and lobbed hyperbolic personal attacks at the district court. Thus, while this appeal concerns a legal malpractice action based on the nature of the medical care provided to Mrs. Dodds, it is decided on straightforward legal principles. In addition, we also thoroughly examine the behavior and legal arguments advanced by the Dodds' counsel. Ultimately, we affirm the district court.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Julene's Hernia Surgery

The Dodds' first amended complaint alleged the facts below. Julene and William Dodd are husband and wife. In June 2017, Julene saw her primary care physician for breathing difficulties. A CT scan was performed which revealed a large hiatal hernia that required surgery. On August 2, 2017, Dr. Forrest Fredline performed an endoscopy that confirmed the CT scan findings.

On August 16, 2017, Dr. Fredline performed hernia surgery on Julene at Saint Alphonsus Regional Medical Center in Nampa, Idaho. Later that day, Dr. Fredline informed Julene that the surgery was more difficult than expected because the hernia had caused her stomach to come up into her chest and had been putting pressure on one of her lungs. Additionally, a needle tip broke

2

in Julene's abdomen during the procedure; however, Dr. Fredline characterized the tip as being "too small to pose a danger."

The next day, on August 17, Julene was given enemas to induce a bowel movement. Julene repeatedly complained to Dr. Fredline and her post-surgical nurse about abdominal pain that became worse after each enema. Julene was told that the pain was caused by her surgical wound.

On August 19, Julene collapsed when nurses tried to help her get out of her hospital bed. Julene's blood pressure had dropped to sixty over thirty (60/30). Dr. Fredline ordered a CT scan on Julene's abdominal region. The results of the CT scan revealed that there was free fluid throughout Julene's abdomen. Julene was rushed into surgery where her abdomen was opened at the midline, which revealed that her small intestine (jejunum) was perforated and her abdomen was filled with fluid and fecal matter. Julene's abdomen was irrigated and flushed, and the perforation was closed. A temporary abdominal closure system with wound vacuum assisted closure (VAC) was placed on Julene's abdomen, she was intubated, and she was transferred to the ICU.

On August 22, 2017, Dr. Fredline performed a third surgery on Julene that included an exploratory laparotomy, wash out, and closure of fascia. Dr. Fredline noted "fluid appearing throughout the abdomen"; he irrigated all four quadrants of Julene's abdomen and washed all loops of her bowels. He closed her fascia and placed another wound VAC over Julene's open skin. Julene tolerated the procedure well but was still intubated and returned to the ICU.

Over the next four weeks, Julene stayed at Saint Alphonsus Hospital where she suffered from acute respiratory failure, swelling so severe that her toes turned black, and her surgical wound growing larger. During this time, Julene's family were told that they should prepare themselves because Julene was likely to die.

On September 19, 2017, Julene was transferred to Vibra Hospital, a critical care hospital, in serious condition. Julene's diagnoses upon discharge from Saint Alphonsus were atrial fibrillation, hiatal hernia with GERD, acute respiratory failure with hypoxia, acute kidney injury, and small, intraoperative bowel perforation.

Julene could not move her limbs on her own, had a wound VAC placed on her abdomen, a tracheotomy with a speaking valve, and visible blood in her urinary catheter bag. Julene required observation and care from a registered nurse on a 24-hour basis. Julene could only speak in a faint whisper upon admittance and had nerve damage and weakness in all four of her limbs.

3

On October 12, 2017, Julene underwent a neuropsychological examination, which showed that she "report[ed] a great deal of fatigue and motor problems with all four extremities." Further, "she ha[d] depression and an angry mood. Mood problems seem[ed] clearly related to all of the surprising events that happened and changes with her health as well as physical limitations. She reported some anxiety and thoughts about reasons why this has happened to her."

On November 22, 2017, Julene was transferred from Vibra Hospital to Sunny Ridge skilled nursing facility. Julene still required wound care because she had infections in her abdomen, could not move her limbs on her own, suffered from depression, required aggressive treatment for constipation, and was on a combination of thirty-three medications. The discharge comments stated that Julene was "[i]mproving but still needed skilled care and [had] a long way to go."

On February 23, 2018, Julene was discharged from Sunny Ridge to her home. Julene still required in-home care for three more months. Julene could not go to the bathroom, take a shower, or move from her bed or a chair without assistance. Julene fell several times and required help to get up. Julene continued to require home care until late 2021.

## B.  Medical Malpractice Action

Julene met attorney Rory Jones through her brother Jeff Day. Jones had represented Julene in a prior divorce twenty years before her hernia surgery. Jeff called Jones in August 2017, after learning Julene's condition at the hospital had deteriorated. Jeff drove Jones to Saint Alphonsus to see Julene while she was still in the ICU.

On November 3, 2017, Jones went to Sunny Ridge with a contingent fee agreement, which Julene and William signed. The agreement provided that the Dodds retained Jones Gledhill Fuhrman Gourley, P.A., "to render legal services on behalf of J[u]lene Day Dodd for Medical Malpractice" and William Dodd for "loss of consortium and other claims and/or potential causes of action against S[aint] Alphonsus Medical Center and all treating Physicians."

Julene testified that she "had little contact with Mr. Jones or any representative of his firm" over the next eighteen months. Julene would call the firm every two or three months but received "few details." Jones testified that during 2018 and 2019, he consulted medical malpractice attorneys in the area to either associate with, or who could take over Julene's case. They uniformly advised him that a perforated jejunum would not violate the applicable standard of care in Julene's case, and that an infection secondary to the underlying surgery is a warned complication and not a violation of the standard of care if appropriate antibiotics were prescribed, dosed, and delivered.

4

Jones also testified that he consulted physicians about the standard of care and received the same information. Jones testified that he informed Julene that he was having trouble finding doctors to support her case and that he was considering turning the case over to, or associating with, other attorneys to assist.

On August 13, 2019, Jones filed a Pre-Litigation Application and Claim with the Board of Medicine ("Board") under Idaho Code section 6-1001. He later represented Julene in a hearing before a hearing panel on October 24, 2019. The panel issued its opinion on November 8, 2019, but did not serve it until November 13, 2019.

On December 12, 2019, Jones filed a complaint and demand for jury trial on behalf of the Dodds against Forrest Fredline, M.D., and Saint Alphonsus Regional Medical Center Nampa, in Canyon County. That complaint alleged claims for medical negligence, respondeat superior, agency by estoppel/non-delegable duty, damages, and attorney's fees.

The statute of limitation for the medical malpractice action expired on December 8, 2019.[1] Jones testified that he mistakenly calendared the filing deadline from the November 13, 2019, date, rather than the November 8, 2019, date (the date the panel issued its opinion); as a result, Jones admitted that he filed the Dodds' case beyond the statute of limitations deadline. On May 22, 2020, Jones informed Julene that he had missed the filing deadline by four days.

### C. Legal Malpractice Action

On December 6, 2021, the Dodds filed a complaint against Jones, which they amended on January 5, 2022. The amended complaint alleged four causes of action: (1) professional negligence, (2) breach of contract, (3) fraudulent concealment, and sought (4) declaratory relief. On January 5, 2022, Jones filed an answer and demand for jury trial.

On March 7, 2022, the district court issued a scheduling order based on a stipulation of the parties, specifying:

---

[1] An action to recover damages for "professional malpractice" must be commenced within two years after the cause of action has accrued. I.C. §§ 5-201, 5-219.4. The limitation period is not extended by reason of any continuing consequences or damages resulting from the malpractice or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer. I.C. § 5-219. In a medical malpractice action, the statute of limitations is tolled upon the filing of a request for a prelitigation screening panel, during the time the claim is pending before the panel, and for thirty days thereafter. *See Conway v. Sonntag*, 141 Idaho 144, 146, 106 P.3d 470, 472 (2005); I.C. § 6-1005.

**ADVANCING EXPERTS**. Plaintiffs and Counterclaimants shall identify and disclose all expert witnesses to be used at trial by **November 4, 2022**.

**RESPONDING EXPERTS**. Defendants and Counter-Defendants shall identify and disclose all rebuttal expert witnesses to be used at trial by **January 3, 2023**.

**REBUTTAL EXPERTS**. Plaintiffs and Counterclaimants shall identify and disclose all rebuttal expert witnesses to be used at trial by **March 4, 2023**.

**DUTY TO DISCLOSE**. Contemporaneously with the deadline for disclosure for any expert witness, and regardless of whether there is a pending interrogatory seeking such information, the party disclosing any expert(s) must also provide all information concerning such expert as is required by I.R.C.P. 26(b)(4)(A)(i) and (ii).

. . . .

**SANCTIONS**: The failure to comply with this Order may subject a party, and their attorney, to appropriate sanctions, including, but not limited to, an award of costs and attorney fees to another party, the dismissal, with prejudice, of claims and parties, the striking of defenses, or the entry of default judgment.

(Emphasis in original).

On October 4, 2022, the Dodds moved for partial summary judgment on their professional negligence and fraudulent concealment claims. In support, the Dodds filed a declaration of the medical expert they had retained, Dr. Fred Simon. Dr. Simon opined

based upon a reasonable degree of medical probability and certainty that [Saint] Alphonsus Medical Group Nampa and Dr. Forrest Fredline fell below the standard of care in the postoperative care of Julene Dodd. This breach in the standard of care caused prolonged hospital care for an elective operative procedure, economic debility, multiple unnecessary readmissions, pulmonary failure, renal failure, radiation exposure, overexposure to medications, pain, and suffering.

On October 18, 2022, the Dodds moved to amend their complaint to seek punitive damages, alleging that evidence obtained during discovery demonstrated that Jones deviated from reasonable standards of conduct and the record amply illustrated a "bad state of mind." Jones opposed the Dodds' motion.

On November 3, 2022, the Dodds filed a "Supplemental Expert Witness Disclosure." The Dodds' supplemental disclosure included Dr. Simon's previous report submitted on October 4, 2022, and identified a new expert, Rebecca Czarnik, a life care planner who would opine on damages. The disclosure stated that Czarnik's report was "being prepared," and would include opinions identifying and quantifying damages that the Dodds lost the ability to recover as a direct and proximate result of the legal malpractice committed by Jones.

6

On November 11, 2022, Jones moved to strike the October 4, 2022, declaration of Dr. Simon. Jones argued that Dr. Simon had not shown that he was familiar with the local standard of care for Dr. Fredline and Saint Alphonsus Medical Center Nampa as it existed on August 16 and August 19, 2017. Jones also asserted Dr. Simon's opinions did not establish that Dr. Fredline or Saint Alphonsus Medical Center Nampa negligently failed to meet the applicable standard of health care practice for a general surgeon or hospital located in Nampa in August 2017.

On November 19, 2022, the Dodds filed an amended declaration of Dr. Simon in support of their motion for partial summary judgment. Dr. Simon's amended declaration sought to resolve Jones' assertion that Dr. Simon was not familiar with the standard of care, by stating he had interviewed and toured several hospitals throughout Idaho and "re-confirmed the standard of care applicable to the healthcare services provided to Ms. Dodd at the time they were conducted through consultation with a gastrointestinal and endoscopic surgeon with over thirty years of practice based in Ada County, Idaho." Dr. Simon also reaffirmed his earlier opinion that Dr. Fredline and Saint Alphonsus failed to properly respond to Julene's worsening signs, symptoms, and complaints postoperatively. Dr. Simon opined these healthcare providers "negligently failed to meet the applicable local standard of healthcare practice of the Treasure Valley, Idaho community as such existed at the time of Julene Dodd's surgery."

On December 12, 2022, Jones filed his own motion for summary judgment. Jones argued that the Dodds' sole expert on the standard of care in the underlying medical malpractice action—Dr. Fred Simon—lacked actual knowledge of the applicable standard of care in Nampa, Idaho in August 2017 relating to hiatal hernia surgery and aftercare. Jones also argued that Dr. Simon failed to properly familiarize himself with this standard as required by Idaho Code sections 6-1012 and 6-1013, as foundation to provide direct expert testimony establishing the applicable standard of care. Without Dr. Simon's testimony, Jones argued that the Dodds could not prove proximate causation; thus, Jones was entitled to judgment as a matter of law.

On December 23, 2022, Jones moved to strike the November 19, 2022, amended declaration of Dr. Simon on two grounds. First, Jones argued that Simon's latest declaration was filed twelve days after Jones' original motion to strike Dr. Simon's testimony as an effort to rehabilitate Simon because he was an out-of-area expert who had not established he was familiar with the local standard of care. Second, Jones asserted that the amended declaration was untimely because the Dodds filed it fifteen days after the court-ordered deadline for Dodds' disclosure of

experts. The stipulated deadline required disclosure of all opinions by Dodds' experts by November 4, 2022. Jones claimed that, even looking past the untimeliness of Dr. Simon's amended declaration, it still failed to sufficiently identify how Dr. Simon became familiar with the local standard of care in Nampa, Idaho.

On December 23, 2022, the Dodds filed a second supplemental disclosure of expert witnesses. This disclosure included the first disclosure of Czarnik's report. On the same day, Jones filed a motion in limine to strike Czarnik's disclosure and prevent her from testifying as an expert at trial because her report was disclosed forty-nine days after the Dodds' expert disclosures were due.

On December 30, 2022, the Dodds filed a second supplemental declaration of Dr. Simon, which gave new opinions about the standard of care for the surgical procedure performed by Dr. Fredline. Dr. Simon explained that after reviewing Dr. Fredline's deposition, he believed Dr. Fredline's conduct during Julene's initial hernia repair fell below the standard of care along with Dr. Fredline's alleged negligence in his post-operative care. Soon thereafter, Jones moved to strike the second supplemental declaration, arguing it was not timely and still lacked sufficient foundation to demonstrate that Dr. Simon was familiar with the applicable standard of care in Nampa, Idaho at the time of Julene's procedure.

On January 3, 2023, Jones filed an expert witness disclosure. On the same day, to try to provide Jones more time to respond to Czarnik's late disclosure, the Dodds filed a motion for an order modifying the scheduling order to extend the disclosure deadlines for the defendants' disclosure of responsive expert witnesses as to damages and for the Dodds' corresponding rebuttal expert disclosure.

On January 20, 2023, the Dodds moved for summary judgment on the breach of contract claim. The Dodds alleged it was undisputed that: (1) a valid and enforceable contract existed between the parties; (2) the Dodds performed their obligations; but (3) Jones breached the Contingency Fee Agreement by agreeing to provide legal representation and then failing to file the medical malpractice action timely. The Dodds alleged they suffered damage as a result.

On January 30, 2023, the Dodds filed the second supplemental expert opinion report of Dr. Simon in which Dr. Simon opined Julene's initial hernia surgery performed by Dr. Fredline on August 16, 2017, and the surgical aftercare provided between August 16 and August 19, 2017,

8

"fell below the standard of care applicable to healthcare in the community where that healthcare was provided." Jones moved to strike the report as untimely.

On March 2, 2023, the Dodds filed a motion for relief from the case scheduling order, asking the district court to excuse the late filing of Czarnik's report.

Each of Dodds' filings is relevant to our discussion and decision in this case. To aid the reader, and to summarize pertinent documents from the record, the following outline is provided:

- **March 7, 2022** – district court issued scheduling order with expert witness deadlines:
  - o **November 4, 2022** – Dodds must identify and disclose expert witnesses
  - o **January 3, 2023** – Jones must identify and disclose responding expert witnesses
  - o **January 9, 2023** – Final day for fact discovery
  - o **January 23, 2023** – Deadline to file dispositive motions
  - o **March 4, 2023** – Deadline for Dodds to identify and disclose rebuttal expert witnesses
  - o **April 3, 2023** – Last day for expert discovery
- **October 4, 2022** – Dodds move for partial summary judgment on their professional negligence and fraudulent concealment claims
- **October 18, 2022** – Dodds move to amend complaint
- **November 3, 2022** – Dodds file a "Supplemental Expert Witness Disclosure," identifying Rebecca Czarnik as a new expert
- **November 19, 2022** – Dodds file an amended declaration of Dr. Simon in support of their motion for partial summary judgment
- **December 23, 2022** – Dodds file a second supplemental disclosure of expert witnesses, including the first disclosure of Rebecca Czarnik's report.
- **December 30, 2022** – Dodds file a second supplemental declaration of Dr. Simon
- **January 3, 2023** – Dodds file a motion to extend the disclosure deadline for defendant's expert witnesses
- **January 20, 2023** – Dodds move for summary judgment on breach of contract claim
- **January 30, 2023** – Dodds file a second supplemental expert opinion report of Dr. Simon
- **March 2, 2023** – Dodds file a motion for relief from the case scheduling order to excuse the late filing of Czarnik's report.

The parties appeared for hearings on February 13, 2023, and March 6, 2023, to address the pending motions, including the competing motions for summary judgment. On April 14, 2023, the district court entered an order granting Jones' motion to strike Dr. Simon's original and first amended declarations after concluding that (1) they lacked foundation, and (2) Dr. Simon's supplemental declaration and report were untimely. The court additionally granted Jones' motion to exclude Czarnik's testimony and denied the Dodds' request to amend the scheduling order to

9

accommodate and excuse the late expert witness disclosure. Because the district court excluded the expert testimony necessary to prove the Dodds' case, the court granted Jones' motion for summary judgment on the Dodds' first cause of action for professional negligence.

The district court also granted Jones' summary judgment motion on the Dodds' breach of contract claim after concluding a plaintiff's breach of contract action against a former attorney for his failure to comply with a standard of care sounds in tort, not contract. As a result, the breach of contract claim was duplicative of the Dodds' legal malpractice theory that had been dismissed. The district court also dismissed the Dodds' third cause of action for fraudulent concealment because Jones ultimately complied with his disclosure requirements and his delay did not prevent the Dodds from filing a timely legal malpractice claim. The parties stipulated to the dismissal of the Dodds' fourth cause of action seeking declaratory relief. The Dodds filed a timely notice of appeal.

### III. ISSUES ON APPEAL

1.    Does the doctrine of judicial estoppel bar Jones from denying the existence of medical malpractice?

2.    Did the Dodds preserve their argument that the district court erred by denying the Dodds' motion for summary judgment as to breach of contract?

3.    Did the district court abuse its discretion in granting Jones' motion to exclude the Dodds' expert testimony?

4.    Should this Court modify the standards for judicial bias based on the district court's rulings in this case?

5.    Is Jones entitled to attorney fees on appeal?

### IV. STANDARDS OF REVIEW

"In a legal malpractice appeal, the standard of review for this Court when reviewing a district court's grant of summary judgment is well-settled: this Court 'uses the same standard properly employed by the district court originally ruling on the motion.'" *Rich v. Hepworth Holzer, LLP*, 172 Idaho 696, 535 P.3d 1069, 1075 (2023) (quoting *Ciccarello v. Davies*, 166 Idaho 153, 158, 456 P.3d 519, 524 (2019)). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Ciccarello*, 166 Idaho at 158–59, 456 P.3d at 524–25 (citing I.R.C.P. 56 (a)). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party." *Id*. at 159, 456 P.3d at 525 (internal citation omitted). "In order to survive a motion for summary

10

judgment, the non-moving party must 'make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial.' " *Id*. (quoting *Jones v. Starnes*, 150 Idaho 257, 259–60, 245 P.3d 1009, 1011–12 (2011)). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hollingsworth v. Thompson*, 168 Idaho 13, 17, 478 P.3d 312, 316 (2020) (internal citation omitted).

The admissibility of expert testimony is a threshold matter that is distinct from whether the testimony raises genuine issues of material fact sufficient to preclude summary judgment. *Summerfield v. St. Luke's McCall, Ltd.*, 169 Idaho 221, 228, 494 P.3d 769, 776 (2021) (internal citation omitted). The "liberal construction and reasonable inferences standard does not apply" when determining the admissibility of expert testimony; instead, "the trial court must look at the witness' affidavit or deposition testimony and determine whether it alleges facts which, if taken as true, would render the testimony of that witness admissible." *Id*. at 228–29, 494 P.3d at 776–77 (quoting *Mattox v. Life Care Ctrs. Of Am., Inc*., 157 Idaho 468, 473, 337 P.3d 627, 632 (2014)).

A district court's evidentiary rulings and its decision whether to grant a motion to strike are reviewed under an abuse of discretion standard. *Lepper v. E. Idaho Health Servs., Inc*., 160 Idaho 104, 108, 369 P.3d 882, 886 (2016) (citation omitted). When reviewing a lower court's decision for an abuse of discretion, this Court must analyze "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

### V. ANALYSIS

**A.     Jones cannot be judicially estopped from claiming that no medical malpractice occurred as a defense to this legal malpractice claim**

The Dodds' primary argument on appeal is that Jones is judicially estopped from claiming no medical malpractice occurred as a defense to the legal malpractice claim. The Dodds claim that by filing the complaint against Saint Alphonsus and Dr. Fredline, Jones certified to a district court that the claims had merit and were not being filed for any improper purpose. By Jones taking these steps, the Dodds argue that he is estopped from now arguing that no malpractice occurred. Jones counters this argument by emphasizing that there is no evidence that he did anything while

11

representing the Dodds that suggested he had knowledge that would amount to a "personal admission" that could be used against him in this legal malpractice case. Jones argues that the Dodds still had to prove the "case within a case," and that after the district court struck the Dodds' expert testimony, the Dodds could not show they had "some chance of success in the underlying medical malpractice action."

As a threshold issue, Jones alleges that the Dodds failed to sufficiently raise this issue below, thus, it is not preserved for review on appeal. This Court has held that "[i]t is axiomatic that this Court will not consider issues raised for the first time on appeal." *Siercke v. Siercke*, 167 Idaho 709, 715, 476 P.3d 376, 382 (2020) (citing *Valiant Idaho, LLC v. VP Inc.*, 164 Idaho 314, 327, 429 P.3d 855, 868 (2018)). In general, a party must raise both the issue and their position on that issue before the trial court for this Court to review it. *Id.* (quoting *Eagle Springs Homeowners Assoc., Inc. v. Rodina*, 165 Idaho 862, 869, 454 P.3d 504, 511 (2019)).

The Dodds first claimed the doctrine of judicial estoppel applied in a reply memorandum filed in support of their motion for partial summary judgment on the breach of contract claim. However, when the district court rules on an issue, it is sufficiently preserved for review. *State v. Miramontes*, 170 Idaho 920, 924–25, 517 P.3d 849, 853–54 (2022) ("[A] party preserves an issue for appeal if the trial court issues an adverse ruling."). The district court considered the Dodds' argument that Jones was "judicially estopped from defending the medical malpractice action." Although the district court did not give an explicit ruling on judicial estoppel, it identified that argument before concluding that the Dodds could not show they had "some chance of success" in the underlying medical malpractice action based on the court's exclusion of the Dodds' expert declarations. We conclude that this implicit ruling on the judicial estoppel issue preserves it for appeal. *See Rich v. Hepworth Holzer, LLP*, 172 Idaho 696, 535 P.3d 1069, 1076 (2023) (holding that a trial court's implicit ruling against an argument preserved it for appeal).

Reaching the merits, the Dodds' argument does not persuade us. Judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Heinze v. Bauer*, 145 Idaho 232, 235, 178 P.3d 597, 600 (2008) (quoting *McKay v. Owens*, 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997)).

> For guidance purposes and to avoid misapplication of judicial estoppel, it should be made clear that the concept should only be applied when the party maintaining the inconsistent position either did have, or was chargeable with, full knowledge of the attendant facts prior to adopting the initial position. Stated another

12

way, the concept of judicial estoppel takes into account not only what a party states under oath in open court, but also what that party knew, or should have known, at the time the original position was adopted. Thus, the knowledge that the party possesses, or should have possessed, at the time the statement is made is determinative as to whether that person is "playing fast and loose" with the court.

*Id.* at 235–36, 178 P.3d at 600–01.

Crucially, Jones was not a "party" or a "litigant" in the medical malpractice case—he was a lawyer representing the Dodds. That an attorney filed a complaint alleging medical malpractice existed does not negate the legal obligation to *prove* that medical malpractice occurred. In a medical malpractice case, a "plaintiff has the burden of proving not only that a defendant failed to use ordinary care, but also that the defendant's failure to use ordinary care was the proximate cause of damage to the plaintiff." *Easterling v. Kendall*, 159 Idaho 902, 914, 367 P.3d 1214, 1226 (2016) (quoting *Pearson v. Parsons*, 114 Idaho 334, 339, 757 P.2d 197, 202 (1988)). The applicable standard of care and breach of that standard must be proven by expert testimony, *see* I.C. §§ 6-1012, 6-1013, whereas proximate cause presents a question of fact and is almost always for the jury. *Easterling*, 159 Idaho at 914, 367 P.3d at 1226.

An attorney's statements or beliefs about a case cannot satisfy the requisite burden of proof in a later case alleging malpractice against the attorney. This Court has held that "statements made on behalf of a client and under the duty to zealously represent the client may not be characterized as [a] personal admission on the attorney's part." *Heinze*, 145 Idaho at 238, 178 P.3d at 603. In *Heinze*, this Court recognized the importance of this principle, emphasizing: "If statements and arguments made by counsel in furtherance of a client's claim were routinely deemed to constitute binding admissions against a lawyer in a subsequent legal malpractice action, it could conceivably have a chilling impact upon the vigor and resulting effectiveness of counsel's advocacy." *Id*.

Additionally, in *Rich v. Hepworth Holzer, LLP*, this Court recently held that testimony from an experienced litigation lawyer in a medical malpractice case was inadmissible to prove medical malpractice because a lawyer is "not a medical expert." Thus, his comments on alleged medical malpractice and causation were without foundation. 172 Idaho at ___, 535 P.3d at 1082. Jones' subjective beliefs about the merits of the Dodds' medical practice case, inferred simply from Jones' filing the malpractice case, are not judicial admissions and may not be used to estop him from asserting that no medical malpractice occurred in a subsequent action for legal malpractice.

13

**B. The Dodds failed to preserve their argument that the district court erred in dismissing their cause of action for breach of contract.**

The Dodds assert that the district court erred in denying their motion for summary judgment as to breach of contract. The Dodds' second cause of action alleged that Jones breached the Contingency Fee Agreement. The district court dismissed this cause of action after concluding a breach of contract action against a former attorney for failing to comply with a standard of care sounds in tort, not contract, so it was duplicative of the Dodds' legal malpractice theory that had been dismissed.

While the Dodds did assert in a heading in their opening brief before us that "the lower court erred by denying Julene and Bill's motion for summary judgment as to breach of contract," (capitalization modified), their legal analysis of *why* the district court erred is inadequate. The Dodds merely cite caselaw explaining the standards governing summary judgment in this section of their brief; they have provided no argument showing how the district court erred when it granted Jones' motion for summary judgment on the Dodds' cause of action for breach of contract. "Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010); *see also* I.A.R. 35(a)(6) (requiring that the "argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon.").

In their reply brief, the Dodds presented argument and authority in support of their contention that the district court erred in dismissing the breach of contract claim, but "this Court will not consider arguments raised for the first time in the appellant's reply brief." *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005) (quoting *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004)). "A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief." *Id*. The Dodds' failure to articulate why the district court erred in dismissing their cause of action for breach of contract in their opening brief precludes review of this issue.

**C.      The district court did not abuse its discretion in excluding the Dodds' experts' testimony.**

The Dodds argue the district court abused its discretion when it excluded testimony from two expert witnesses initially submitted in support of their motion for summary judgment and relied upon later in opposition to Jones' motion for summary judgment: Dr. Fred Simon and Rebecca Czarnik, R.N. The timing of discovery related to each expert is summarized above, pages 8-9. This Court reviews a district court's evidentiary rulings, including whether to exclude expert testimony, under an abuse of discretion standard. *Barton v. Bd. of Regents of Univ. of Idaho*, 173 Idaho 811, ___, 550 P.3d 293, 300 (2024) (quoting *Rich v. Hepworth Holzer, LLP*, 172 Idaho 696, 535 P.3d 1069, 1075 (2023)). The district court granted summary judgment in favor of Jones after striking the testimony.

To avoid summary judgment for the defense in a medical malpractice case, a plaintiff must overcome two significant hurdles. First, the plaintiff must offer expert testimony indicating that the defendant health care provider negligently failed to meet the applicable standard of health care practice

> *of the community* in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence of such physician and surgeon, hospital or other such health care provider and as such standard then and there existed with respect to the class of health care provider that such defendant then and there belonged to and in which capacity he, she or it was functioning.

I.C. § 6-1012 (emphasis added). Second, such expert testimony must meet the foundational requirements of Idaho Code section 6-1013. *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 164, 45 P.3d 816, 820 (2002). Those standards, among other things, require the expert to have "actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed . . . ." *Summerfield v. St. Luke's McCall, Ltd.*, 169 Idaho 221, 230, 494 P.3d 769, 778 (2021) (quoting I.C. § 6-1013).

In addition, in a legal malpractice case based on a lawyer's alleged negligence in presenting a medical malpractice case, the "case within a case" standard requires the plaintiff to

> prove that he suffered actual damages proximately caused by the attorney's malpractice. To establish proximate causation in a legal malpractice case, the plaintiff must prove a "case within a case," meaning the plaintiff must establish the underlying action and what the result would have been in that action absent the alleged negligence. In other words, the plaintiff must establish that "but for" the attorney's negligence, the damages alleged would not have been incurred. In a legal malpractice case, the plaintiff bears the burden of proving that damages were incurred because of the attorney's negligence.

15

*Rich*, 172 Idaho at ___, 535 P.3d at 1078 (internal citation omitted).

The Dodds initially claimed that Jones failed to meet his burden of demonstrating the existence of a triable issue of material fact by comparing the strength of Dr. Simon's testimony against Jones' expert, Dr. Fredline's testimony. As Jones points out, the district court granted summary judgment for Jones because the Dodds failed to establish an essential element of their legal malpractice case by failing to prove an essential element of the "case within the case." As the district court recognized: "The [c]ourt agrees that in striking Dr. Simon's declarations, Dodds cannot show that they have 'some chance of success' in the underlying medical malpractice action." The Dodds bear the burden of proving the "case within the case," not Jones. *See Fisk v. McDonald*, 167 Idaho 870, 891, 477 P.3d 924, 945 (2020). Thus, the strength of Dr. Fredline's testimony is irrelevant to the determination of whether the district court abused its discretion in excluding Dr. Simon's testimony.

### 1. *Dr. Fred Simon*

The Dodds retained Dr. Fred Simon as an expert to opine on the standard governing the health care provided by Saint Alphonsus and Dr. Fredline and whether the healthcare at issue fell below that standard. Dr. Simon examined Julene's medical records and offered his opinion that Dr. Fredline and the staff at Saint Alphonsus provided healthcare that fell below the standard of care. As discussed above, the Dodds filed multiple declarations and reports from Dr. Simon, and Jones filed several motions to strike. The district court granted Jones' motions to strike Dr. Simon's original and first amended declarations after concluding that they lacked foundation. The court also struck Dr. Simon's supplemental declaration and report as untimely. The record before us supports the following facts.

### a. Dr. Simon's declarations and reports.

On October 4, 2022, the Dodds filed a declaration of Dr. Simon in support of their motion for partial summary judgment as to liability. Dr. Simon testified that he was a board-certified general surgeon practicing general surgery in the communities of Fort Morgan, Colorado, Thornton, Colorado, and Gunnison Valley Health, Gunnison, Colorado with added qualifications in Critical Care Medicine by the American Board of Surgery. Dr. Simon testified he had been actively practicing for more than thirty years, licensed in the states of Idaho, Nevada, Delaware, Colorado, and Wyoming in good standing. Dr. Simon testified that from 2016 to 2018, he was a general and trauma surgeon with Portneuf Medical Center in Pocatello, Idaho. Dr. Simon testified

16

that he was familiar with the operative procedure and postoperative care of patients with hiatal hernia and had performed the operation for over three decades, both open and laparoscopically. Dr. Simon stated that he has "actual professional knowledge and experience" about: (1) the proper and safe technique in performing a laparoscopic hiatal hernia repair; and (2) the postoperative care of the patient.

Dr. Simon's original declaration claimed he was

familiar with the standard of care by which healthcare providers are bound to provide in the Idaho medical community. This knowledge is based upon being licensed to practice medicine in the State of Idaho for thirty-four (34) years, and my affiliation as a locum tenens general surgeon and trauma surgeon with Portneuf Medical Center in Pocatello, Idaho, and my engagements as an expert in matters relating to Plaintiff-side medical malpractice claims in the State of Idaho between 2012 and the present.

Dr. Simon reviewed Julene's medical records that had been provided by Saint Alphonsus and testified that he was competent to offer an opinion within reasonable medical certainty and probability even though several records (nurses' notes, laboratory results, and vitals data) were missing. Dr. Simon testified that his opinion was based on his background, medical experience, and voluminous review of medical records for over 35 years.

Dr. Simon testified that the "standard of care applicable to the postoperative care of a patient includes early recognition of patient deterioration, recognition of changes in vitals, recognition of changes in physical examination, [and] recognition of signs of sepsis with rapid intervention. Care includes adequate nursing evaluation, documentation and recognition of significant changes with direct communication with medical staff."

Dr. Simon expressed the opinion that the healthcare professionals who were responsible for administering Julene's postoperative care breached this standard of care by: (1) identifying symptoms indicating the presence of sepsis (manifested in both the decline in vital statistics and the patient's vocalization of increasing pain) but failing to take appropriate investigative and corrective action; (2) failing to identify indications of potential onset of sepsis through inattention and neglect; and/or (3) failing to undertake a timely investigation of the indications of sepsis until the patient's condition had reached critical status on postoperative day three.

Dr. Simon further concluded that as a direct result of the breach in the standard of care, Julene suffered from sepsis, was admitted into the ICU with full ventilatory support and pulmonary failure, renal failure, and the later development of complex abscess formation based on the delay

17

in care. Julene was exposed to unnecessary radiation exposure, antibiotics, and other painful care. In addition, had Julene received proper care, there would never have been the clinical complication of acute intracranial changes with parenchymal hematoma, multiple hemorrhages, and leptomeningeal enhancement. Dr. Simon concluded:

> It is my opinion based upon a reasonable degree of medical probability and certainty that St. Alphonsus Medical Group Nampa and Dr. Forrest R. Fredline fell below the standard of care in the postoperative care of Julene Dodd. This breach in the standard of care caused prolonged hospital care for an elective operative procedure, economic debility, multiple unnecessary readmissions, pulmonary failure, renal failure, radiation exposure, overexposure to medications, pain, and suffering. The medical opinions set forth in this report represent my opinions in a format that is intended to provide the defendants and the court the basis to understand why I believe that to a reasonable degree of certainty this would have been the basis for a meritorious medical liability case. I reserve the right to amend the medical opinions set forth in this report as more information is provided to me for review.

Jones moved to strike Dr. Simon's testimony, arguing there was insufficient foundation to establish: (1) that he had actual knowledge of the standard of care for Saint Alphonsus Nampa and Dr. Fredline; and (2) the applicable standard of care for performing hiatal hernia surgery and for post-surgical treatment and the timing of appropriate treatment for a patient with a jejunal injury. Jones also argued that Dr. Simon's declaration failed to offer an opinion on whether Julene's hiatal hernia surgery was performed incompetently.

On November 19, 2022, about six weeks after Dr. Simon's initial declaration, the Dodds filed an amended declaration for him. Dr. Simon explained that he prepared a supplement to the expert opinion previously submitted to: (1) clarify which records supported his statements; (2) clarify the information upon which his familiarity with the standard of care relevant to the community in which the healthcare services at issue were rendered; and (3) provide a preliminary assessment of the materials that post-dated his initial report.

Dr. Simon's amended declaration set forth the following facts relevant to his familiarity with the standard of care for healthcare in the community where Julene received her care (Nampa, Idaho): he served as a locum tenens general and trauma surgeon at Portneuf Medical Center in Pocatello, Idaho from 2016 to 2018; he was familiar with the care in Idaho Falls, Idaho and had toured the Idaho Falls medical center, EIRMC; Dr. Simon also toured Saint Alphonsus Medical Center in the early 2000s as a visitor/consultant on acute care surgery; he interviewed in Nampa, Idaho for a private practice general surgical position; interviewed and practiced as a locum tenens

18

surgeon in Gooding, Idaho; and he interviewed for a general surgical position in Caldwell, Idaho. Dr. Simon also interviewed and toured the medical center in Sandpoint, Idaho as well as having a firm knowledge for decades of the care provided in the Sun Valley/Ketchum area. Dr. Simon additionally reconfirmed the standard of care applicable to the healthcare services at issue by consulting a gastrointestinal and endoscopic surgeon with over thirty years of practice based in Ada County, Idaho.

Clarifying the documents he reviewed, Dr. Simon explained that none of the medical records contained indications of: (1) post-surgical "aftercare," appropriate to the surgical procedure; (2) Julene's interactions with the nursing staff; (3) appropriate responses by nursing staff to Julene's complaints of discomfort/pain; (4) the presence of pain beyond the area close to the surgical incisions; and (5) accurate monitoring of vital statistics for the medical care of Julene between August 16 through the emergency surgery on August 19, 2017. Dr. Simon opined that even without these documents, he felt competent to offer an opinion on the standard of care and whether a breach occurred based on his 35 years of experience. He concluded:

> I am familiar with the local standard of care for this operative procedure and the postoperative care of a patient who has undergone a laparoscopic hiatal hernia repair as that standard of care existed in Nampa, Idaho in 2017. I have actual knowledge of the standard of healthcare practice (in the community where the treatment at issue was provided) that should have been followed in providing care to Ms. Dodd at the time it was provided. My familiarity with that standard of care is based upon substantial practice experience in Idaho and familiarity with the standard of care applicable to the medical community overall. Further, I re-confirmed the standard of care applicable to the healthcare services at issue through consultation with a gastrointestinal and endoscopic surgeon with over thirty years of practice based in Ada County, Idaho.
>
> Specifically to meet the standard of care, the St. Alphonsus Medical Center staff (including Dr. Fredline and the post-operative providers) should have complied with that local standard of care.
>
> Thus, Forrest R. Fredline, DO, St Alphonsus Hospital and their healthcare providers negligently failed to meet the applicable local standard of healthcare practice of the Treasure Valley, Idaho community as such existed at the time of Julene Dodd's surgery and care occurred with the respect to the class to which they belong, including the capacity they were functioning as.

Jones moved to strike Dr. Simon's amended declaration. Jones argued that twelve days after Jones had pointed out the problems with the foundation for Dr. Simon's testimony, and fifteen days after the court-ordered deadline for the Dodds to disclose experts, the Dodds filed the

19

amended declaration. This amended declaration disclosed facts and information related to Dr. Simon's familiarity with the local standard of care for the first time. Jones argued that the supplemental declaration violated the district court's pretrial scheduling order and was still foundationally deficient.

The district court found that Dr. Simon's original declaration (filed October 4, 2022) and Dr. Simon's amended declaration (filed November 19, 2022) were timely; however, it determined that they lacked foundation for two reasons. First, the district court held that Dr. Simon had not shown that he was familiar with the standard of care in the community where Julene's hernia surgery and postoperative care occurred—Nampa, Idaho. Second, the court held that Dr. Simon did not demonstrate how he possessed professional knowledge and expertise about the standard of care applicable to hospitals or other non-physician hospital personnel.

As noted above, Idaho Code section 6-1012 requires that a plaintiff who brings a medical malpractice claim must provide expert testimony establishing that the healthcare provider did not meet the applicable standard of healthcare practice of the community in which such care allegedly was or should have been provided, and provides in relevant part:

> In any case, claim or action for damages due to injury to or death of any person, brought against any physician and surgeon or other provider of health care, including, without limitation, any dentist, physicians' assistant, nurse practitioner, registered nurse, licensed practical nurse, nurse anesthetist, medical technologist, physical therapist, hospital or nursing home, or any person vicariously liable for the negligence of them or any of them, on account of the provision of or failure to provide health care or on account of any matter incidental or related thereto, such claimant or plaintiff must, as an essential part of his or her case in chief, affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence, that such defendant then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence of such physician and surgeon, hospital or other such health care provider and as such standard then and there existed with respect to the class of health care provider that such defendant then and there belonged to and in which capacity he, she or it was functioning.

I.C. § 6-1012.

To testify, an expert must have actual knowledge of the *community* standard of care at the time and place of the alleged malpractice. *Fisk v. McDonald*, 167 Idaho 870, 880, 477 P.3d 924, 934 (2020). The expert can demonstrate knowledge of the community standard of care as follows:

20

> The applicable standard of practice and such a defendant's failure to meet said standard must be established in such cases by such a plaintiff by testimony of one (1) or more knowledgeable, competent expert witnesses, and such expert testimony may only be admitted in evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed; provided, this section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony in such a trial.

I.C. § 6-1013. "Thus, the medical expert must show that he or she is familiar with the standard of health care practice for the relevant medical specialty, during the relevant timeframe, and in the community where the care was provided." *Bybee v. Gorman*, 157 Idaho 169, 174, 335 P.3d 14, 19 (2014) (citations omitted). Further, the medical expert must explain "how he or she became familiar with that standard of care." *Id*. (citation omitted).

In medical malpractice cases in Idaho, the geographical scope of the relevant community is a factual issue, and is defined by Idaho Code section 6-1012 as "that geographical area *ordinarily served* by the licensed general hospital at or nearest to which such care was or allegedly should have been provided." *Phillips v. E. Idaho Health Servs., Inc*., 166 Idaho 731, 751, 463 P.3d 365, 385 (2020) (citing I.C. § 6-1012) (emphasis in original). "The 'community' is not defined by physical distance from the health care provider, but rather by the locations from which its patient base is derived." *Id*. (quoting *Bybee*, 157 Idaho at 175–76, 335 P.3d at 20–22). "Idaho Code section 6-1012 also acknowledges that for some specialties, there will be no 'like provider' able to establish the applicable standard of care, and that in those cases, evidence of similar Idaho communities is permitted." *Id*. (citing I.C. § 6-1012). In addition, communities may "overlap." *Id*. (citing *Bybee*, 157 Idaho at 176, 335 P.3d at 21; *see also Ballard v. Kerr*, 160 Idaho 674, 688, 378 P.3d 464, 478 (2016); *Ramos v. Dixon*, 144 Idaho 32, 35, 156 P.3d 533, 536 (2007)).

"Regardless of the theory used to establish the relevant community, an expert's statement defining this community must identify the basis of the expert's knowledge of the patient base, and should 'attempt to identify, or even approximate, the frequency [with] which patients from [one locale] elect to receive services' at one provider as opposed to another." *Phillips*, 166 Idaho at 751, 463 P.3d at 385 (citing *Bybee*, 157 Idaho at 177, 335 P.3d at 22). "If users of the hospital's services

21

commonly go from one location to the place where the hospital is located, then that location falls within the geographical area which constitutes the community." *Id*. (citation omitted).

The focus of the Dodds' argument about the district court's exclusion of Dr. Simon's testimony relates to the court's determination that Dr. Simon's supplemental declarations or opinions contained "new" opinions. Yet the district court excluded Dr. Simon's original and first amended declarations, not based on untimely, "new" opinions, but after concluding that they failed to demonstrate that he was familiar with the standard of care in Nampa, Idaho at the time of Julene's alleged malpractice. The Dodds' sole argument seeking to refute this foundational concern is:

> Dr. Simon identified the basis of his local familiarity, despite the fact both Dr. Simon and the surgeon who was the Defendant in the underlying medical malpractice case testified that the standard of care applicable to the hiatal hernia procedure performed on Julene was no different from the national standard of care. This is therefore an illusory argument where the substance of Dr. Simon's opinion is concerned. As for disclosure of facts confirming that Dr. Simon (who has been practicing in Idaho for four decades) was familiar with the community standard (obtained through consulting with a local Nampa surgeon) [sic].

First, despite the Dodds' claim on appeal, there is no evidence or indication in the record before the district court that Dr. Simon consulted a "local Nampa surgeon." In Dr. Simon's first amended declaration he stated that he "reconfirmed the standard of care applicable to the healthcare services at issue through consultation with a gastrointestinal and endoscopic surgeon with over thirty years of practice based in *Ada County,* Idaho." (Emphasis added). Nampa is not located within Ada County; there is nothing in Simon's declaration about any overlap between patients receiving treatment in Nampa versus in Ada County.

The district court determined that the fact that Dr. Simon consulted a gastrointestinal and endoscopic surgeon in Ada County was insufficient to demonstrate that Dr. Simon had actual familiarity with the relevant community standard of care for general surgeons, Saint Alphonsus Nampa, or any other healthcare personnel in Nampa, Idaho. Dr. Simon had not explained whether or how the surgeon he consulted was familiar with the standard of care in *Nampa*. This is critical foundation that this Court has explained in multiple decisions must be included to be admissible. *See Mattox v. Life Care Centers of Am., Inc.*, 157 Idaho 468, 474, 337 P.3d 627, 633 (2014) (holding that the foundation requirement is not intended to be overly burdensome, but the proposed expert must identify the standard of care at issue, the grounds for claiming knowledge of that

22

standard, and determine—employing a measure of common sense—whether those grounds would likely give rise to knowledge of that standard); *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 164, 45 P.3d 816, 820 (2002) ("An expert testifying as to the standard of care in medical malpractice actions must show that he or she is familiar with the standard of care for the particular health care professional for the relevant community and time. The expert must also state how he or she became familiar with that standard of care."); *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 51, 995 P.2d 816, 821 (2000) (same).

In addition, the district court correctly recognized that conclusory declarations like those submitted by Dr. Simon are inadmissible. An out-of-area expert cannot just claim to be familiar with the relevant standard; he must also explain how he or she became familiar with the standard of care in the relevant community. Here, Dr. Simon's original declaration claimed he was

> familiar with the standard of care by which healthcare providers are bound to provide in the Idaho medical community. This knowledge is based upon being licensed to practice medicine in the State of Idaho for thirty-four (34) years, and my affiliation as a locum tenens general surgeon and trauma surgeon with Portneuf Medical Center in Pocatello, Idaho, and my engagements as an expert in matters relating to Plaintiff-side medical malpractice claims in the State of Idaho between 2012 and the present.

The fact that Dr. Simon served as a locum tenens surgeon in Pocatello, Idaho during the relevant time does not establish familiarity with the standard of care at Saint Alphonsus Nampa, located about 250 miles away. *See Hall v. Rocky Mountain Emergency Physicians, LLC*, 155 Idaho 322, 327, 312 P.3d 313, 318 (2013) (requiring plaintiff's Idaho Falls physician to lay adequate foundation showing how he became familiar with the local standard of care for the defendant emergency room physicians or physician's assistants in Pocatello at the time of the alleged negligence). Further, just because Dr. Simon practiced in Idaho does not demonstrate that he is familiar with the community standard of care in Nampa, Idaho. A conclusory statement of familiarity with the applicable standard of health care practice based on having practiced in a relevant community for several years is insufficient. *See Eldridge v. West*, 166 Idaho 303, 311, 458 P.3d 172, 180 (2020); *see also Bybee v. Gorman*, 157 Idaho 169, 177, 335 P.3d 14, 22 (2014) ("[A] conclusory statement of familiarity with the applicable standard of health care practice, without identifying the manner in which such familiarity was developed, is insufficient to establish foundation for the admissibility of [the expert's] testimony."). The district court correctly

23

determined that being licensed in Idaho for 34 years does not, without more specific information, demonstrate familiarity with the standard of care for surgery and patient aftercare in Nampa.

Similarly, just because Dr. Simon acted as an expert witness in Idaho does not demonstrate that he is familiar with the local standard of care in Nampa. As noted by Jones, Dr. Simon did not provide information about the type of healthcare specialty, the time frame, or the locality involved in the other cases in which he testified that could establish that he had "actual knowledge" of the applicable local standard of care in Nampa, Idaho in August 2017. *See* I.C. § 6-1013; *Phillips v. E. Idaho Health Servs., Inc.*, 166 Idaho 731, 748, 463 P.3d 365, 382 (2020) (holding that external materials or documents may assist an out-of-area expert in formulating and establishing the applicable standard of health care if those materials clearly articulate the standard of care for the particular time, place, and specialty at issue).

Dr. Simon's supplemental declaration sought to renovate the foundation defects from his original declaration, with Dr. Simon testifying:

> I am familiar with the care in Idaho Falls, Idaho and have toured the medical center, EIRMC. I toured St. Alphonsus Medical Center in the early 2000s as a visitor/consultant on acute care surgery, interviewed in Nampa, Idaho for a private practice general surgical position, interviewed and practiced as a locum tenens surgeon in Gooding, Idaho and interviewed for a general surgical position in Caldwell, Idaho. I have also interviewed and toured the medical center in Sandpoint, Idaho as well as having a firm knowledge for decades, the care provided in the Sun Valley/Ketchum area.

None of these experiences show that Dr. Simon was familiar with the standard of care "at the time and place" of the alleged negligence, which was Nampa, Idaho in August 2017.

The Dodds' remaining argument that Dr. Simon supplied the necessary foundation to establish he was familiar with the local standard of care appears to be that Dr. Fredline and Dr. Simon agreed that the applicable community standard of care is no different from the national standard of care. Ordinarily, an expert's review of a deposition stating that the local standard does not vary from the national standard, coupled with the expert's personal knowledge of the national standard, is sufficient to lay a foundation for the expert's opinion. *Perry*, 134 Idaho at 51–52, 995 P.2d at 821–22 (citing *Kozlowski v. Rush*, 121 Idaho 825, 828–29, 828 P.2d 854, 857–58 (1992)); *See also Rhodehouse v. Stutts*, 125 Idaho 208, 212, 868 P.2d 1224, 1228 (1994) (stating that, although the reviewed deposition was defective, "it may be possible for an expert to become familiar with the local standard of care by reviewing the defendant doctor's deposition.").

24

That said, the basis for this claim was not made below until the Dodds filed a *second* supplemental report from Dr. Simon. This second report was not filed with its own declaration; it was filed solely as a commentary a month after Dr. Simon's second supplemental declaration and eighty-seven days after the Dodds' expert disclosures were due. The report was the first time that Dr. Simon referenced Dr. Fredline's statement that the standard of care applicable to Julene's treatment was consistent with the national standard of care. The Dodds were required to establish that Dr. Simon was familiar with the local standard of care in his *declarations*, made through timely disclosures. This second report, even if offered as a supplement to an earlier declaration, simply did not establish these facts for the district court's consideration in a timely way.

The district court did not abuse its discretion in determining that the combined foundation contained in the October 4, 2022, declaration, supplemented with the added foundation from the November 19, 2022, amended declaration was insufficient. The declaration failed to demonstrate that Dr. Simon was familiar with and had actual knowledge of the applicable standard of care in Nampa in August 2017 for either Dr. Fredline or Saint Alphonsus Nampa. *See Samples v. Hanson*, 161 Idaho 179, 183, 384 P.3d 943, 947 (2016) (holding that while no "magic language" is required to demonstrate the requisite familiarity with the applicable standard of health care practice, the testimony of the proffered expert must meet minimum requirements as a prerequisite to admission of that expert's opinion); *Bybee*, 157 Idaho at 174, 335 P.3d at 19 (holding that the medical expert must show familiarity with the standard of health care practice for the relevant medical specialty, during the relevant timeframe, and in the community where the care was provided by explaining how the expert became familiar with the standard of care).

For similar reasons, we affirm the district court's exercise of discretion in striking Dr. Simon's second supplemental declaration and second supplemental expert report because both were filed after the Dodds' expert witness disclosures were due, and in the district court's judgment raised new opinions as Jones contends.

Without the testimony from Dr. Simon, the Dodds cannot show they would prevail against Jones in the underlying action. As such, the district court's decision to grant summary judgment on the exclusion of Dr. Simon's testimony is affirmed.

2. *Rebecca Czarnik, R.N.*

While we have affirmed the district court's decision to grant summary judgment following the exclusion of Dr. Simon's testimony, and that decision resolves the lion's share of the dispute

25

before us, we evaluate the district court's decision excluding Dodds' retained expert on damages, as it bears on our decision to impose sanctions, as set forth below, pages 32–35.

The Dodds retained Rebecca Czarnik, R.N., as an expert to testify on damages. Despite the scheduling order's requirement that experts planning to testify at trial be identified and disclosed by November 4, 2022, the Dodds did not produce Czarnik's report until December 23, 2022. On the same day, Jones filed a motion in limine to exclude Czarnik's expert testimony, claiming it was untimely. Jones later supplemented the motion in limine, augmenting the argument that Czarnik's report should have been disclosed on November 4, 2022, and that the late disclosure left Jones with only eleven days—including Christmas and New Year's—to retain an expert that could counter Czarnik's opinions.

On January 3, 2023, the Dodds filed a motion asking the district court for an order extending Jones' expert disclosure deadline. The Dodds argued they had disclosed the substance of Czarnik's opinions before the deadline in the scheduling order and supplemented Czarnik's disclosure as promptly as possible after a death in Czarnik's immediate family delayed the completion of her report, also noting that the Dodds were suffering from financial hardship. Jones opposed the Dodds' motion.

On February 6, 2023, the Dodds objected to Jones' motion in limine, arguing Jones still had ample time before trial to obtain a rebuttal expert to respond to Czarnik's disclosures on damages. The Dodds claimed that their November 3, 2022, expert disclosure complied with the district court's scheduling order, and the report filed on December 23, 2022, simply offered more detail on damages. Thus, it was a proper supplementation under Idaho Rule of Civil Procedure 26(e)(2). The Dodds also asked for relief from the late filing of the report given that Czarnik's preparation and submission were unexpectedly interrupted due to the death of an immediate family member.

On March 3, 2023, the Dodds filed a motion for relief from the scheduling order asking the district court to find Czarnik's expert disclosures submitted after November 4, 2022, were proper supplementation. The Dodds argued relief was justified under Idaho Rule of Civil Procedure 60(b)(1) on the grounds of excusable neglect.

The district court granted Jones' motion in limine to exclude Czarnik's testimony as untimely. The court determined that the Dodds' November 3, 2022, disclosure did not comply with the court's scheduling order. The district court summarized the Dodds' November 3, 2022,

26

disclosure as stating: "[a] report of expert opinion is being prepared," before describing that the scope of Czarnik's opinions would include damages, listing general categories of damages: current and future medical and non-medical needs, costs, quality of life damages, and pain and suffering. The disclosure also listed the information Czarnik would rely on in forming her opinion and disclosed her curriculum vitae and rate of compensation. Still, the district court concluded there were no opinions disclosed as to the actual amount or extent of damages.

The district court determined that the second supplemental expert witness disclosure was not merely a supplementation under Rule 26(e)(2). Instead, it added the opinion and subject matter missing from the November 3, 2022, disclosure, including Czarnik's expert opinion regarding: extensive future medical care, medical procedures, diagnostic studies, therapy, medication, equipment, case management, evaluations, home care, home assistance, transportation, and surgeries Julene would need in the future. The supplemental disclosure opined on Julene's life expectancy and costs relating to future care, specifying damages that totaled over eight million dollars. In response to the Dodds' claims that Czarnik's opinions could not be disclosed sooner because of a death in Czarnik's family, the district court found:

> [The Dodds] have not provided the [c]ourt with sufficient information to determine whether there was a legitimate reason or excusable neglect as to why they did not offer these new opinions by November 4, 2022. For example, [the Dodds] did not disclose when they retained Ms. Czarnik, when she began working on this case or reviewing material in this case, nor when the death occurred and the timeline in which Ms. Czarnik's report preparation was interrupted. Thus, in short, the Court finds that [the Dodds] have failed to provide adequate justification or excusable neglect for the late disclosure.

The district court also found that the late disclosure was not harmless given the extent of Czarnik's report, and the fact that it was disclosed twelve days before Jones' expert disclosures were due, all while the parties were engaged in extensive briefing on several motions before the court. The court granted Jones' motion to exclude Czarnik's testimony and denied the Dodds' request to amend the scheduling order to accommodate and excuse the late expert witness disclosure.

On appeal, the Dodds claim that "[w]hether in a fit of inexperience, intimidation or some other influence, the lower court made a series of observations about scheduling and opportunity that ring hollow in comparison to other, contradictory, decisions elsewhere in the ruling." The Dodds allege that the district court abused its discretion in excluding Czarnik's testimony because

27

(1) Czarnik's opinion met all admissibility requirements, and (2) the circumstances under which Czarnik's opinions were disclosed met all requirements to be admitted.

The Dodds rely on the Idaho Court of Appeals case *Roe v. Doe*, to claim a lower court is not permitted to strike testimony because a scheduling order was only partially complied with when doing so would essentially amount to entry of judgment against the offending party. In *Roe v. Doe*, the district court held that a magistrate court abused its discretion by imposing discovery sanctions that effectively terminated a father's parental rights. 129 Idaho 663, 931 P.2d 657 (Ct. App. 1996). The Court of Appeals determined that the magistrate court's severe sanction excluding most of Roe's witnesses and other evidence amounted to ordering judgment against Roe on those issues. *Id*. at 667–68, 931 P.2d at 661–62. The Court of Appeals first held that a trial court, "must balance the equities by comparing the culpability of the disobedient party with the resulting prejudice to the innocent party." *Id*. at 668, 931 P.2d at 662. (citing *S. Idaho Prod. Credit Ass'n v. Astorquia*, 113 Idaho 526, 532, 746 P.2d 985, 991 (1987) (Donaldson, J., specially concurring)). Second, the Court of Appeals held that "a trial court should not impose a sanction that will prevent full adjudication of a case on the merits without having first considered lesser sanctions and having reached a conclusion, supported by the record, that lesser sanctions would be ineffective or inadequate." *Id*.

The Dodds argue that excluding Czarnik's testimony foreclosed their ability to present proof of future damages and impaired their "fundamental offer of proof." The Dodds argue that even if Czarnik's testimony were not properly disclosed, the district court still had discretion to allow that testimony under Rule 26, and the district court's failure to do so in this case constituted an abuse of discretion. The Dodds allege that "[t]reating its Scheduling Order as the Word of God rather than applying a modicum of reason in unforeseen circumstances, as the clear caselaw on point acknowledges, is proof of [the court's] obstinance." Jones counters that the Dodds did not proactively seek relief from the district court to excuse the late disclosure until months after the expert disclosure deadline had passed and after service of the late December 23, 2022, disclosure. Jones argues that the district court properly recognized that it was within its discretion to impose discovery sanctions for a failure to timely disclose an expert witness' anticipated testimony.

"The timing for [expert witness] disclosures shall be set in the district court's scheduling order." *Rich v. Hepworth Holzer, LLP*, 172 Idaho 696, 535 P.3d 1069, 1085–86 (2023) (quoting *Easterling v. Kendall*, 159 Idaho 902, 910, 367 P.3d 1214, 1222 (2016)); *see also* I.R.C.P.

16(a)(2)(B). "A district court has authority to sanction parties for non-compliance with scheduling orders, including prohibiting parties from introducing untimely disclosed evidence." *Id*.; *see also* I.R.C.P. 16(e); I.R.C.P. 37(c)(1). Exclusion of an expert witness is an appropriate sanction for a failure to properly disclose the expert witness' anticipated testimony. *Id*. (citing *Clark v. Klein*, 137 Idaho 154, 157, 45 P.3d 810, 813 (2002)). "The imposition of discovery sanctions is within the discretion of the trial court and [this] Court will not overturn that decision absent a manifest abuse of discretion." *Sommer v. Misty Valley, LLC*, 170 Idaho 413, 427, 511 P.3d 833, 847 (2021) (quoting *Farr v. Mischler*, 129 Idaho 201, 206, 923 P.2d 446, 451 (1996)).

The Dodds allege that the district court abused its discretion in excluding Czarnik's testimony because Czarnik's delay in submitting her report was reasonable given Czarnik's mother's death. They argue that the district court was unreasonable in requiring more information about the timing of Czarnik's work. The Dodds assert "[i]t is unclear what manner of graphic explanation or dissection of human grief the lower court expected [the Dodds] to put on display for the lower court's prurient curiosity." The Dodds misinterpret the district court's ruling and fail to understand this Court's rules and caselaw as recited immediately above. In essence, they complain not about the district court's *abuse* of discretion, but about the way the court *exercised* its discretion.

As we noted above, the district court made explicit findings about what it found lacking in evidence of excusable neglect necessary to support extending the discovery deadline for Czarnik's disclosure. District courts are not required to simply "take counsel's word for it" when such requests are made. It is incumbent on counsel to do more to make such a record.

The information sought by the district court was not based on a prurient interest to "graphically dissect human grief" from the Dodds' expert; it was to establish whether good cause for the delay was truly unforeseen and excusable or was simply the result of Dodds' counsel's failure to diligently prosecute this issue before the crisis was upon him. The district court was in the proper place to weigh these circumstances in the balance. *See Gilbert v. Richard Gerald Radnovich*, 171 Idaho 566, 573, 524 P.3d 397, 404 (2023) (quoting *United States v. Tsarnaev*, 142 S. Ct. 1024, 1039 (2022) (in reviewing matters of discretion, "[i]t is important that a reviewing court evaluate the trial court's decision from its perspective when it had to rule rather than 'indulge in review by hindsight.' ").

29

On appeal, the Dodds have given no clarification responsive to the district court's concerns about when the Dodds retained Czarnik, when she began working on the case, or when her work was disrupted. Again, these questions are neither "prurient" nor improper, nor are they a sign of overreach by a trial court managing its busy docket. As we recently noted in *Lands v. Sunset Manor, LP*:

> In an era of burgeoning case loads and [crowded] dockets, effective case management has become an essential tool for handling civil litigation. To that end, Rule 16(a) of the Idaho Rules of Civil Procedure requires trial courts to fashion scheduling orders during the early stage of litigation which establish timetables and deadlines for parties to complete certain pretrial activities, such as expert witness disclosures and discovery. I.R.C.P 16(a)(2)(B). These deadlines "must not be modified except by leave of the court on a showing of good cause or by stipulation of all the parties and approval of the court." I.R.C.P. 16(a)(3).

173 Idaho 584, ___, 546 P.3d 670, 678 (2024) (case citations and quotations omitted, brackets in original). Fashioning scheduling orders early in litigation, especially when those orders are based on a stipulation of counsel as was done here, makes it necessary for counsel to establish good cause to change those orders with more than counsel's assurances that good cause exists. Given burgeoning caseloads and crowded dockets, proof, in the form of the facts sought by the district court here, is not only appropriate, but to be expected.

In any exercise of discretion in managing discovery, a court must weigh competing factors, including potential prejudice to both parties, the alleged "good cause" for relief, and the relevant circumstances of the case. Trial judges cannot perform such an exercise based on vague assertions of counsel in memoranda filed well after the deadline for expert witness disclosures has passed. Although the district court *could* have granted the Dodds' requests for leniency given the circumstances, the district court's decision declining to do so was well within its discretion based on the district court's rationale as stated above. *See id.* (quoting I.R.C.P. 16(a)(3) and (e), which grant the trial court "authority to sanction parties for non-compliance with scheduling orders, including prohibiting parties from introducing untimely disclosed evidence."); *see also Rich*, 172 Idaho at ___. 535 P.3d at 1085–86. Ultimately, the arguments in the Dodds' brief do not establish an abuse of discretion—they merely argue against the district court's appropriate exercise of discretion. On the facts here, the Dodds' argument is deficient when weighed against the legal standards cited above. We therefore affirm the district court's exercise of discretion in excluding Czarnik's testimony.

**D.      The record does not support the Dodds' claim of judicial bias.**

The Dodds' final claim raises a question of judicial bias. The Dodds argue that the district court completely departed from established law to protect "prominent local attorneys" under the cover of judicial discretion. The Dodds hyperbolically alleged:

> [T]he issue of bias in the current matter is an overarching theme that manifested itself in the very ruling that came at the end of the lower court case, circumscribed all outstanding motions and then butchered both the law and facts in such a fashion that there was no remedy other than to raise the flawed ruling on appeal and the very nature of the lower court's approach to the case when it manifested itself.

Importantly, this claim was never raised before the trial court and is essentially a tantrum against a judge's decision by one who did not adequately do the foundational work to present the case in the trial court as required by Idaho law.

The Dodds cite two cases from the Ninth Circuit, both arising out of California, that allegedly support the notion that litigants may raise claims of judicial bias for the first time on appeal: *United States v. Bosch*, 951 F.2d 1546, 1548 (9th Cir. 1991), and *Zhu v. United States Dep't of State*, No. 22-55129, 2022 WL 17102357, at *2 (9th Cir. 2022). Relying on the federal statute governing disqualification of a judge, both cases impose a heightened standard of review on claims of judicial bias raised for the first time on appeal. This Court has not adopted this heightened standard, and Idaho has its own rule governing disqualification. *See* I.R.C.P. 40. Beyond that, this Court has explicitly held that in the absence of a motion for disqualification below, this Court will not review allegations of judicial bias for the first time on appeal. *Owen v. Smith*, 168 Idaho 633, 647, 485 P.3d 129, 143 (2021); *Zylstra v. State*, 157 Idaho 457, 468, 337 P.3d 616, 627 (2014).

Notwithstanding the question of preservation, we recognize that on occasion this Court has, *sua sponte*, raised the issue of judicial bias on appeal. *See*, *e.g.*, *Beebe v. N. Idaho Day Surgery, LLC*, 171 Idaho 779, 793, 526 P.3d 650, 664 (2023) (bias not alleged by appellate counsel; Court found that trial court "exhibited clear bias against both attorneys," and ordered that new district judge be assigned on remand). Based thereon, we address this claim. As we have held, the district court's exercise of discretion was appropriate. Nothing in the record supports the Dodds' claims. The district court exercised appropriate discretion given the legal issues presented to it. Accordingly, we affirm the district court's decision.

**E.      We award Jones attorney fees under Idaho Appellate Rule 11.2.**

31

Jones requests an award of attorney fees under Idaho Code section 12-121 on the basis that "[a]t best, Dodds ask this Court to second guess the findings of the trial court. At worst, Dodds' arguments are disrespectful of the judiciary. Attorney's fees should therefore be awarded to Jones because this appeal was brought and pursued frivolously, unreasonably, or without foundation." Idaho Code section 12-121 allows the award of attorney fees in a civil action if the appeal merely invites the appellate court to second guess the findings of the lower court. *Bach v. Bagley*, 148 Idaho 784, 797, 229 P.3d 1146, 1159 (2010). Attorney fees under section 12-121 may also be "awarded to the prevailing party on appeal only when this Court is left with the abiding belief that the entire appeal was brought, pursued, or defended frivolously, unreasonably, or without foundation." *Breckenridge Prop. Fund 2016, LLC v. Wally Enterprises, Inc*., 170 Idaho 649, 666, 516 P.3d 73, 90 (2022).

> Jones argues that, as established above,

> Dodds ignored established precedent which is adverse to their claim of judicial estoppel; failed to present qualified expert testimony to prove the prima facie case against [Dr.] Fredline and/or [Saint Alphonsus Medical Center]-Nampa; failed to timely disclose liability and damage expert opinions; and made a frivolous and unreasonable argument that the trial court was biased and incompetent. Dodds' arguments that their late-filed expert opinions were "supplementation" is unreasonable and frivolous. Dodds' argument that they lost because of judicial bias is inane and without foundation. Dodds have failed to show the "abuse of discretion" which is necessary to reverse the trial court's evidentiary rulings and imposition of sanctions for discovery violations.

We agree with Jones but conclude that responsibility for the frivolous nature of this appeal lies at the feet of the Dodds' counsel, Angelo Rosa—not the Dodds. Like we ruled in *Bergeman v. Select Portfolio Servicing*, "[r]ather than awarding attorney fees under Idaho Code section 12-121, we find it more appropriate to award attorney fees pursuant to Idaho Appellate Rule 11.2 as sanctions against [Dodds'] counsel." 164 Idaho 498, 503, 432 P.3d 47, 52 (2018).

This Court may consider, *sua sponte*, whether a party or attorney has brought an appeal for any improper purpose, and if so, award reasonable attorney fees to the other party. *Idaho State Bar v. Smith*, 170 Idaho 534, 556, 513 P.3d 1154, 1176 (2022) (citing *Jim & Maryann Plane Fam. Tr. v. Skinner*, 157 Idaho 927, 342 P.3d 639, 648 (2015)). Idaho Appellate Rule 11.2, in part, explains:

> The signature of an attorney or party constitutes a certificate that the attorney or party has read the notice of appeal, petition, motion, brief or other document; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith

32

argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If the notice of appeal, petition, motion, brief, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the notice of appeal, petition, motion, brief or other document including a reasonable attorney's fee.

Under this rule, "attorney fees can be awarded as sanctions when a party or attorney violates either (a) the frivolous filings clause, or (b) the improper purpose clause." *Smith*, 170 Idaho at 556, 513 P.3d at 1176 (quoting *Sims v. Jacobson*, 157 Idaho 980, 342 P.3d 907, 914 (2015)). "We have previously interpreted the frivolous filings clause to apply under the same circumstances that warrant awards under Idaho Code section 12-121." *Bergeman*, 164 Idaho at 503, 432 P.3d at 52; *see also Akers v. Mortensen*, 160 Idaho 286, 289–90, 371 P.3d 340, 343–44 (2016) (awarding attorney fees under both Idaho Code section 12-121 and Idaho Appellate Rule 11.2 for the same conduct). Importantly, "Rule 11.2 sanctions are appropriate against an attorney when we have been convinced that the represented party does not 'bear[ ] responsibility for the legal arguments advanced on [its] behalf.' " *Bergeman*, 164 Idaho at 503, 432 P.3d at 52) (quoting *Funes v. Aardema Dairy*, 150 Idaho 7, 13, 244 P.3d 151, 157 (2010)).

While the Dodds no doubt hoped for a better result through this appellate process, they should not bear the brunt of the appellate arguments advanced in this appeal, including the unfounded ad hominem attacks raised against the trial judge. *See id.*

At its core, this case presented a straightforward issue of evidentiary foundation and the obligation to provide timely disclosure of expert testimony. The need to establish a proper foundation to admit evidence is straightforward—even in medical malpractice cases. That said, to distract from the inexplicable failure to lay a proper foundation that would have allowed for the admission of the Dodds' key expert witness testimony below, their counsel not only made frivolous arguments with little regard to our standard of review but also resorted to baseless ad hominem attacks against the district court. Counsel referred to the district court judge as a "freshman" and alleged that the judge gave "blind deference" to Jones, while also questioning the court's "fitness to render competent rulings," in his briefing on appeal.

Mr. Rosa raised only two arguments to dispute the district court's determination that Dr. Simon did not lay an adequate foundation to demonstrate that he was familiar with the local

33

standard of care in Nampa at the time of Julene's hernia procedure and aftercare: (1) that Dr. Simon and Dr. Fredline both testified that the standard of care applicable to the hiatal hernia procedure performed on Julene was no different from the national standard of care; and (2) that Dr. Simon consulted a local Nampa surgeon. However, as we have noted, Dr. Simon's reference to Dr. Fredline's testimony on the standard of care did not occur until after Mr. Rosa submitted Dr. Simon's *second supplemental report*, which occurred on January 30, 2023, eighty-seven days after the Dodds' expert witness disclosures were due. The allegation that Dr. Simon consulted "a local Nampa surgeon" did not appear in any of the declarations filed below and was raised for the first time on appeal. We have sanctioned an attorney for misrepresenting the timing and substance of arguments submitted to the district court on appeal. *See BrunoBuilt, Inc. v. Erstad Architects, PA*, 172 Idaho 1, 18, 528 P.3d 531, 548 (2023) (holding that an attorney's failure to disclose that arguments were first raised in a motion to reconsider, instead of before the district court's original decision on summary judgment, was a manifest failure of the attorney's duty of candor and an attempt to mislead the Court in violation of Rule 11.2); *see also Bergeman,* 164 Idaho at 503, 432 P.3d at 52.

Mr. Rosa's arguments about the district court's exclusion of Czarnik's testimony are equally troubling. We are sympathetic to the fact that Czarnik's report was delayed based on the death of her mother; however, we are not convinced that Mr. Rosa acted promptly in explaining or seeking relief from that delay as we detailed above. Mr. Rosa did not move for relief from the scheduling order until March 3, 2023, nearly four months after expert disclosures were due. Even then, Mr. Rosa did not provide clarification regarding the district court's concerns about when the Dodds retained Czarnik, when she began working on the case, or when that work was disrupted, all of which are necessary factors to determine the reasonableness of and good cause for the delay. Rather than make a reasoned argument on appeal as to why the district court abused its discretion in excluding Czarnik's testimony as untimely, Mr. Rosa impertinently suggests that it was simply done out of the district judge's "fit of inexperience, intimidation or some other influence." Mr. Rosa repeatedly attacks the district court's adherence to the scheduling order, treating it like the "word of God," and claiming the district court was "obstinate" and only sought more information about the late disclosure to satisfy its "prurient curiosity." These remarks do nothing to challenge the well-established law that "[a] district court has authority to sanction parties for non-compliance with scheduling orders, including prohibiting parties from introducing untimely disclosed

34

evidence." *Rich*, 172 Idaho at ___, 535 P.3d at 1085–86; *Easterling*, 159 Idaho at 910, 367 P.3d at 1222. As such they are frivolous.

Rosa's personal attacks recall an oft-quoted adage: "If the facts are against you, argue the law. If the law is against you, argue the facts. If the law and the facts are against you, pound the table and yell like hell." *See Scala v. State*, 213 So.3d 1085, 1087, n.1 (Fla. Dist. Ct. App. 2017) (this "saying appears to originate from a collection of poems, stories and yarns by Carl Sandburg . . . [but it] has long since been adapted and paraphrased in a variety of ways. . .").

Mr. Rosa also failed to preserve the Dodds' breach of contract argument on appeal. Mr. Rosa did not cite any applicable authority to preserve his appeal of the breach of contract claim. Moreover, Mr. Rosa misquoted and misconstrued our precedent concerning judicial bias. Mr. Rosa admits that the district court judge did not exhibit any personal animus towards the Dodds below, and the claims of judicial bias raised on appeal consist entirely of personal hostility with the result in the case, the district court's reasoning, its understanding of the issues, and the appropriate legal standards governing its decisions—decisions that we affirm in this appeal.

The district court appropriately exercised its discretion when it imposed sanctions for the Dodds' failure to comply with the scheduling order. Mr. Rosa has not provided any legitimate argument that counters the highly deferential standard of review governing the district court's decisions at issue.

In light of this entire record, we hold that attorney fees will be awarded to the Respondents against Mr. Rosa personally under both the frivolous filings clause, and the improper purpose clause of Idaho Appellate Rule 11.2. *See Smith*, 170 Idaho at 556, 513 P.3d at 1176. Respondents are directed to file a memorandum of costs and attorney fees as required by Idaho Appellate Rule 40 to support their claims and to provide Mr. Rosa advance notice of such claims. Mr. Rosa may file a response/objection under Idaho Appellate Rule 40(d).

### VI. CONCLUSION

The district court's judgment is affirmed. Jones is also entitled to costs on appeal pursuant to Idaho Appellate Rule 40. The amount of attorney fees awarded to the Respondent in this case will be determined as set forth above.

JUSTICES BRODY, MOELLER, ZAHN, and MEYER CONCUR.