Angelo L. Rosa (Idaho State Bar No. 7546)
ROSA, PLLC
950 West Bannock Street, Suite 1100
Boise, Idaho 83702
Telephone No. +1 (208) 900-6525
Facsimile No. +1 (208) 515-2203
E-mail: arosa@rosacommerce.com
CM/ECF: arosa@rosacommerce.com

Attorneys for Plaintiff
ANGELO L. ROSA, in Pro Se

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| ANGELO L. ROSA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH N. PIRTLE, in his official capacity as Bar Counsel of the Idaho State Bar; CHIEF JUSTICE G. RICHARD BEVAN, ASSOCIATE JUSTICE ROBYN BRODY, ASSOCIATE JUSTICE GREGORY W. MOELLER, ASSOCIATE JUSTICE COLLEEN D. ZAHN, and CYNTHIA K.C. MEYER, Justices of the Idaho Supreme Court, each solely in their administrative, enforcement and rulemaking capacities relating to the regulation of the practice of law in the State of Idaho,<br><br>Defendants. | Case No. 26-cv-484-DKG<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
|---|---|

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

## TABLE OF CONTENTS

**I. INTRODUCTION ........ 1**
**II. FACTUAL BACKGROUND ........ 3**
A. The Dodd Case and its Appeal ........ 3
B. The Opinion and the Grievance Filed the Same Day ........ 5
C. The Bar Investigation ........ 5
D. The (Broken) Structure Defendants Presume to Adjudicate the Charge Within ........ 6
E. Impact of the Investigation: Speech Withheld and "Public Protection" Mission of Bar Contradicted ........ 7
**III. ARGUMENT ........ 8**
A. Each Defendant Is Properly Before the Court, and No Immunity Bars Prospective Relief ........ 8
1. Bar Counsel satisfies the Ex parte Young connection outright ........ 8
2. The Defendant Justices are properly named in their enforcement, rulemaking, and administrative capacities ........ 9
B. Plaintiff Has Standing, and His Claims Are Ripe ........ 11
1. The pre-enforcement standard ........ 11
2. Each Thomas factor is satisfied ........ 11
3. Plaintiff's First Claim is Ripe; His Second Claim is Perennial ........ 13
4. No disavowal offered in this litigation could moot this action or this Motion ........ 14
C. Younger Abstention Does Not Apply ........ 15
1. No state proceeding is pending ........ 15
2. Witzke confirms rather than threatens this analysis ........ 16
3. Should A Charge Issue Mid-Case, The Race Rule Governs ........ 17
4. The state forum affords no adequate, timely opportunity ........ 17
5. In the alternative, two recognized exceptions apply ........ 18
D. Neither Rooker-Feldman Nor Preclusion Reaches This Action ........ 19
E. Plaintiff Is Likely to Succeed on the Merits ........ 20
1. The First Amendment merits (Counts II and VI) ........ 20
2. Retaliation (Count I) ........ 29
3. Structural due process (Count III) ........ 30
F. Irreparable Harm Is Ongoing, Not Merely Threatened ........ 32
G. The Equities and the Public Interest Merge in Plaintiff's Favor ........ 33
H. Security is Unnecessary and Should Be Dispensed With ........ 34
**IV. CONCLUSION ........ 35**

## TABLE OF AUTHORITIES

### CASES

*Accord Crowe v. Oregon State Bar*, 112 F.4th 1218 .....9
*Additive Controls & Measurement Systems*, Inc. v. Flowdata, Inc., 96 F.3d 1390 .....10
*Adultworld Bookstore v. City of Fresno*, 758 F.2d 1348 .....18
*American Beverage Ass'n v. City & County of San Francisco*, 916 F.3d 749 .....33
*Baird v. Bonta*, 81 F.4th 1036 .....9, 11
*Bell v. City of Boise*, 709 F.3d 890 .....15
*Bello-Reyes v. Gaynor*, 985 F.3d 696 .....30
*Berry v. Schmitt*, 688 F.3d 290 ..... passim
*Blixseth v. Yellowstone Mountain Club*, LLC, 796 F.3d 1004 .....27
*Boquist v. Courtney*, 32 F.4th 764 .....30
*Bridges v. California*, 314 U.S. 252 .....23
*Canatella v. California*, 404 F.3d 1106 .....15
*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 .....30
*Cf. Gonzalez v. Trevino*, 602 U.S. 653 .....30
*Cf. Porter v. Bowen*, 496 F.3d 1009 .....15
*Chiles v. Salazar*, 607 U.S. 627 .....11, 27
*Counterman v. Colorado*, 600 U.S. 66 .....26
*Del Webb Communities*, Inc. v. Partington, 652 F.3d 1145 .....3
*Dexter v. Idaho State Bar Board of Commissioners*, 116 Idaho 790 ..... passim
*Dodd v. Jones*, No. 50748-2023 (Idaho Mar. 3, 2025) .....25
*Doe v. Harris*, 772 F.3d 563 .....33
*Dombrowski v. Pfister*, 380 U.S. 479 .....11
*Doran v. Salem Inn*, Inc., 422 U.S. 922 .....3
*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 .....9
*Elrod v. Burns*, 427 U.S. 347 .....2, 33
*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 .....19
*FBI v. Fikre*, 601 U.S. 234 .....15
*Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*, 82 F.4th 664 .....33
*Fieger v. Thomas*, 74 F.3d 740 .....15
*Fikre v. FBI*, 35 F.4th 762 .....15
*Flangas v. State Bar of Nevada*, 655 F.2d 946 .....15, 18, 19
*Flint v. Dennison*, 488 F.3d 816 .....10
*Foley v. Alabama State Bar*, 648 F.2d 355 .....18
*Friends of the Earth*, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167 .....15
*Gardner v. Martino*, 563 F.3d 981 .....22
*Garrison v. Louisiana*, 379 U.S. 64 .....23
*Gibson v. Berryhill*, 411 U.S. 564 .....18, 31
*Hawaii Housing Authority v. Midkiff*, 467 U.S. 229 .....18
*Hayes v. New York Attorney Grievance Committee of the Eighth Judicial District*, 672 F.3d 158 .....5, 12, 28, 36
*Hecox v. Little*, 479 F. Supp. 3d 930 .....3, 9
*Herring Networks*, Inc. v. Maddow, 8 F.4th 1148 .....24

ROSA PLLC Commercial Advising & Legal Counsel ALR

*Hicks v. Miranda*, 422 U.S. 332 ........ 17
*Hirsh v. Justices of the Supreme Court of California*, 67 F.3d 708 ........ 9, 10, 15
*Holder v. Humanitarian Law Project*, 561 U.S. 1 ........ 12
*Huffman v. Pursue*, Ltd., 420 U.S. 592 ........ 15
*Ibrahim v. Department of Homeland Security*, 669 F.3d 983 ........ 9, 34
*Idaho State Bar Ass'n v. Idaho Public Utilities Commission*, 102 Idaho 672 ........ 7, 32, 33
*Idaho State Bar v. Oleson*, 568 P.3d 83 ........ 31
*Idaho State Bar v. Souza*, 142 Idaho 502 ........ 32
*Idaho State Bar v. Topp (In re Topp)*, 129 Idaho 414 ........ 22
*In re Idaho State Bar Resolution 21-01*, 582 P.3d 1 ........ 27, 28, 33, 35
*In re Murchison*, 349 U.S. 133 ........ 19
*Italian Colors Restaurant v. Becerra*, 878 F.3d 1165 ........ 11
*Johnson v. Couturier*, 572 F.3d 1067 ........ 34
*Jorgensen v. Cassiday*, 320 F.3d 906 ........ 34
*Kenneally v. Lungren*, 967 F.2d 329 ........ 18
*Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 ........ 3, 9, 33
*Kremer v. Chemical Construction Corp.*, 456 U.S. 461 ........ 19
*Kugler v. Helfant*, 421 U.S. 117 ........ 18
*Larson v. Valente*, 456 U.S. 228 ........ 9
*Livingston v. North Carolina State Bar*, 364 F. Supp. 3d 587 ........ 19
*Matsumoto v. Labrador*, 701 F. Supp. 3d 1032 ........ 11, 12, 34
*Matter of Malmin*, 126 Idaho 1024 ........ 7, 31, 32
*Matter of Tway*, 123 Idaho 59 ........ 33
*Mayberry v. Pennsylvania*, 400 U.S. 455 ........ 31
*Mecinas v. Hobbs*, 30 F.4th 890 ........ 8
*Meinecke v. City of Seattle*, 99 F.4th 514 ........ 33
*Melendres v. Arpaio*, 695 F.3d 990 ........ 34
*Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 ........ 16
*Miller v. Sawant*, 114 F.4th 1071 ........ 22
*Mitchum v. Foster*, 407 U.S. 225 ........ 10
*Morial v. Judiciary Commission*, 565 F.2d 295 ........ 18
*Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 ........ 29, 30
*Munoz v. Superior Court*, 91 F.4th 977 ........ 10
*Nationwide Biweekly Administration*, Inc. v. Owen, 873 F.3d 716 ........ 18
*O'Shea v. Littleton*, 414 U.S. 488 ........ 3
*Partington v. Bugliosi*, 56 F.3d 1147 ........ 3, 24
*Peace Ranch*, LLC v. Bonta, 93 F.4th 482 ........ 11
*Planned Parenthood of Idaho*, Inc. v. Wasden, 376 F.3d 908 ........ 8
*Polykoff v. Collins*, 816 F.2d 1326 ........ 18
*Reed v. Town of Gilbert*, 576 U.S. 155 ........ 27
*Robinson v. Labrador*, 747 F. Supp. 3d 1331 ........ 34
*Sammartano v. First Judicial District Court*, 303 F.3d 959 ........ 33
*Seattle Pacific University v. Ferguson*, 104 F.4th 50 ........ 15
*Sprint Communications*, Inc. v. Jacobs, 571 U.S. 69 ........ 16
*St. Amant v. Thompson*, 390 U.S. 727 ........ 26
*Standing Committee on Discipline v. Yagman*, 55 F.3d 1430 ........ 11, 22, 23, 24, 27



*Stuhlbarg International Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 ....................33
*Supreme Court of Virginia v. Consumers Union of United States*, Inc., 446 U.S. 719 ............9, 10
*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 ....................11
*Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134....................11
*Tingley v. Ferguson*, 47 F.4th 1055 ....................11, 12, 13
*Twitter*, Inc. v. Paxton, 56 F.4th 1170 ....................11, 13
*United States District Court v. Sandlin*, 12 F.3d 861 ....................22, 27
*United States v. Hansen*, 599 U.S. 762 ....................28
*United States v. Stevens*, 559 U.S. 460 ....................27, 28
*Ward v. Village of Monroeville*, 409 U.S. 57....................2, 18
*Weaver v. Bonner*, 309 F.3d 1312....................27
*White v. Lee*, 227 F.3d 1214 ....................15
*Whole Woman's Health v. Jackson*, 595 U.S. 30....................10, 29
*Wiemer v. Rankin*, 117 Idaho 566....................24
*Williams v. Pennsylvania*, 579 U.S. 1 ....................19, 31
*Winter v. Natural Resources Defense Council*, Inc., 555 U.S. 7 ....................3, 9, 23, 34
*Withrow v. Larkin*, 421 U.S. 35 ....................18, 32
*Witzke v. Idaho State Bar*, 643 F. Supp. 3d 1093 ....................19
*Witzke v. Idaho State Bar*, 647 F. Supp. 3d 943 ....................17, 34
*Witzke v. Idaho State Bar*, 672 F. Supp. 3d 1058 ....................10, 16, 18
*Wolfe v. Strankman*, 392 F.3d 358....................10

**STATUTES AND RULES**

28 U.S.C. § 1257....................18
42 U.S.C. § 1983....................10
Fed. R. Civ. P. 65(d) ....................3
Idaho Code §§ 3-402, 3-408, 3-412, 3-413....................6, 31
I.B.C.R. 502(a), 504, 506, 509, 511 ....................3, 6, 9, 15, 31
I.B.C.R. 505(e)....................5, 33
I.B.C.R. 510 ....................34
I.B.C.R. 525(a), (e), (o)....................16
I.R.P.C. 3.1, 8.2(a), 8.4(d).................... passim
Sup. Ct. R. 10....................18

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

# I.
# INTRODUCTION

By the present Motion, Plaintiff asks the Court to enjoin one specified act: the initiation of Formal Charges against Plaintiff under Idaho Rules of Professional Conduct ("I.R.P.C.") 3.1, 8.2(a), and 8.4(d), due to the unconstitutional impetus for making those charges as punishment for leveling factually accurate criticism about the Idaho judiciary. Nothing else is sought and while the circumstances giving rise to this action require context, it is important that this Court understand no damages, review of any Idaho judgment, relief against any judicial act, or supervisory action is sought. This request is narrow by design: every threshold doctrine Defendants may raise is answered by this Motion. However, because of the bases for bringing this Motion is based, the implications of this proceeding are substantial and far-reaching. Nevertheless, the prevailing law provides a clear path for the Court to fulfill its part of the process.

ROSA PLLC Commercial Advising & Legal Counsel ALR

The Motion is properly granted on two independent bases, and either would sustain relief: The first concerns what Plaintiff has said. The I.R.P.C.s invoked by the Idaho State Bar cannot constitutionally be applied to the statements catalogued against Plaintiff: they are either true statements or they are matters of protected opinion and (at worst) impassioned interpretations of a record disclosed in full to the only audience that received it. Regardless, they are contentions of the kind that fall within ordinary scope of appellate advocacy. A state may not punish a lawyer for criticizing its judges upon a record he has laid before them. Here, the Idaho Supreme Court was so focused on crafting a punishment for Plaintiff's statements that the central issues on appeal were ignored. The second basis is system, and it does not depend upon the fact-specific bases relating to Plaintiff. Idaho's attorney-discipline system is not a tribunal with a defect in it. It is a closed circuit that is constitutionally defective and must be reformed. The Idaho Supreme Court, whose opinion is (in the present instance) the charging instrument, is the same institution (1) whose



members are the subjects of the speech to be judged; (2) that promulgates and approves every rule under which a charge against any attorney would be tried; (3) that approves the seating of every adjudicator who would try it; (4) that holds exclusive authority over every sanction that publishes or touches a license; (5) that enters final judgment upon its own independent review; and (6) that is the only forum in which that judgment may be challenged as of right. Such a party (defined by political scientists as an "authoritarian judiciary") cannot supply what due process requires in the first instance—a neutral tribunal—and later review before a tribunal (impartial or otherwise) cannot cure a first-instance adjudication that was not. *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972). A proceeding may not validly be commenced in a forum that may not validly decide it. This is not unique to Plaintiff's present facts. It is a systemic defect. The role of this Court is to make that determination, not to fix what is broken.

The need for relief is imminent. Plaintiff has withheld a completed study of the Idaho judiciary from national publication and curtailed commentary he would otherwise make, under a threat that has stood for seventeen months and that no limitations period will ever close. I.B.C.R. 525(o). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). The implementation of discipline (even if a legitimate process existed) would already injure Plaintiff's ability to protect and advocate his client's interests. The injury would only be compounded by the flaws in the process. Furthermore, Plaintiff's clients' interests will be severely prejudiced if a flawed charge is adjudicated in a flawed system of discipline, and they lose their attorney in the process. This outcome would contradict the Bar's alleged primary imperative: to protect the public.

This memorandum is arranged in the sequence the relevant questions must be taken up. Prerequisites for the proper exercise of this Court's authority—subject-matter jurisdiction and

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

Article III justiciability—are resolved at the outset. *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994). This Motion then establishes each Defendant is properly before the Court under *Ex Parte Young* and its progency. Then, justiciability is properly established as to both standing and ripeness. Next, the inevitable question of *Younger* abstention is resolved. Then, *Rooker-Feldman* and preclusion are resolved followed by the identification of each *Winter* factor. Finally, "Appendix A" presents the analytical structure in a single page. The relief sought carefully framed within the four corners of this submission and not by reference to any other document, Fed. R. Civ. P. 65(d)(1); *Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1150–52 (9th Cir. 2011). Again, the relief sought requires no affirmative act and imposes no continuing or supervisory obligation. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928–31 (1975); *O'Shea v. Littleton*, 414 U.S. 488, 500–02 (1974). Each category is self-sufficient and severable. This Motion is presented to the Court to enable a decision this Motion with its authority established, upon one record and in one pass.

ROSA PLLC Commercial Advising & Legal Counsel
ALR

## II.
## FACTUAL BACKGROUND

The Dodd case and Plaintiff's representation, the appeal, the Idaho Supreme Court's opinion, and the seventeen months of investigation that followed are itemized under oath in the Declaration of Angelo L. Rosa ("Rosa Decl.") filed concurrently herewith and summarized as follows:

### A. The Dodd Case and its Appeal.

In 2022 Plaintiff was engaged to represent Julene and William Dodd in pursuing an action for legal malpractice against the attorney and firm they had retained to pursue a medical-malpractice claim—a claim the firm filed four days after the limitations period expired, and did not disclose as untimely to its clients for six months. Rosa Decl. ¶¶ 5(a)–(d).

The Dodds' surgical expert disclosed of record, in an amended declaration and amended report filed on 19 November 2022, the consultation with an Ada County surgeon by which he re-confirmed the governing community standard of care; Jones vacated the expert's noticed deposition upon that filing, never re-took it, and deposed instead the physician whose care was at issue. Rosa Decl. ¶ 5(e), (g); Decl. Ex. 9. The malpractice action was disposed of when the district court excluded the Dodds' experts for a disclosure that allegedly did not strictly comply with its scheduling order. *Id.* at ¶¶ 5(h)–(i). Every ruling under review on appeal issued from a single consolidated hearing held at the end of the case, upon cross-motions for summary judgment and a motion in limine, and was embodied in one Memorandum Order entered 14 April 2023. *Id.* at ¶ 5(i). That Order was the judgment appealed from, and it was also the first occasion on which the question of judicial bias could be identified.

The Appellants' Opening Brief itemized the errors committed by the District Court and did so against the backdrop that the closeness between bench and bar in Idaho operates to shield attorneys from accountability for malpractice; that no Idaho appellate decision in the preceding thirty years had favored a client over the client's former counsel; and that Idaho's standard for judicial bias departs from the objective due-process standard the Supreme Court of the United States requires. From the outset, Plaintiff stated the appeal was "advocated in full acknowledgment" that "the relationship between bench and bar shields attorneys from accountability," and neither the Dodds nor their counsel were "so naïve to expect immediate corrections to the self-serving nature of the judiciary." *Id*. Ex. 2 at 3. It disclaimed any accusation of personal malice or corruption and cited the record for every factual assertion. *Id*. at ¶ 9(a). Counsel of record for the defendant attorney throughout that appeal was Gary L. Cooper, who—during the same period and until July 2024—served as President of the Board of Commissioners



ROSA PLLC Commercial Advising & Legal Counsel ALR

of the Idaho State Bar, the body that supervises Bar Counsel and whose approval is a precondition to any Formal Charge against any attorney. *Id*. at ¶ 7; Compl. ¶ 39.

**B. The Opinion and the Grievance Filed the Same Day.**

On 3 March 2025, the Idaho Supreme Court affirmed every aspect of the District Court's decisions. Then, rather than award fees under the statute the respondents invoked, imposed them as a sanction under Idaho Appellate Rule 11.2 against Plaintiff personally, concluding that the appeal was frivolous. In reaching that conclusion the opinion catalogued the statements from the appellate briefing that are set out in the proposed order submitted herewith. Rosa Decl., at ¶ 7; Compl. ¶¶ 30–34[1]. The Idaho Supreme Court was so blinded by a desire to punish Plaintiff that evidence in the appellate record directly contradicting its comments one of the central issues on appeal (the local standard of care) was either ignored or misrepresented. The same day the Dodd opinion issued, the Office of Bar Counsel opened a disciplinary investigation of Plaintiff. There was no complainant. The grievance is captioned "Grievance filed by the Idaho State Bar." Compl. at ¶¶ 56–58; Rosa Decl. at Ex. 6.

**C. The Bar Investigation.**

The letter Plaintiff received the following day identified three Rules of Professional Conduct—I.R.P.C. 3.1, 8.2(a), and 8.4(d)—stated that the investigation had been opened upon the conduct described in the enclosed opinion, and demanded a written response within thirty days. Decl. Ex. 6. The demand was compulsory in substance: under Idaho Bar Commission Rule 505(e), failure to respond to a request from Bar Counsel is itself a ground for sanction. Rosa Decl. ¶ 10.

[1] Plaintiff satisfied the award in full, and a Satisfaction of Judgment was filed of record on 29 May 2026. *Id*. at Ex. 1.



ROSA PLLC Commercial Advising & Legal Counsel ALR

Plaintiff retained counsel and cooperated at every stage, across four rounds of inquiry, concluding with the submission on 7 November 2025 of an evaluation of aggravating and mitigating circumstances made at the Office's own invitation. Rosa Decl. ¶ 11. Along the way the Office enlarged the inquiry, adding four Rules and directing Plaintiff to address matters of expert disclosure, issue preservation, and client communication. Decl. Ex. 7. Nothing further has been requested since. The file remains open, no Formal Charge has been filed, and no one has disavowed enforcement. Rosa Decl. ¶ 11; Compl. ¶ 64. Proceedings under the Idaho Bar Commission Rules "shall be exempt from all statutes of limitations." I.B.C.R. 525(o).

**D. The (Broken) Structure Defendants Presume to Adjudicate the Charge Within.**

Every stage of Idaho attorney discipline is controlled directly or indirectly by the Idaho Supreme Court. The Court promulgates and approves the Rules of Professional Conduct and the Idaho Bar Commission Rules; no such rule takes effect until it does so. Idaho Code §§ 3-412, 3-413. Bar Counsel evaluates and investigates grievances, holds pre-charge subpoena power, and may impose private discipline at an investigation's conclusion without any charge issuing. I.B.C.R. 504(b), 509(b)–(c). A Formal Charge may be filed only upon the Board of Commissioners' finding of probable cause and approval of the filing. I.B.C.R. 511(a)–(b). No member of the Professional Conduct Board—from whose membership every Hearing Committee is drawn—is seated without the Court's approval. I.B.C.R. 502(a), 511(c). Every sanction that publishes or touches a license belongs to the Court alone; the subordinate bodies may only recommend. I.B.C.R. 506(a)–(d). And the Court enters final judgment upon its own independent review: "[t]he supreme court shall thereupon enter such judgment in said matter as it deems proper." Idaho Code § 3-408. Compl. ¶¶ 46–50.

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

The Board of Commissioners is elected by the Bar's membership, Idaho Code § 3-402, and Bar Counsel is appointed by the Board rather than by the Court, I.B.C.R. 504(a). Compl. ¶ 48. Neither fact places any part of the machinery outside the judiciary because Idaho's own decisions hold that the bar commissioners "are part of the judicial rather than the executive branch," and that "[c]alling a part of the judicial branch part of the executive branch does not make it so." *Matter of Malmin*, 126 Idaho 1024, 1027–28, 895 P.2d 1217, 1220–21 (1995) (quoting *Dexter v. Idaho State Bar Board of Commissioners*, 116 Idaho 790, 792, 780 P.2d 112, 114 (1989)). Moreover, any challenge to the findings of a disciplinary process are exclusively appealable to the Idaho Supreme Court. The Bar and its board "act in an administrative capacity as an arm of the Supreme Court in carrying out its supervisory function," and the Bar "acts as a means by which this court controls the practice of law in Idaho." *Idaho State Bar Ass'n v. Idaho Public Utilities Commission*, 102 Idaho 672, 637 P.2d 1168, 1170 (1981). The Bar's published disciplinary decisions disclose no public discipline of any Idaho attorney under Rule 8.2(a) or Rule 8.4(d). Compl. ¶ 62. This is not a system built upon constitutional integrity.

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

**E. Impact of the Investigation: Speech Withheld and "Public Protection" Mission of Bar Contradicted.**

Plaintiff has withheld publication of extensive writings on the defects within Idaho's judiciary and because the disciplinary file remains open and the study's subject matter is the subject matter the opinion catalogued. Rosa Decl. ¶¶ 12-13. He fully intends to resume that commentary upon a determination of the issues raised in this action. Compl. ¶ 68; Rosa Decl. ¶ 14. Further, Plaintiff's Idaho practice comprises approximately fifteen active client engagements—many are flat-fee matters paid in full, several undertaken at no cost, most are at advanced stages. No client of Plaintiff's is the source of the Bar's file. Rosa Decl. ¶ 18; Compl. ¶

70. However, the Bar's action threatens the interests of all these clients and Plaintiff's ability to serve them.

## III.
## ARGUMENT

Plaintiff carries every element required for preliminary relief. A preliminary injunction issues where the movant establishes a likelihood of success upon the merits, a likelihood of irreparable harm in the absence of relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Hecox v. Little*, 479 F. Supp. 3d 930, 971 (D. Idaho 2020). Likelihood of success is the most important factor, and the more so where a constitutional injury is alleged. *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023). Where the government is a party, the last two factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Because subject-matter jurisdiction and Article III justiciability are prerequisites to the exercise of this Court's authority, they are addressed first. *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994).

### A. Each Defendant Is Properly Before the Court, and No Immunity Bars Prospective Relief.

#### 1. Bar Counsel satisfies the *Ex parte Young* connection outright.

The Eleventh Amendment does not bar an action for prospective declaratory or injunctive relief against a state officer sued in his official capacity for a violation of federal law, "so long as the state officer has some connection with enforcement of the act." *Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)). The connection required "demands merely that the implicated state official have a relevant role that goes beyond a generalized duty to enforce state law or general supervisory power over the persons responsible



ROSA PLLC Commercial Advising & Legal Counsel ALR

for enforcing the challenged provision"; while it must be "fairly direct," it is a "modest requirement." *Id.* at 903–04 (quoting *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004)). The requisite connection exists where the officer can "direct, in a binding fashion, the prosecutorial activities of the officers who actually enforce the law or bring his own prosecution," and concurrent authority to prosecute suffices. *Wasden*, 376 F.3d at 919. Here, Defendant Pirtle does not merely direct the prosecution. He is the prosecution. At the behest of the Idaho Supreme Court, his office evaluates and investigates grievances, wields pre-charge investigatory subpoena power, may impose private discipline by his own hand at an investigation's conclusion, and—upon the approval of the Board of Commissioners (who answer to the Supreme Court)—institutes formal charges by filing a complaint. I.B.C.R. 504(b), 509(b)–(c), 511(a)–(b), 524(a); Compl. ¶ 9. His office opened its file against Plaintiff, identified the three Rules, extracted a compelled response, and holds today the single initiation power this Motion asks the Court to restrain. If concurrent authority satisfied *Wasden*, exclusive authority satisfies it a fortiori. *Accord Crowe v. Oregon State Bar*, 112 F.4th 1218 (9th Cir. 2024). That the Board of Commissioners must approve a filing before it is made diminishes neither the connection nor the redress. Redressability asks whether a favorable decision will relieve a discrete injury, not every injury, *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982), and the existence of other obstacles to complete relief does not foreclose standing, because a plaintiff is "entitled to tackle one roadblock at a time." *Ibrahim v. Department of Homeland Security*, 669 F.3d 983, 993 (9th Cir. 2012). One officer files the charge. The order restrains that officer from filing it.

**2. The Defendant Justices are properly named in their enforcement, rulemaking, and administrative capacities.**

Officials of a state's highest court are proper defendants under *Ex parte Young* when sued in their enforcement capacities respecting the regulation of the practice of law. The Supreme Court



ROSA PLLC Commercial Advising & Legal Counsel ALR

so held of the Virginia court and its chief justice in *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 734–37 (1980), and (on remand) the Fourth Circuit repeated that they "properly were held liable in their enforcement capacities." 688 F.2d 218, 220 (4th Cir. 1982). The Ninth Circuit's most recent rulings dras the same line: while judges "acting in a judicial capacity" may not be enjoined*, Ex parte Young* reaches justices in their official capacities: the domain of § 1983's proviso. *Munoz v. Superior Court*, 91 F.4th 977, 981 & n.2 (9th Cir. 2024); *Wolfe v. Strankman*, 392 F.3d 358, 366 (9th Cir. 2004). Here, the Complaint disclaims judicial-capacity relief in terms, pleads a relief-related basis as to each Defendant, and requests declaratory relief first: the architecture that *Munoz* and *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), require. Compl. ¶¶ 10–12.

Two observations dispose of the objection Defendants will likely raise. First, *Witzke v. Idaho State Bar*, 672 F. Supp. 3d 1058 (D. Idaho May 11, 2023), is likely to be invoked to establish this Court lacks power over the Justices. This argument will fail. *Witzke* holds that a plaintiff who seeks relief touching them must make them parties: the court was "without authority to enjoin the Justices of the Idaho Supreme Court . . . because they are not parties to this case and not legally identified with the ISB and related Defendants." *Id.* at 1063. That is the law of injunctions binding non-parties, *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (Fed. Cir. 1996), and it is authority supporting Plaintiff's claim architecture, not a basis for denying jursidiction. Plaintiff has named those here. Second, the injunctive relief sought as to Plaintiff's disciplinary matter is pled indepdently of the broader systemic flaws for which the Defendant Justices are directly implicated. Second, no immunity doctrine bars this action or this Motion, because each is a damages doctrine and Plaintiff seeks no damages from any Defendant in any capacity. Compl. ¶ 12; *see Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007) (quasi-

ROSA PLLC Commercial Advising & Legal Counsel ALR

prosecutorial and quasi-judicial); *Consumers Union*, 446 U.S. at 731–34, and *Hirsh v. Justices of the Supreme Court of California*, 67 F.3d 708, 715 (9th Cir. 1995) (per curiam) (legislative immunity for rule promulgation, which this action does not challenge); *Mitchum v. Foster*, 407 U.S. 225, 242–43 (1972) (§ 1983 is an express exception to the Anti-Injunction Act).

**B. Plaintiff Has Standing, and His Claims Are Ripe.**

**1. The pre-enforcement standard.**

The law does not require Plaintiff to await a Formal Charge before suing. A plaintiff satisfies the injury-in-fact requirement in a pre-enforcement challenge by showing "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and "a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 485 (9th Cir. 2024). Standing and ripeness are applied "less stringently in the context of First Amendment claims," *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022), and the inquiry tilts "dramatically toward a finding of standing" where the challenge is pre-enforcement, because the chilling of First Amendment rights is itself a constitutionally sufficient injury. *Tingley v. Ferguson*, 47 F.4th 1055, 1066–67 (9th Cir. 2022), *abrogated on other grounds by Chiles v. Salazar*, 607 U.S. 627 (2026). The Supreme Court has endorsed a "hold your tongue and challenge now" approach rather than requiring litigants to speak first and take their chances with the consequences. *Italian Colors Restaurant v. Becerra*, 878 F.3d 1165, 1171 (9th Cir. 2018) (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)).

**2. Each *Thomas* factor is satisfied.**

Three inquiries gauge the credibility of a claimed threat: (1) whether the plaintiff has a concrete plan to violate the law; (2) whether the enforcement authorities have communicated a

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

specific warning or threat to initiate proceedings; and (3) whether there is a history of past prosecution or enforcement. *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc); *Tingley*, 47 F.4th at 1066–67. Each is satisfied here, and a comparison to the record this Court assessed in *Matsumoto v. Labrador*, 701 F. Supp. 3d 1032 (D. Idaho 2023), *aff'd in relevant part*, 122 F.4th 787 (9th Cir. 2024) is instructive at every step.

As to a concrete plan, specific details of future plans are not required where a plaintiff has already engaged in the conduct or describes specific past instances of it; a plaintiff need not specify when, who, where, or under what circumstances. *Tingley*, 47 F.4th at 1067–68. Plaintiff has made the speech—it is catalogued in a published opinion of the Idaho Supreme Court—and he has enumerated four categories of intended future commentary, together with a completed twenty-thousand-word study awaiting submission. Compl. ¶¶ 8, 68; Rosa Decl. ¶¶ 12, 14.

There is a specific warning or threat to initiate proceedings. In *Matsumoto*, the challengers received no communication of any kind; standing rested upon the Attorney General's published opinions and his refusal to disavow. Here, Plaintiff received a letter. It named him, opened a numbered file, identified three Rules of Professional Conduct by number, enclosed the opinion alleged as proof of that conduct, and demanded a written response within thirty days. Compl. ¶¶ 59, 63; Rosa Decl. at ¶ 10 and Ex. 6. Non-disavowal is itself a relevant factor, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010); *Tingley*, 47 F.4th at 1068, and Defendants have not disavowed. Compl. ¶ 64.

As to history of enforcement, Plaintiff appears to have taken the unpopular step of actively and vocally criticizing the Idaho judiciary for its flaws. No Idaho attorney appears ever to have been publicly disciplined under Rule 8.2(a) or Rule 8.4(d) [Compl. ¶ 62] but this does not weaken the threat. Instead, it allows the threat to be viewed in contrast to a blank page (i.e., the absence of

ROSA PLLC Commercial Advising & Legal Counsel ALR

disciplinary action of the kind Plaintiff faces). What Plaintiff can identifiy is an investigative process that has dragged on for seventeen months, as documented in Defendants' own correspondence: an opened file, Rules named, a compelled response by Plaintiff, an expansion to four more Rules, further inquiry, and a purported assessment of aggravating and mitigating circumstances. Rosa Decl. ¶ 11. The absence of enforcement against anyone else does not establish that Plaintiff is safe. It establishes that he has been singled out for punishment. *See infra*.

**3. Plaintiff's First Claim is Ripe; His Second Claim is Perennial**

Ripeness adds nothing Defendants can use. The constitutional component of ripeness "is synonymous with the injury-in-fact prong of the standing inquiry," *Twitter*, 56 F.4th at 1173, and is satisfied for the reasons stated above. The prudential component asks fitness and hardship. *Tingley*, 47 F.4th at 1070. Fitness is established where "the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Id.* The questions presented—whether these Rules may constitutionally be applied to this speech, and whether this structure may adjudicate the question—are legal. Hardship asks whether the challenged regime "requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Id.* at 1071. Plaintiff has withheld a completed study from publication and curtailed commentary he would otherwise make; the penalty attached is the loss of his license, and the damage extends to a body of clients that Plaintiff is personally accountable to. Had Plaintiff truly committed wrongdoing (as opposed to upsetting a handful of judges by pointing out the true nature of the system they preside over) then these injuries would be counterbalanced by Plaintiff's wrongful behavior. That is not the case.

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

**4. No disavowal offered in this litigation could moot this action or this Motion.**

Defendants conceivably may attempt to moot this Motion by disclaiming, in the course of this litigation, any present intention to charge Plaintiff in the manner its seventeeth months of conduct indicate an intention to do. Voluntary cessation moots a case only where the defendant carries the formidable burden of showing that the challenged practice "cannot reasonably be expected to recur," and that standard "holds for governmental defendants no less than for private ones." *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)). An assurance that the government does not anticipate acting against the plaintiff "based on currently available information" does not carry that burden where it neither repudiates the decision under challenge nor identifies any change in the criteria that produced it. *Id.* at 242; *Fikre v. FBI*, 35 F.4th 762, 770, 772 (9th Cir. 2022), *aff'd*, 601 U.S. 234 (2024). The inquiry asks whether procedural safeguards insulate the new position from arbitrary reversal, *Fikre v. FBI*, 904 F.3d 1033, 1040 (9th Cir. 2018); mootness has been refused where the asserted change was an internal policy that "could be easily abandoned or altered in the future" at the sole discretion of the officer who adopted it, *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013), and found only where the change was formal, unequivocal, permanent, addressed every objectionable measure, and was periodically renewed, *White v. Lee*, 227 F.3d 1214, 1243–44 (9th Cir. 2000). Here no safeguard exists at any level. No provision of the Idaho Bar Commission Rules binds Bar Counsel to a litigating position. The file remains open. The Board of Commissioners' approval may be sought at any moment of Bar Counsel's choosing. I.B.C.R. 511(a)–(b). And proceedings under those Rules "shall be exempt from all statutes of limitations." I.B.C.R. 525(o). It cannot be made absolutely clear that no charge will issue upon this speech when nothing whatever prevents one from issuing upon this speech at any time, without

ROSA PLLC Commercial Advising & Legal Counsel ALR

end. *Cf. Porter v. Bowen*, 496 F.3d 1009 (9th Cir. 2007) (cessation of the challenged activity did not moot where plaintiffs stated an intention to resume it and the State bore the burden of showing it would not threaten prosecution again).

**C. *Younger* Abstention Does Not Apply.**

One observation frames what follows. The doctrine addressed in this Part and the doctrine addressed in the last cannot both be satisfied. *Younger* presupposes a state proceeding already commenced and sufficiently advanced that comity counsels restraint. Article III's ripeness requirement is unsatisfied only where enforcement is remote, conjectural, or hypothetical. A disciplinary matter cannot at once be so far along that a federal court must stand aside and so inchoate that no injury is yet cognizable. Each characterization defeats the other, and the record answers both the same way: an investigation is open, it is real, it has consumed seventeen months and four rounds of compelled response—and no proceeding has commenced, because Idaho law fixes commencement elsewhere.

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

**1. No state proceeding is pending.**

There is nothing to abstain in favor of. *Younger* applies only to proceedings that have commenced; the Ninth Circuit "has used the term 'pending proceeding' to differentiate between state proceedings that have already commenced from those that are merely threatened." *Flangas v. State Bar of Nevada*, 655 F.2d 946, 948–49 (9th Cir. 1981) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607 (1975)). Idaho law fixes commencement of a formal disciplinary proceeding at the filing of a Formal Charge complaint, which itself requires the Board of Commissioners' prior finding of probable cause. I.B.C.R. 511(a)–(b). Neither has occurred. Compl. ¶¶ 6, 64. An attorney-discipline matter is "pending" for *Younger* purposes only once the machinery of adjudication is engaged, *Canatella v. California*, 404 F.3d 1106, 1110 (9th Cir. 2005), and an investigation alone

is not a proceeding, *Seattle Pacific University v. Ferguson*, 104 F.4th 50, 60–61 (9th Cir. 2024). The cases Defendants may cite would actually prove the line rather than blur it. In *Flangas*, the Board had already recommended a $30,000 fine and suspension and the matter stood before the Nevada Supreme Court. Plaintiff's own story in his Declaration speaks to something even worse. In *Hirsh*, 67 F.3d at 712–13, formal proceedings were pending against every plaintiff. In *Fieger v. Thomas*, 74 F.3d 740 (6th Cir. 1996), a disciplinary proceeding had been instituted. Here there is no recommendation, no charge, no adjudicator seated—nothing pends anywhere. Neither does any *Sprint* category reach a file for which no charging document has opened. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78–80 (2013), confined *Younger* to three exceptional categories and cabined expansive readings of *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982), whose factors are "additional" rather than dispositive once a proceeding qualifies. An open investigation is none of the three, and Idaho's own Rules disclaim the analogy: disciplinary proceedings are "neither civil nor criminal" but *sui generis*. I.B.C.R. 525(a).




**2. *Witzke* confirms rather than threatens this analysis.**

Defendants are, again, likely to press *Witzke*. However, the matter does not apply here for three independent reasons. First, *Witzke* concerned bar admission, not the discipline of a licensed practitioner: the plaintiff was a thrice-unsuccessful applicant contesting the handling of his applications. 672 F. Supp. 3d at 1060–61. Second, a proceeding was actually pending when he sought relief—the Idaho State Bar had filed a petition with the Idaho Supreme Court the day before he moved, and his third application was under review. *Id.* at 1062. Third, and decisively for the timing rule, the court measured abstention at the date of his emergency motion rather than the date of his complaint, precisely because that motion advanced "a new claim for relief stemming from new facts not plead in his original Complaint," which would not relate back under Rule 15(c). *Id.*

at 1064. This Motion advances no new facts. It rests upon the Complaint as filed, when no charge existed—as none does now.

**3. Should A Charge Issue Mid-Case, The Race Rule Governs.**

Timing, not deference, governs a charge filed mid-case. Where a state proceeding begins only after the federal complaint is filed, abstention turns upon whether "proceedings of substance on the merits have taken place in the federal court." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975); *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 238 (1984). The Ninth Circuit states the rule as one of timing: state proceedings are ongoing "if they are initiated before any proceedings of substance on the merits have taken place in the federal court." *Nationwide Biweekly Administration, Inc. v. Owen*, 873 F.3d 716, 728 (9th Cir. 2017). A preliminary-injunction hearing of substance suffices, *Polykoff v. Collins*, 816 F.2d 1326, 1332 (9th Cir. 1987); extensive hearings upon a preliminary-injunction motion are proceedings of substance, *Adultworld Bookstore v. City of Fresno*, 758 F.2d 1348, 1350–51 (9th Cir. 1985); and the Fifth Circuit states the rule in terms that fit this case exactly: dismissal is warranted "only . . . where successful defense of a state enforcement proceeding, initiated before substantial federal proceedings on the merits had occurred, would fully vindicate the federal plaintiff's federal right." *Foley v. Alabama State Bar*, 648 F.2d 355, 360 (5th Cir. Unit B 1981) (quoting *Morial v. Judiciary Commission*, 565 F.2d 295, 300 (5th Cir. 1977) (en banc)). Plaintiff's contemporaneous Motion to Expedite asks the Court to set an evidentiary hearing within thirty days for precisely this reason.

**4. The state forum affords no adequate, timely opportunity.**

The state forum fails *Younger*'s adequacy element upon this District's own holding. Abstention's third element requires an adequate opportunity to raise the federal challenges, and this District has held, in litigation involving this same Bar, that the opportunity must be "timely—



ROSA PLLC Commercial Advising & Legal Counsel ALR

i.e., prior to the administrative deprivation." *Witzke v. Idaho State Bar*, 647 F. Supp. 3d 943 (D. Idaho Dec. 23, 2022). The structure documented in the Complaint is one of the two bases for relief. The system is broken, unconstitutional and therefore offers no such forum of opportunity: *the sole as-of-right terminus of Idaho attorney discipline is the judgment of the very Court whose opinion initiated the proceeding, which promulgated the rules to be enforced, which approves the seating of every adjudicator, and which alone may impose any public or license-affecting sanction.* Compl. ¶¶ 46–50, 69. The only theoretical avenue beyond that circle—a petition for a writ of certiorari under 28 U.S.C. § 1257—is discretionary, Sup. Ct. R. 10, granted to fewer than one hundred of severals thousands of petitions filed each term, and reaches only a final judgment after any deprivation is complete. Later review before an impartial tribunal does not cure a biased first-instance adjudication. *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972). If guaranteed de novo review cannot cure, discretionary review that will almost certainly never occur cannot. This Court is the only refuge for relief and the only rational body for adjudication.

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

**5. In the alternative, two recognized exceptions apply.**

Even where *Younger*'s elements are met, abstention yields to bad-faith enforcement, *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975), and to a forum whose bias renders it incompetent to adjudicate, *Gibson v. Berryhill*, 411 U.S. 564, 577–79 (1973). Plaintiff is mindful that adjudicators are entitled to a presumption of integrity and honesty, *Kenneally v. Lungren*, 967 F.2d 329, 333 (9th Cir. 1992) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)), and that a court will not accept a disputed allegation at the heart of a case upon nothing more than a party's personal conclusion. *Witzke*, 672 F. Supp. 3d at 1065. Plaintiff asks the Court to accept no conclusion of his. He offers objective facts of record: a file opened the same day the opinion issued; a grievance whose named grievant is the Bar itself; no complainant of any kind; three Rules invoked that the

Bar's published decisions disclose were never publicly enforced against anyone; and a "frivolous" characterization affixed to an appeal built upon a billing log, a sworn admission, a four-day calendar, and official public data. Compl. ¶¶ 33–34, 56–58, 62. *Flangas* is not to the contrary: it required an attorney alleging individual bias-in-fact to first invoke Nevada's disqualification-and-substitution machinery, 655 F.2d at 950–51—a cure addressed to who sits. Plaintiff's claim is addressed to what the institution is. Substituting individual justices does not un-write the rules, un-approve the adjudicators, or un-author the accusation. *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016); *In re Murchison*, 349 U.S. 133, 136 (1955).

**D. Neither *Rooker-Feldman* Nor Preclusion Reaches This Action.**

Plaintiff asks no federal court to review anything Idaho has decided. *Rooker-Feldman* is "confined" to "cases brought by state-court losers complaining of injuries caused by state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). The injury pleaded here is the investigation and the threatened enforcement—not the I.A.R. 11.2 sanction, which Plaintiff satisfied in full and pleads as background evidence of animus only. Compl. ¶¶ 33, 36. The doctrine is narrow and inapplicable where the plaintiff is not challenging the state-court decision, *Livingston v. North Carolina State Bar*, 364 F. Supp. 3d 587, 596 (E.D.N.C. 2019); *accord State Bar of Nevada v. Wike (In re Wike)*, 145 F.4th 1221 (9th Cir. 2025), and it does not bar claims for prospective relief, *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012). This District's decision in *Witzke v. Idaho State Bar*, 643 F. Supp. 3d 1093 (D. Idaho Nov. 29, 2022), marks the boundary from the other side: there, relief would have required a thorough review and rejection of the state outcome the plaintiff attacked. Here no relief asks any court to review, revise, or even consider the correctness of *Dodd*—the proposed order restrains a future act by a non-judicial officer, full stop.

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

Preclusion fails for the same structural reason and one more: the opinion's improper-purpose findings were entered *sua sponte*, without notice, briefing, or hearing, and were never actually litigated; proceedings must satisfy due process before they can preclude anything. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481–83 (1982). Finally, Defendants cannot urge certiorari as Plaintiff's remedy, *see supra*. without characterizing these claims as review of a state judgment: a characterization that would contradict any *Rooker-Feldman* defense they simultaneously assert.

**E. Plaintiff Is Likely to Succeed on the Merits.**

Likelihood is established here twice over, and independently: subparts 1 and 2 address whether these Rules may constitutionally be applied to this speech; subpart 3 addresses whether the machinery that would apply them may constitutionally sit in judgment of the question at all. Success upon either suffices.

**1. The First Amendment merits (Counts II and VI).**

The Bar opened the Investigation based upon a single document: the Opinion. Compl. ¶¶ 56–58. The letter that opened it identified no client complaint and no grievance from any judge. It named three Rules of Professional Conduct—I.R.P.C. 3.1, 8.2(a), and 8.4(d)—enclosed the Opinion as the conduct complained of and described nothing beyond the statements that Opinion catalogues: statements made in appellate briefs, in press coverage of a matter of public concern, and in scholarship. Compl. ¶¶ 57, 59; Rosa Decl. ¶ 10 and Ex. 6. Those three Rules remain in the file today. None has been withdrawn. Four months later the Office of Bar Counsel enlarged its inquiry to four additional Rules and to questions of expert disclosure, issue preservation, and client communication. Rosa Decl. ¶ 11; Decl. Exs. 7, 8. Two features bear noting, and neither requires any inference about purpose. The first is chronological: every fact now inquired into was described

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

in the Opinion enclosed with the March 4 letter, and for the four months following, the Office asked about nothing but the three Rules addressed to Plaintiff's speech. The second is that the enlargement is not wholly directed at conduct. Its third item asks whether Plaintiff's "failure to preserve the Dodds' claim regarding judicial bias, which was raised for the first time on appeal without having first filed a motion to disqualify the district court judge," violated I.R.P.C. 1.2(a), 1.3, and 3.1. Decl. Ex. 7. That is an inquiry into whether an argument should have been made—the same argument, that Idaho's judicial-bias standard departs from federal due process, whose making the Opinion catalogued and the March 4 letter placed under investigation. The premise of the inquiry is also unsound on the record. Every ruling under review issued from a single consolidated hearing at the end of the case and was embodied in one Memorandum Order. Rosa Decl. ¶ 5(i). There was no earlier proceeding at which the grounds could have been raised, because the Order was the occasion on which they first appeared. To have moved to disqualify before it would have required presuming the very partiality the motion would allege—conduct that Rule 3.1 forbids for want of a basis in fact, and that Rule 8.2(a) forbids as a statement concerning a judge's qualifications made with reckless disregard for its truth. The inquiry thus asks why Plaintiff did not do earlier what the same Rules would have punished him for doing.

Nothing in this Motion touches the underlying conduct inquiry. The proposed order leaves Rules 1.2(a), 1.3, 1.4, and 3.4(c) wholly untouched and, were the second basis for relief not necessary, would permit pursuit based upon conduct rather than speech. Whether Plaintiff may be charged for how he handled a disclosure deadline is a question is preconditioned upon the availability of a lawful system of discipline. The availability of a lawful ground of discipline does not license an unlawful one. Similarly, the existence of disputes does not mandate the use of a broken system simply because it the only one available. The charges as the first basis on which

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

relief is sought can be reduced to a single question: may the State of Idaho punish a lawyer for criticizing its judiciary in words like these, upon this record? Three independent answers follow. Even under the standard Idaho applies—the standard most favorable to the Bar—the catalogued statements are true, are protected opinion, and have not/cannot be proven false by clear and convincing evidence. If any charges survive these filters, the Idaho State Bar's standard is itself unconstitutional as applied. Also, we return again to the fact that, independent of any statement's classification, any pursuit and enforcement would proceed in a structurally interested (and constitutionally flawed) forum. Prevailing upon any of them suffices.

The Sixth Circuit Court of Appeals has decided this issue on closely comparable facts. In *Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012), the Kentucky Bar Association investigated an attorney's public criticism of a quasi-judicial state body and issued a letter warning that his conduct violated Kentucky's Rule 8.2(a)—textually identical to Idaho's—and advising him to refrain from similar conduct in the future. The Sixth Circuit held the Rule unconstitutional as applied. *Id.* at 294. As that court framed it, the problem arises when a state "applies its rules in a way that impinges upon the free interchange of ideas that is vital to self-government," and it is "especially problematic when the speech is made by attorneys, who are often the citizens best situated to criticize government abuse." *Id.* The governing framework places every burden upon the Bar. Idaho adopted the Ninth Circuit's construction of Rule 8.2(a) in *Idaho State Bar v. Topp (In re Topp)*, 129 Idaho 414, 417, 925 P.2d 1113, 1116 (1996), following *United States District Court v. Sandlin*, 12 F.3d 861, 867 (9th Cir. 1993), and *Standing Committee on Discipline v. Yagman*, 55 F.3d 1430 (9th Cir. 1995). Under that framework the Bar—not the respondent—must prove, by clear and convincing evidence, I.B.C.R. 525(e); *Topp*, 129 Idaho at 415–16, both that a statement is false and that a reasonable attorney in the same circumstances would not have made it. Truth is



ROSA PLLC Commercial Advising & Legal Counsel ALR

an absolute defense; no presumption of falsity is permitted; "the disciplinary body bears the burden of proving falsity." *Yagman*, 55 F.3d at 1438. Only statements capable of being proved true or false are punishable at all: opinion, rhetorical hyperbole, and "loose, figurative" language are immune. *Id.* Whether a statement is fact or opinion is a question of law for the court—not for Bar Counsel's characterization. *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009); *Miller v. Sawant*, 114 F.4th 1071 (9th Cir. 2024). Further, *Yagman* is the factual template. There, as here, a lawyer was sanctioned for litigation conduct a court called frivolous, criticized the judiciary in caustic terms, and drew a disciplinary response. The Ninth Circuit reversed every sanction, closing with Justice Black's warning that "an enforced silence . . . in the name of preserving the dignity of the bench" would breed "resentment, suspicion, and contempt." *Id.* at 1443–44 (quoting *Bridges v. California*, 314 U.S. 252, 270–71 (1941)).

The substantiated statements are true, and truth ends the inquiry. The statistical statements in Plaintiff's commentary, which provide context for the overall "defective" nature of the system under scrutiny—demonstrates that 41 of 46 sitting District Judges, or 89.1%, reached the bench by appointment rather than contested election, and that the Idaho Judicial Council took six public disciplinary actions upon 2,022 complaints between 2003 and 2023, a rate of approximately 0.3%—are drawn from the Council's annual reports, certified election returns, the session laws, and the Bar's own publications. Compl. ¶¶ 43–44 and Exs. 6, 7. The Bar cannot carry a clear-and-convincing burden of falsity against sourced arithmetic, and *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964), forecloses punishing true criticism for its tone or its target. Being caught out is never pleasant, but a more high-minded approach is expected of bodies such as the Idaho Supreme Court and the Idaho State Bar.

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

The figurative and evaluative statements are protected opinion and (at worst) unactionable hyperbole. "The word of God" is not a proposition about theology; it is rhetorical hyperbole about a scheduling order—precisely the "loose, figurative" usage *Yagman* immunizes. 55 F.3d at 1438. "Obstinate" is a vigorous epithet; "freshman" is an accurate description of judicial tenure; neither is capable of defamatory falsehood. The Ninth Circuit's most recent published application of the totality test held far harsher words protected opinion in context. *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148 (9th Cir. 2021).

The evaluative statements were made upon a fully disclosed record, in the one forum that held the record. The remaining statements—"blind deference," "prurient curiosity," "fitness to render competent rulings," and the question whether the rulings reflected "a fit of inexperience, intimidation or some other influence"—are assessments of how a judge performed the judicial function, drawn from the rulings themselves. Such characterizations of the quality and motivation of another's professional decision-making "concern subjective impressions" insusceptible of objective verification. *Partington v. Bugliosi*, 56 F.3d 1147, 1156–57 (9th Cir. 1995). A statement resting upon fully disclosed facts is actionable only where the facts themselves are false and demeaning. *Berry*, 688 F.3d at 301; *accord Yagman*, 55 F.3d at 1439. Idaho applies the same rule: opinion is punishable as implied fact only where the speaker falsely represents private, first-hand knowledge substantiating it. *Wiemer v. Rankin*, 117 Idaho 566, 571–72, 790 P.2d 347, 352–53 (1990); *Topp*, 129 Idaho at 418. An appellate brief represents no private knowledge. It argues inferences from a record its reader holds in full. *Berry* supplies the holding that governs this setting directly: contentions that adjudicatory bodies acted illegally "are the staple of appellate briefs, and cannot without more constitute ethical violations." 688 F.3d at 303. And an attorney "cannot be punished for advocating a change in the law," *id.*—which disposes of the Bar's inquiry into

ROSA PLLC Commercial Advising & Legal Counsel ALR

whether Plaintiff's argument that *Bach v. Bagley* departs from federal due process was itself sanctionable. Compl. ¶ 59; Rosa Decl. ¶ 11.

Candor requires that Plaintiff address the passage of *Berry* that Defendants will quote. The court observed that "[o]nce an attorney enters the courtroom, whatever right to free speech an attorney has is extremely circumscribed," and that an attorney may not "fill a courtroom with a litany of speculative accusations and insults which raise doubts as to a judge's impartiality." *Id.* at 304. Two responses are needed: (1) the observation in *Berry* is dictum, and the speech at issue was a public letter; and (2) the category the opinion describes is *speculative* accusation—the antithesis of the category the same opinion protects two pages earlier. The distinction the opinion draws is between argument untethered to a record and contention grounded in one. *Every statement catalogued here was made in a brief that cited the record for each assertion, in a case whose central factual claims were the defendant attorney's own billing log, his sworn admission, and a four-day calendar*. Compl. ¶¶ 33–34.

As evidence of the motivations spurring the present disciplinary action, the Idaho Supreme Court attempted to construct a narrative around the question of the local standard of care. The record on appeal contains clear evidence that was habitually ignored and thus gave rise to questions about just how objective the District Court was being. The Idaho Supreme Court did the very same. Dodd's medical standard of care expert filings and supplements restated one unchanged core opinion as discovery arrived—with each supplement keyed to the production or deposition that occasioned it, Rosa Decl. Ex. 3 at 12—conduct Idaho Rule of Civil Procedure 26(e) commands rather than forbids. More critical is the expert's repeated citation in sworn testimony and and amended report, filed (inter alia) on 19 November 2022 and disclosing his consultation with "a gastrointestinal and endoscopic surgeon with over thirty years of practice based in Ada County,

ROSA PLLC Commercial Advising & Legal Counsel ALR

Idaho." Rosa Decl. ¶ 5(e); Decl. Ex. 9 (Clerk's Record ("R.") 1619, 1647–48). Contrary to this clear evidence, the opinion in *Dodd v. Jones*, No. 50748-2023 (Idaho Mar. 3, 2025) ("Op."), addresses the issue, stating (at page 34) that "[t]he allegation that Dr. Simon consulted 'a local Nampa surgeon' did not appear in any of the declarations filed below and was raised for the first time on appeal." Op. at 24. Moreover, the Supreme Court ignored the reality that the defense vacated the expert's noticed deposition upon service of that amendment, never took it, and deposed instead the treating physician it had designated as its own expert. Rosa Decl. ¶ 5(a), (g) and Ex. 9 (R. 1649–53). This testimony—that the standard governing the procedure did not differ from the national standard—was placed before the court in the briefing. Decl. Ex. 2 at 17–18; Op. at 34. Yet the Supreme Court disavowed its existence! The damages expert's report was delayed by the death of her mother, Op. at 34; the substance of her opinions was disclosed before the deadline, the full report followed on 23 December 2022, and the Dodds moved to enlarge the defense's responsive deadline so that no prejudice would follow. Op. at 26–27. Whether those facts should have altered any ruling is not the question presented. What they establish is the character of the speech: "obstinate," "the word of God," "prurient curiosity," and "a fit of inexperience" were assessments tethered to identified, record-cited events—not "a litany of speculative accusations"—and contention of that description is what *Berry* protects. Perhaps if the Idaho Supreme Court were not so obsessed in attempting to punish Plaintiff for voicing inconvenient truths, the merits of the case might be different. Nevertheless, the value these facts hold for the present action is that, systemic defects aside, the disciplinary process in Plaintiff's case is driven by the most unseemly and selective interpretation of true facts.




If any statement survives, the objective standard itself cannot be applied to it. Rule 8.2(a)'s operative language—"knows to be false or with reckless disregard as to its truth or falsity"—is

*New York Times Co. v. Sullivan*'s, verbatim. 376 U.S. 254, 280 (1964). In the constitutional source of that language, "reckless disregard" has always been subjective: the speaker must "in fact entertain[] serious doubts." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). *Counterman v. Colorado*, 600 U.S. 66 (2023), holds that even true threats may not be punished absent proof that the speaker "consciously disregarded a substantial risk" of his words' harmful character, *id.* at 69, because an objective standard chills protected speech: speakers give the forbidden zone "a wide berth." *Id.* at 75–78. The Eleventh Circuit reached the same conclusion in this precise setting, holding that restrictions making a judicial candidate accountable for factual misstatements upon anything less than actual malice were unconstitutional restraints upon political speech. *Weaver v. Bonner*, 309 F.3d 1312 (11th Cir. 2002).

Professional status does not lower the protection. The only rationale *Sandlin* and *Topp* offered for objectifying *Sullivan*'s standard was the speaker's professional status. That rationale did not survive *Chiles v. Salazar*, 607 U.S. 627, 146 S. Ct. 1010 (2026), which held that content- and viewpoint-based regulation of speech is presumptively unconstitutional even when the speaker is a licensed professional. Rule 8.2(a) is content-based upon its face—it selects speech by subject matter, "the qualifications or integrity of a judge"—and is therefore presumptively invalid, the burden resting upon the government. *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015); *United States v. Stevens*, 559 U.S. 460, 468 (2010). Idaho's own Supreme Court has said as much, unanimously: rejecting its Bar's proposed Rule 8.4(g), it held that "[s]peech is not unprotected merely because it is uttered by 'professionals,'" applied strict scrutiny, and found the rule both overbroad and "unconstitutionally vague." *In re Idaho State Bar Resolution 21-01*, 582 P.3d 1 (Idaho 2023) (per curiam).

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

The companion charges cannot save the enforcement. Rule 8.4(d), applied to the content of briefs and public commentary, is the rationale *Yagman* rejected under a different number. 55 F.3d at 1442–44. As for Rule 3.1, this circuit's law makes the mismatch explicit: even a monetary sanction for vexatious litigation requires subjective bad faith. *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015). The Bar's theory would demand less mens rea to end a career than the law demands to shift a fee.

In the alternative, and systemic defects precluding legitimate adjudication in general. Rule 8.4(d) as construed is overbroad and vague. Should the Court conclude that Rule 8.4(d) as applied is valid, Plaintiff pleads in the alternative that the Rule, construed to reach the content of advocacy and public commentary, is facially overbroad and vague. Compl. ¶¶ 99–102. Facial invalidation requires that a rule's unconstitutional applications be substantially disproportionate to its legitimate sweep. *United States v. Hansen*, 599 U.S. 762, 770 (2023); *Stevens*, 559 U.S. at 473. The Second Circuit has invalidated an attorney-conduct rule upon precisely this ground, holding that an absence of standards guiding its enforcers rendered it void for vagueness as applied. *See Hayes v. New York Attorney Grievance Committee of the Eighth Judicial District*, 672 F.3d 158 (2d Cir. 2012). And the substantiality showing has an in-state template in *Resolution 21-01*. The usual practice of addressing an as-applied challenge before a facial one is observed here. *Berry*, 688 F.3d at 300.

The same analysis governs the enumerated future commentary. The relief requested reaches, in addition, the categories enumerated at Paragraph 68 of the Complaint—truthful, record-based statements and opinions grounded upon disclosed official public records. The challenged Rules can no more constitutionally be applied to statements of that description than to those already

ROSA PLLC Commercial Advising & Legal Counsel ALR

catalogued, and the proposed order expressly excludes anything the Bar is prepared to prove false. This is the preliminary relief the Complaint prays for, Compl. Prayer ¶ 2(a), and no more.

**2. Retaliation (Count I).**

Retaliation supplies likelihood independently. Plaintiff's record advocacy, press statements, and scholarship address matters of public concern. The same-day, self-initiated file—no complainant, sole basis the opinion cataloguing the speech—supports the inference that protected expression was a substantial or motivating factor. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977); *Bello-Reyes v. Gaynor*, 985 F.3d 696, 701–02 (9th Cir. 2021) (temporal proximity). Such action would chill an attorney of ordinary firmness. *Boquist v. Courtney*, 32 F.4th 764, 775 (9th Cir. 2022). And the objective record forecloses any same-decision showing at this stage: the Bar's published decisions disclose no public discipline of any Idaho attorney under Rule 8.2(a) or Rule 8.4(d), and the machinery that mobilized against Plaintiff within hours produces public discipline in a fraction of one percent of complaints. *Cf. Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024) (objective evidence of differential treatment). Compl. ¶¶ 44, 62, 76. Plaintiff described the machinery before it moved. At page 3 of the Opening Brief he wrote that the appeal was "advocated in full acknowledgment" that "the relationship between bench and bar shields attorneys from accountability," and that neither his clients nor he were "so naïve to expect immediate corrections to the self-serving nature of the judiciary." Rosa Decl. ¶ 9(a) and Ex. 2 at 3. Sixteen months later, on the day the Court decided the case, the machinery he had described opened a file upon him—founded upon nothing but the words in which he described it. And the label that carried it was "frivolous," affixed *sua sponte* to an appeal built upon a billing log, a sworn admission, a four-day calendar, and official public data. The mismatch between that label and that record is itself evidence of the true object. Compl. ¶¶ 33–34. Q.E.D.

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

**3. Structural due process (Count III).**

This ground stands alone. It asks not whether Plaintiff's statements may be punished, but whether the institution that would punish them may constitutionally decide that question—and if it may not, the answer to the first question does not matter, because no valid proceeding can be commenced in an invalid forum. The question is objective—whether the circumstances present a "potential for bias," *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009), an "unconstitutional potential," *Williams*, 579 U.S. at 8—and no accusation of actual bias is made or required. Plaintiff accuses no individual of anything. He describes a structure, and he describes it from the Idaho Code, the Idaho Bar Commission Rules, and published decisions of the Idaho Supreme Court.




Four structural features converge. The adjudicating institution authored the accusation, *sua sponte* and without notice. It has already adjudicated and punished the same statements—prejudgment, *Gibson*, 411 U.S. at 578–79. Its members are the targets of the speech to be judged, *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971). And it controls every stage. It writes and approves every rule; no disciplinary rule takes effect until it approves it. Idaho Code §§ 3-412, 3-413. It approves the seating of every member of the Professional Conduct Board, from whose membership every Hearing Committee is drawn. I.B.C.R. 502(a), 511(c). It holds exclusive authority over every sanction that publishes or touches a license. I.B.C.R. 506(a)–(d). And it enters final judgment upon its own independent review: "[t]he supreme court shall thereupon enter such judgment in said matter as it deems proper." Idaho Code § 3-408. It has exercised that authority to escalate a recommended sanction to disbarment on its own motion. *Idaho State Bar v. Oleson*, 568 P.3d 83 (Idaho 2025). Compl. ¶¶ 11, 46–50, 86–87.

Defendants will answer that the Board of Commissioners is elected by the Bar's members rather than appointed by the Court, Idaho Code § 3-402, and that the circle is therefore open. It is not, and Idaho's own decisions say why. The bar commissioners "are part of the judicial rather than the executive branch," and "[c]alling a part of the judicial branch part of the executive branch does not make it so." *Matter of Malmin*, 126 Idaho 1024, 1027–28, 895 P.2d 1217, 1220–21 (1995) (quoting *Dexter v. Idaho State Bar Board of Commissioners*, 116 Idaho 790, 792, 780 P.2d 112, 114 (1989)). The Bar and its board of commissioners "act in an administrative capacity as an arm of the Supreme Court in carrying out its supervisory function," and the Bar "acts as a means by which this court controls the practice of law in Idaho." *Idaho State Bar Ass'n v. Idaho Public Utilities Commission*, 102 Idaho 672, 637 P.2d 1168, 1170 (1981); *Malmin*, 126 Idaho at 1027–28. Election by the Bar's membership does not supply an external check. It places the prosecuting authority under the control of the regulated profession itself—a second closed loop nested within the first. That is not an abstraction in this case. Throughout the briefing and argument of the *Dodd* appeal, counsel of record for the attorney-defendant simultaneously served as President of the Board of Commissioners—the body whose approval any Formal Charge against Plaintiff would require. Compl. ¶ 39. This structure lacks the safeguard upon which *Withrow v. Larkin*'s presumption rested. *Withrow* sustained combined investigative and adjudicative functions in an executive-branch agency whose determinations remained reviewable in a separate and independent judiciary. 421 U.S. at 46–47. Here, there is no second branch and no external review. *Idaho State Bar v. Souza*, 142 Idaho 502, 505, 129 P.3d 1251, 1254 (2006); *Malmin*, 126 Idaho at 1027–28. *The defects are substantial and reformation of those defects will not be easy. However, that is not this Court's (or the Plaintiff's) concern. Just because a system is broken and may be hard to fix is not justification for leaving it intact, particularly when the Constitution forbids it.*



ROSA PLLC
Commercial Advising & Legal Counsel
ALR

**F. Irreparable Harm Is Ongoing, Not Merely Threatened.**

The deprivation this Motion asks the Court to arrest is not seventeen months old. Throughout 2025 Plaintiff did what the Rules required of him: he answered, through counsel, across four rounds of inquiry, the last of them on 7 November 2025. Rosa Decl. ¶ 11. The concrete and irreparable injury crystallized afterward, and it is fixed by a date. On 10 April 2026 Plaintiff completed a twenty-thousand-word study of the Idaho judiciary, prepared in law-review form for a national periodical. Journals seek to publish it. He has refused to permit publication. Rosa Decl. ¶ 12. Each week it is withheld is a week of the deprivation *Elrod* describes, and the deprivation renews daily. Similarly, no evidence indicates the file went dormant in the interval. The last step taken in it was not investigative. On 7 November 2025, at the invitation of the Office of Bar Counsel, Plaintiff submitted an evaluation of aggravating and mitigating circumstances together with a personal statement. Rosa Decl. ¶ 11. Aggravation and mitigation are the vocabulary of sanction, not of inquiry. What that submission records is a matter that has passed the question whether to charge and reached the question what to impose.

Irreparable harm follows from the claim itself: because Plaintiff has raised a colorable First Amendment claim, he has demonstrated that he likely will suffer it. *American Beverage Ass'n v. City & County of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc); *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014); *Elrod*, 427 U.S. at 373. The record supplies the concrete instances: a completed national study withheld from publication; commentary curtailed; a compulsory response already extracted under threat of independent sanction, I.B.C.R. 505(e); a license under cloud in a file exempt from every limitations period, I.B.C.R. 525(o). Rosa Decl. ¶¶ 10–13. The chilling is not the only injury running. Plaintiff's Idaho practice makes him responsible for many clients and their interests: a predominate consideration in this analysis and Plaintiff's sole priority



ROSA PLLC
Commercial Advising & Legal Counsel
ALR

where his Idaho practice is concerned. Rosa Decl. ¶ 18; Compl. ¶ 70. A credible threat to the survival of a practice is the paradigm of a harm no later judgment repairs. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188–89 (9th Cir. 2022); *accord Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991); *Stuhlbarg International Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001). This District has already drawn the controlling contrast—in litigation against this same Bar: it held a bar applicant's delayed licensure compensable in damages precisely because the applicant, unlike an established practitioner, was not losing income and clients collected over the span of a career, and it located the irreparable category in exactly that established-practice injury. *Witzke v. Idaho State Bar*, 647 F. Supp. 3d 943, 955–56 (D. Idaho Dec. 23, 2022). Plaintiff stands upon the far side of that contrast. Money cannot remedy any of it, and no bond could measure it. *Perhaps the question should be: how many of Plaintiff's clients should be sacrificed to permit the Idaho Supreme Court to use the Idaho State Bar as its instrument for punishing Plaintiff for speaking candidly.*

ROSA PLLC Commercial Advising & Legal Counsel ALR

**G. The Equities and the Public Interest Merge in Plaintiff's Favor.**

Where a party has, at a minimum, raised serious First Amendment questions, that alone compels a finding that the balance of hardships tips sharply in its favor. *Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc). Defendants suffer no cognizable injury from an order that pauses one act while leaving the evaluation and investigation of the pending grievance, and every other function of the Office of Bar Counsel, untouched. Against that stands the public's interest in the vindication of constitutional rights, *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024); *Doe v. Harris*, 772 F.3d at 583, and in informed commentary upon the judiciary by the observers best positioned to supply it—an interest the Idaho Supreme Court itself has articulated, *Resolution 21-01*, 582 P.3d

1, and one *Berry* grounds in the observation that attorneys "are often the citizens best situated to criticize government abuse," 688 F.3d at 294. The merger runs deeper still, because "[t]he public interest inquiry primarily addresses impact on non-parties rather than parties," *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002), and the non-parties this record identifies are Plaintiff's approximately fifteen clients. Idaho supplies the lens: the purpose of attorney discipline "is not to punish, but to protect the public from those who are unfit to perform the duties of an attorney at law." *Matter of Tway*, 123 Idaho 59, 61, 844 P.2d 688, 690 (1992). The Bar's own rules calibrate that purpose—interim suspension exists for the lawyer whose continued practice presently endangers those interests, I.B.C.R. 510, a posture never suggested in seventeen months of this file. Here no client complained; the grievance's caption names the Bar itself as grievant; and every concrete public consequence of enforcement would fall upon the only members of the public this record identifies. Equity "should pay particular regard for the public consequences," *Winter*, 555 U.S. at 24, and "it is always in the public interest to prevent the violation of a party's constitutional rights," *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

ROSA PLLC
Commercial Advising & Legal Counsel




**H. Security is Unnecessary and Should Be Dispensed With.**

A bond here would secure no one against anything. The district court "has discretion as to the amount of security required, if any," and may dispense with a bond where it concludes there is no realistic likelihood of harm to the defendant from enjoining his conduct. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003); *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). This District has dispensed with security upon such reasoning in *Matsumoto v. Labrador*, 701 F. Supp. 3d 1032 (D. Idaho 2023), and again in *Robinson v. Labrador*, 747 F. Supp. 3d 1331 (D. Idaho 2024). An injunction restraining a single act the State has no entitlement to take imposes no

compensable cost upon anyone. Plaintiff therefore requests waiver or, alternatively, proposes a nominal bond of one hundred dollars.

## IV.
## CONCLUSION

Three years ago, rejecting a vaguer attorney-speech rule its own Bar proposed, the Idaho Supreme Court held—unanimously, and in print—that speech is not unprotected merely because it is uttered by professionals, and closed with Justice Brandeis: "the remedy to be applied is more speech, not enforced silence." *In re Idaho State Bar Resolution 21-01*, 582 P.3d 1 (Idaho 2023). The machinery that Court supervises now, in a fickle manner unbecoming of a legitimate court, proposes enforced silence for a critic of Idaho's judges—and proposes to impose it through a proceeding in which that Court would supply the rule, approve the adjudicator, impose the sanction, and hear the appeal from itself. Plaintiff asks this Court to hold Idaho to Idaho's word: to grant the Motion, enter the proposed order restraining the initiation of Formal Charges, dispense with security, and set the evidentiary hearing requested in the accompanying Motion to Expedite.

DATED: 3 August 2026

Respectfully Submitted,

For ROSA PLLC:

*/s/Angelo L. Rosa*

Angelo L. Rosa

Attorneys for Plaintiff
ANGELO L. ROSA

ROSA PLLC
Commercial Advising & Legal Counsel
ALR