Angelo L. Rosa (Idaho State Bar No. 7546)
ROSA, PLLC
950 West Bannock Street, Suite 1100
Boise, Idaho 83702
Telephone No.          +1 (208) 900-6525
Facsimile No.          +1 (208) 515-2203
E-mail:                arosa@rosacommerce.com
CM/ECF:                arosa@rosacommerce.com

Attorneys for Plaintiff
ANGELO L. ROSA, in Pro Se

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANGELO L. ROSA,<br><br>        Plaintiff,<br><br>v.<br><br>JOSEPH N. PIRTLE, in his official capacity as Bar Counsel of the Idaho State Bar; CHIEF JUSTICE G. RICHARD BEVAN, ASSOCIATE JUSTICE ROBYN BRODY, ASSOCIATE JUSTICE GREGORY W. MOELLER, ASSOCIATE JUSTICE COLLEEN D. ZAHN, and CYNTHIA K.C. MEYER, Justices of the Idaho Supreme Court, each solely in their administrative, enforcement and rulemaking capacities relating to the regulation of the practice of law in the State of Idaho,<br><br>        Defendants. | Case No. 26-cv-484-DKG<br><br><br>**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 1

ROSA PLLC
Commercial Advising & Legal Counsel
ALR

## DECLARATION OF ANGELO L. ROSA

(1)      I am an individual over twenty-one (21) years of age and the Plaintiff in this action. The purpose of this Declaration is (a) to attest to facts supporting the Motion for a Preliminary Injunction filed concurrently herewith, and (b) to authenticate documents attached hereto as exhibits. The statements made in this Declaration are based upon my personal knowledge, except for those statements that are expressly predicated on the basis of information and/or belief.

### My Legal Credentials

(2)      With regard to my licensure as an attorney:

(a)      Since December 2003, I have (i) been continually licensed to practice law and (ii) maintained "active" status as a member of the State Bar of California.

(b)      Since May 2007, I have (i) been continually licensed to practice law and (ii) maintained "active" status as a member of the Idaho State Bar, with the sole exception of a brief period in 2009 during which I was assigned "inactive" status pending the resolution of some administrative delay in processing the payment I remitted for annual dues.

(c)      I have been continually admitted to practice and have maintained "active" status to practice law before the following courts: (i) United States District Court for the Central District of California (since January 2004); (ii) United States Bankruptcy Court for the Central District of California (since January 2004); (iii) United States District Court for the District of Idaho (since May 2007); (iv) United States District Court for the Eastern District of California (since October 2010); (v) United States District Court for the District of Colorado (since February 2014); (vi) United States Bankruptcy Court for the Southern District of California (since April 2017); and (vii) United States Court of Appeals for the Ninth Circuit (since January 2004).

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 2

(d)    At various times and as dictated by client need, I have been admitted pro hac vice in specific matters before, inter alia, the following state and federal courts: (i) 22nd Judicial Circuit Court for Fayette County, Commonwealth of Kentucky; (ii) United States District Court for the Eastern District of Michigan; (iii) United States District Court for the District of Minnesota; (iv) Eighth Judicial District Court in and for Clark County, State of Nevada; (v) United States District Court for the District of Nevada; (vi) United States District Court for the Southern District of Texas; (vii) District Court for Harris County, State of Texas; (viii) Juvenile Court for Weber County, State of Utah; (ix) United States Bankruptcy Court for the District of Utah; and (x) District Court for King County, State of Washington.

(e)    I have never been disciplined by the State Bar of California, though for the first six months of my licensure, I had the (amusing) distinction of being the youngest attorney practicing in California.

(f)    I have never been publicly disciplined by the Idaho State Bar. Based upon my most recent review of records on this subject, it appears that no grievances/complaints about me have originated with any of my clients.

(g)    I have never been disciplined in any other jurisdiction to which I have been admitted to practice, either permanently or on a matter-specific/pro hac vice basis.

(3)    Not counting the written articles identified in the Complaint, I have—between early 2003 and the present—authored approximately fourteen (14) articles pertaining to the law, all of which have been published, including in: the Minnesota Journal of Global Trade, the Tennessee Journal of Business Law, the Tulane Maritime Law Journal, the UC Davis Business Law Journal, Los Angeles Lawyer, Lawyer Monthly, The Advocate (the Idaho State Bar's official publication),

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 3

and various practice-oriented databases maintained by LexisNexis. In addition, I am the author of the following titles:

(a)    *Idaho Practice: Pre-Trial Civil Procedure*, published by LexisNexis Publishing. The fifth (i.e., 2026) edition of this title is presently in editorial review preparatory to publication and distribution.

(b)    *Idaho Practice: Business Law Fundamentals*, also published by LexisNexis Publishing. The first (i.e., 2026) edition of this work is also in editorial review in preparation for publication and distribution.

(c)    To my knowledge, the two above-mentioned titles are the only texts on their respective subjects devoted to Idaho law.

(4)    Although I have continuously maintained an active litigation practice throughout my career, litigation has accounted for approximately twenty-five to thirty percent (25–30%) of my practice during the past fifteen years. The remainder of my professional efforts have been devoted to commercial advising (distinct from legal advice) and to legal representation in transactional matters. To date, I have served in the capacity of principal advisor and "lead counsel" (supported by local counsel depending on location) in approximately fifty (50) project development and asset-, corporate-, and project-financing matters throughout the United States and abroad, with a combined capitalization in excess of one billion dollars.

Representation in the <u>Dodd v. Jones</u> Matter

(5)    I was engaged by Julene and William Dodd ("Julene and William") in 2022 to vet and pursue on their behalf a civil action for legal malpractice against attorney Rory Jones and the law firm Jones Williams Fuhrman Gourley, P.A. Representation was on a contingency given the

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 4

nature of the facts and the Dodds' financial situation. The following facts, corroborated by the record of the litigation that followed, merit specific emphasis:

(a)    In August 2017, Julene Dodd underwent what was represented to be a routine hiatal hernia procedure at St. Alphonsus Medical Center in Nampa, Idaho. During that procedure, the physician—who, by his own testimony (taken after Jones designated him as an expert, despite Jones' prior, abortive, attempt to sue him on Julene and William's behalf…) had performed the procedure fewer than ten (10) times—pierced Julene's lower intestines. For three days immediately following the procedure, Julene persistently complained of severe pain. Those complaints went unaddressed, and an aftercare regimen of multiple enemas was followed. During that time, Julene's abdomen was filling with fecal matter, leading to sepsis that resulted in the collapse of her immune system on the fourth day and necessitated emergency surgery. What was meant to be an overnight hospital stay became a year-long struggle to survive, during which Julene lost all renal function.

(b)    In late August 2017, while Julene lay in a coma, Jones approached William on an unsolicited basis and proposed that he and his firm represent Julene and William in suing the surgeon and the hospital, describing such a case as "huge." On November 3, 2017, once Julene's condition allowed, Julene and William signed a contingency fee agreement engaging the firm to pursue a medical-malpractice action.

(c)    During the first eighteen months of that engagement, neither Julene nor William had significant contact with the firm, despite Julene's proactive requests for updates. The only demonstrable work performed by the firm on the case—documented in

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 5

the firm's own billing record, titled "Prebill"—totaled 8.1 hours, all of it attributable to attorneys other than Mr. Jones, whose time the firm did not record.

(d)    On August 13, 2019—648 days after Jones' engagement began, and six days before the statutory deadline for a medical-malpractice claim—the firm filed a Pre-Litigation Hearing Application and Claim with the Idaho State Board of Medicine. The pre-litigation hearing was convened on October 24, 2019, tolling the statute of limitations until December 8, 2019. On December 12, 2019—four days after the limitations period ended—Jones' firm filed a complaint for medical malpractice in the Third Judicial District for Canyon County. The complaint was signed, thus certifying the meritorious intent and content under Idaho Rule of Civil Procedure 11. The complaint was never served. For over six months—until June 26, 2020, as Julene Dodd would later testify—neither Jones nor his firm disclosed to Julene or William their failure to timely file the complaint.

(e)    Julene and William commenced their civil action for legal malpractice against Jones and his firm on December 6, 2021, in the Fourth Judicial District Court for Ada County, and amended their complaint on January 5, 2022. The District Court entered its Scheduling Order on March 7, 2022. Following extensive fact discovery, and before the expert disclosure deadline, Julene and William designated a surgical expert with four decades of experience to attest to the applicable standard of care, and a life care planner as their expert on damages. Despite extensive experience practicing medicine and performing surgery in Idaho, Julene and William's expert consulted with a gastrointestinal and endoscopic surgeon with over thirty years of practice based in Ada County, Idaho, in order to satisfy the knowledge requirement of the "community" standard of care imposed by the Idaho Code. The substance of that consultation was disclosed of record in the expert's

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 6

amended declaration and amended report, filed on 19 November 2022; true and correct copies of excerpts of the Clerk's Record on appeal ("R.") containing those disclosures are attached to this Declaration as Exhibit 9. R. 1619, 1647–48. The Idaho Supreme Court's opinion itself recites that disclosure at page 7. As fact discovery continued, Julene and William served multiple supplements to the expert's initial report in accordance with Idaho Rule of Civil Procedure 26(e).

(f)     Julene and William also engaged a life care planner as their expert to quantify damages, which (at their most conservative) totaled in excess of eight million dollars. The sudden death of this expert's mother prevented a full report being included in the timely-submitted expert disclosure (though the disclosure contained the same opinions as the report and attached a dollar figure to them). Julene and William promptly notified the court and Jones' counsel regarding this issue and filed multiple motions to minimize prejudice. The life care planner's complete report was produced on December 23, 2022, months before the scheduled trial date.

(g)     Jones and his firm never deposed either of Julene and William's experts. A notice of deposition was served for their standard-of-care expert; Jones vacated that deposition by notice filed on 21 November 2022, and it was never taken. By notice filed on 2 December 2022, Jones instead deposed the physician who had performed the procedure. Ex. 9 (R. 1649–53).

(h)     Both sides eventually moved for summary judgment. The defendants also moved in limine to exclude the testimony of Julene and William's experts on the ground that disclosure had not occurred in strict compliance with the district court's scheduling order. Julene and William opposed all motions and identified the facts demonstrating

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 7

compliance with the Scheduling Order and efforts to remedy incomplete disclosure of their damages expert.

(i)     All substantive motions in the case were heard over two closely scheduled hearings in 2023 and gave rise to a single, consolidated, Memorandum Order issued on April 14, 2023, ruling entirely against Julene and William. Judgment was entered promptly thereafter.

The <em>Dodd v. Jones</em> Appeal

(6)     Julene and William timely appealed to the Idaho Supreme Court as a matter of right. The appeal was briefed throughout 2023. Oral argument was convened in September 2024.

(7)     On March 3, 2025, the Idaho Supreme Court issued its opinion in *Dodd v. Jones*, Docket No. 50748-2023, affirming the District Court ruling in all respects. Jones and his firm had requested attorney fees under Idaho Code § 12-121. The Idaho Supreme Court instead imposed a fee award under Idaho Appellate Rule 11.2, as a sanction, against me personally—concluding that the appeal was frivolous and that responsibility for its frivolous character lay at my feet alone. The court's opinion catalogued statements from the appellate briefs I had signed and filed on the Dodds' behalf—including my observations concerning the closeness of the relationship between bench and bar in Idaho, my criticism of the District Court's rulings, and the argument that Idaho's governing standard for adjudicating judicial bias does not conform to the due-process standard articulated by the United States Supreme Court—alleging such statements were "ad hominem attacks" on the trial judge. Counsel of record for Jones and his firm throughout the briefing of the appeal was Gary L. Cooper. During this period, Mr. Cooper served simultaneously as President of the Board of Commissioners of the Idaho State Bar—the governing body of the Bar, which

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 8

supervises Bar Counsel and whose approval is required before a Formal Charge may be filed against an attorney.

(8)    The fee award imposed by the Idaho Supreme Court against me was $44,825. In addition, Julene and William were ordered to pay costs totaling $3,704.60. I satisfied the award in full, first paying (pro-actively) Julene and William's obligation for costs awarded. On May 29, 2026, counsel for Jones and his firm acknowledged receipt by filing a Satisfaction of Judgment, Case No. CV01-21-18926, confirming full payment of the award against me on May 13, 2025 pursuant to the Amended Judgment, and that all claims were fully satisfied and released. A true and correct copy of that Satisfaction of Judgment is attached to this Declaration as Exhibit 1.

My Public Comments on the Dodd Matter

(9)    My public commentary concerning the Idaho judiciary and the administration of justice in Idaho has included:

(a)    My comments in the appellate briefs I signed and filed on Julene and William's behalf, specifically Appellants' Opening Brief (filed October 10, 2023) and Appellants' Reply Brief (filed December 14, 2023). In addition to arguing the merits of the appeal, I directly criticized the unusually close relationship between bench and bar in Idaho, and its function as a shield for attorneys against accountability for malpractice, stated that no Idaho appellate decision in the preceding thirty years had favored a client over the client's former counsel, and reasoned that Idaho's standard for judicial bias, as stated in *Bach v. Bagley*, 148 Idaho 784 (2010) was both materially narrower than (and irreconcilable with) the controlling objective due-process standard articulated by the United States Supreme Court in *Williams v. Pennsylvania*, 579 U.S. 1 (2016), and *Liteky v. United States*, 510 U.S. 540 (1994). At page 3 of Appellants' Opening Brief, I admitted

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 9

that the appeal was "advocated in full acknowledgment" of these factors and that neither my clients nor I were "so naïve to expect immediate corrections to the self-serving nature of the judiciary." The introduction to Appellants' Opening Brief concluded with the statement:

> *So, with only the lowest of expectations, Julene and Bill ask this Court to follow the law, properly consider the actual facts and correct the departure from sound, competent and reasoned adjudication reflected in the lower court's 14 April Rulings and render a competent ruling that reflects the principles of due process identified by the United States Supreme Court.*

These were remarkably prescient expressions of the expectation that the Idaho Supreme Court would conduct themselves as I anticipated and those expectations were met. Nevertheless, the briefing expressly disclaimed any accusation of personal malice or corruption and any allegation of subjective animus on the part of the trial judge. Instead, the content in the briefing consisted of factual assertions relating the District Court proceedings, with citations to the record on appeal. The Idaho Supreme Court did not refute any comments on broader, systemic problems identified in the briefing. True and correct copies of the file-stamped Opening Brief and Reply Brief are attached to this Declaration as Exhibit 2 and Exhibit 3, respectively.

(b)     My statements made to *The Idaho Statesman*. To increase public awareness of the issues raised by the Dodd case, I arranged for Julene's story to be published and it was carried in an above-the-fold front page feature of the *Statesman's* Sunday edition of September 22, 2024, having first been published online on September 20, 2024. Those statements emphasized that legal malpractice is a taboo subject in the Idaho State Bar, that no decision favoring a client in a legal-malpractice matter had issued from Idaho's appellate courts in at least thirty years, and that Julene "is the example of what happens

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 10

when professionals are not held accountable." The *Statesman* later pursued a follow-up story, published on or about March 16, 2025, shortly after the Idaho Supreme Court opinion was issued. I reaffirmed my previously-stated criticisms and, at the same time, described the five Justices of the Idaho Supreme Court as "remarkable jurists" and "decent human beings" given that my criticisms were broader and directed at the dynamics observed rather than the character of any individual(s). True and correct copies of both articles are attached to this Declaration as Exhibit 4 and Exhibit 5, respectively. All statistical data included in my comments were drawn from official public records, including the reports of the Idaho Judicial Council and the publications of the Idaho State Bar.

### The Idaho State Bar's Conduct

(10)    On March 3, 2025 (within hours of issuance of the Idaho Supreme Court's opinion in the Dodd case) the Idaho State Bar opened an investigation. The next day, on March 4, 2025, I received the letter attached to this Declaration as Exhibit 6, from the Office of Bar Counsel of the Idaho State Bar, captioned "Grievance filed by the Idaho State Bar," ISB File No. 25-104C. The letter identified Idaho Rules of Professional Conduct 3.1, 8.2(a), and 8.4(d) and represented that the investigation was opened based on conduct described in the enclosed opinion. This correspondence requested a written response from me within thirty days, with the deadline underscored. I understood the request to be compulsory based upon my familiarity with Idaho Bar Commission Rule 505(e), which provides that failure to respond to a request from Bar Counsel is itself a ground for sanctions.

(11)    I retained counsel—Julianne S. Hall and Erica J. White of Elam & Burke, P.A., of Boise—to assist with my response to the grievance, and through them, and directly, I cooperated with the investigation at every stage. By letter dated March 26, 2025, Ms. Hall requested an

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 11

extension of the response deadline pending the Idaho Supreme Court's disposition of the Dodds' petition for rehearing or, alternatively, an additional thirty days. On June 2, 2025, Ms. White submitted my substantive response, addressing each of the three Rules identified in the March 4, 2025 letter. On July 3, 2025, Assistant Bar Counsel Caralee A. Lambert sent a follow-up inquiry directing me to address six further items—expanding the investigation to include I.R.P.C. 1.2(a), 1.3, 1.4, and 3.4(c), and asking, among other things, whether my raising of the issue of judicial bias for the first time on appeal, without first moving to disqualify the district judge, itself violated I.R.P.C. 1.2(a), 1.3, and 3.1—and requesting confirmation of the fee amount assessed against me and the date of its payment, together with copies of all appellate briefing in *Dodd*. I responded through counsel on July 28, 2025. On September 9, 2025, Ms. Lambert—signing as Deputy Bar Counsel—sent a second follow-up inquiry by email, framed in her own words as made "[i]n order to conclude this investigation"; on September 23, 2025, Ms. White responded on my behalf. On November 7, 2025, at the invitation of the Office of Bar Counsel, Ms. White submitted an evaluation of aggravating and mitigating circumstances, and I submitted a personal statement. Since November 7, 2025, no further investigative step(s) have been requested of me. No Formal Charge complaint has been served on me as of the date of this Declaration, and no one from the Office of Bar Counsel has disavowed enforcement. True and correct copies of the Office of Bar Counsel's letters of July 3, 2025 and September 9, 2025 are attached to this Declaration as Exhibit 7 and Exhibit 8, respectively. Note that Exhibit 8 is partially redacted out of an abundance of caution regarding indirect references to communications that the attorney-client privilege may still protect. Upon request, Plaintiff will lodge an unredacted copy under seal for the Court's review.

Impact of the Defendants' Actions on Further Protected Expression

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 12

(12)    The manner which the Idaho judiciary functions is raised not only for contextual relevance, but for the sake of identifying constitutionally protected speech of the type that drew such strong commentary from the Idaho Supreme Court, that shaped the disciplinary investigation to which I have been subject, and the formal proceedings that are imminent. Since March 3, 2025, I have completed the research and composition of a detailed study of the Idaho judiciary, approximately twenty thousand (20,000) words in length and bearing the working title "The Idaho Judiciary: Election in Theory, Appointment in Practice." This writing was prepared in anticipation of publication by a law review or other academic journal. I completed the most recent iteration of this work on April 10, 2026. It has been submitted for evaluation and peer review. A number of journals wish to secure it for publication. I have, however, refused to select which journal will publish it, and I have not transferred the supporting material required for the spading (editorial) process. At present, my refusal is based upon the focus of the Idaho State Bar's investigative actions and a degree of apprehension about the study's contents being treated as further grounds for discipline. In addition, I have prepared a précis of the larger work, reworked for a broader audience and bearing the working title "The Idaho Judiciary: A Closed Circle." Two national legal news outlets wish to secure this shorter piece for publication upon the condition that it be slightly condensed. But for the investigation and prospect of further disciplinary proceedings, I would proceed with ensuring this written work is published.

(13)    Despite strong inclinations to the contrary, I have thus far declined or curtailed specific commentary I would otherwise have made in response to requests from various media outlets. In March 2025, when interviewed for the *Idaho Statesman*'s follow-up report described above, I expressly declined to elaborate further upon the structural problems addressed in my prior

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 13

commentary and briefing, because the grievance was by then open and any elaboration risked being catalogued as further grounds for discipline.

(14)    It is my intention to, at some point in the near future, resume my efforts to draw attention to the issues raised in this action: commentary on the structure of attorney discipline in Idaho, on judicial selection and the displacement of the elections Idaho's Constitution promises, and on the accountability of the Idaho judiciary, when briefing issues where my clients' interests and the proper circumstances permit it, in the press, and in the scholarship described in this Declaration. Each of those subjects is enumerated in Paragraph 68 of the Complaint, and each rests upon official public records.

Broader Impact of Identified Defects in Disciplinary Process

(15)    I am aware of no avenue within Idaho's attorney-discipline system for adjudication of the constitutional questions presented here by a tribunal other than the one avenue whose every stage is controlled by the Idaho Supreme Court. The Idaho Bar Commission Rules and the Idaho Code supply that architecture. The Court writes and approves every rule under which I would be charged and tried; no such rule takes effect until the Court approves it. The Board of Commissioners—which appoints Bar Counsel, and whose approval is required before any Formal Charge may be filed—is not an executive body: under Idaho law its members are part of the judicial branch rather than the executive, and the Bar and its Board act as an arm of the Supreme Court in carrying out that Court's supervisory function over the practice of law. Nothing the Board does in a disciplinary matter is final. It recommends; the Supreme Court enters such judgment as it deems proper. No member of the Professional Conduct Board, from whose membership any hearing committee would be drawn, is seated without the Court's approval. Every sanction that publishes or touches my license belongs to the Court alone. And the Court is the only forum in

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 14

which its own judgment may be challenged as of right. I do not describe a system with a defect in it; I describe a closed circuit, and the closure is the design. A structure in which one institution writes the rules, supervises the prosecution, seats the adjudicators, owns every consequence, and hears the only appeal cannot supply what due process requires in the first instance—a neutral tribunal. It precludes due process by design.

(16)    The closed circuit nature of this system of discipline affects all attorneys licensed to practice in Idaho and thus constitutes a broader problem than that which I am currently exposed. This is the reason why relief is sought not only with respect to my own circumstances, but because the system itself is defective in a manner that is unconstitutional.

Further Risk of Immediate Injury

(17)    My clients are my priority. The majority of my work in Idaho involves legal malpractice and, where my Idaho practice is concerned, my client's interests are my only priority. I care about their problems and I care about them as people. My zealous expression about Julene's suffering is an example of that devotion. While the Dodd appeal is not being retried in this action, I genuinely believe that, had the nuances in the record been the focus of the Idaho Supreme Court in the Dodd appeal and had I remained silent on the issue of bias and other systemic problems in the briefing, what has happened to me since would not have occurred.

(18)    Currently, the Idaho segment of my practice consists of approximately fifteen active client engagements.[1] Without any breach of the attorney-client privilege, I can represent that many are matters that other attorneys have turned down, many are flat-fee matters in which the fee has been paid in full, and several are undertaken at no cost. Nearly all stand at advanced

---

[1] Consistent with my obligations under Idaho Rule of Professional Conduct 1.6, I identify no client or matter and state these facts in aggregate only.

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 15

stages—dispositive motions briefed or pending, trial settings approaching, appeals in progress—at which a forced substitution of counsel would be ruinous to those clients' interests: successor counsel cannot re-earn a flat fee already paid and earned by virtue of the hours spent and value of that time, no attorney I am aware of would readily accept a pro bono matter "mid-stream," and all would face delays and (for those fortunate enough to find counsel) would face re-familiarization that courts recognize as severely prejudicial given the current posture of most of these matters. The effect will not merely pause my work; rather, it will destroy my Idaho practice itself and more important, compromise the interests of my clients at real and consequential stages.

(19)    I am neither hiding behind my clients, nor am I so arrogant as to presume I am indispensable to the practice of law. I am, however, stating that my stewardship over the interests of my clients is significant both to them and to me, and are not to be taken lightly. If the disciplinary machine at issue is allowed to jeopardize my license, my clients and their interests will suffer far more than any "protection" the public (in abstract) might enjoy as a result of disciplinary action taken against me.

(20)    No client of mine is the source of the Bar's file: the March 4, 2025 letter is captioned "Grievance filed by the Idaho State Bar," and it identifies no complainant other than the Bar. Based upon information and belief borne out by the record established thus far, the Bar's conduct is little more than a (provincial) attempt to punish the expression of inconvenient truths about how the practice of law happens in Idaho. More critically, this stands to interfere with more important matters that threaten truly legitimate interests: those of the real members of Idaho's public that the Bar is charged with protecting.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 16

Executed on 3 August 2026:               */s/ Angelo L. Rosa*

_____

Angelo L. Rosa

**DECLARATION OF ANGELO L. ROSA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** – Page 17